IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-236-SLR |
| | ) | |
| LT. CHERYL MORRIS, et al, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR MORE DEFINITE STATEMENT**

Defendants hereby oppose Plaintiff's Motion for More Definite Statement [D.I. 31], and in support thereof, state as follows:

1. The Amended Complaint in this *pro se* prisoner civil rights action was filed on October 13, 2006. [D.I. 13]. Exhibit A to the Amended Complaint, which sets forth the allegations against Defendants, is four pages long. The allegations are not set forth in numbered paragraphs. Rather, the handwritten text is divided into two very long paragraphs.

2. Defendants' Answer was filed on March 23, 2007. [D.I. 28]. In the Answer, Defendants respond to every sentence of the Amended Complaint.

3. Plaintiff is not satisfied with Defendants' Answer and has moved for "a more definite statement." He asks for more detailed information regarding Defendants' denials and requests that Defendants admit or deny his characterization of various legal cases.

4. A Motion for a More Definite Statement is authorized by Federal Rule of Civil Procedure 12(e). However, Rule 12(e) is designed to address a pleading to which a

responsive pleading is permitted: A motion under Rule 12(e) is made to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Rule 12(e) is not designed to make it easier for the moving party to prepare his case. *Tillman v. The Pepsi Bottling Group, Inc.,* 2005 WL 2127820, at *8 (Aug. 30, 2005) (attached hereto as Exhibit A).

     5.    Here, Plaintiff has moved for a more definite statement with respect to Defendants' Answer to the Amended Complaint. Plaintiff is not permitted to respond to the Answer. Therefore, his Motion does not fall within the scope of Rule 12(e) and he is not entitled to more information than what has been provided in the Answer.

     WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion for More Definite Statement.

                                **STATE OF DELAWARE**
                                **DEPARTMENT OF JUSTICE**

                                /s/ Eileen Kelly
                                Eileen Kelly, I.D. No. 2884
                                Deputy Attorney General
                                Carvel State Office Building
                                820 North French Street, 6th fl.
                                Wilmington, DE 19801
                                (302) 577-8400
                                eileen.kelly@state.de.us
                                Attorney for Defendants

Date: April 18, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2007, I electronically filed *Defendants' Response to Plaintiff's Motion for More Definite Statement* with the Clerk of Court using CM/ECF. I hereby certify that on April 18, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: James St. Louis.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us

**Westlaw.**

Not Reported in F.Supp.2d                                                                                     Page 1

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

C
Tillman v. Pepsi Bottling Group, Inc.
D.Del.,2005.

United States District Court,D. Delaware.
Marlayna G. TILLMAN, Plaintiff,
v.
THE PEPSI BOTTLING GROUP, INC. and Teamsters Local Union 830 Defendants.
**No. Civ. 04-1314-SLR.**

Aug. 30, 2005.

Jeffrey K. Martin, and Timothy J. Wilson, of Margolis Edelstein, Wilmington, Delaware, for Plaintiff.
William M. Kelleher, of Ballard Spahr Andrews & Ingersoll, LLP, Wilmington, Delaware, for Defendant Pepsi Bottling Group, Inc., Daniel V. Johns, and Lucretia C. Clemons, of Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania, of counsel.
Clifford B. Hearn, Jr., Wilmington, Delaware. Stephen J. Holroyd, and Marc L. Gelman, of Jennings Sigmond, Philadelphia, Pennsylvania, for Defendant Teamsters Local Union 830.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 On September 29, 2004, plaintiff Marlayna G. Tillman commenced this suit against defendants, Pepsi Bottling Group, Incorporated ("PBG") and Teamsters Local 830 ("Local 830"). (D.I.1) In her complaint, plaintiff asserted the following claims: (1) racial discrimination; (2) violation of 42 U.S.C. § 1981; (3) gender discrimination; (4) sexual harassment; (5) retaliation; (6) failure to promote in violation of the Fair Labor Standards Act ("FLSA"); (7) violation of Delaware's Wage Payment and Collection Act; (8) violation of the Equal Pay Act; and (9) a breach of the covenant of good faith and fair dealing. (*Id.*) The court has jurisdiction pursuant to 28 U.S.C. § 1331. Presently before the court is PBG's motion to dismiss plaintiff's claims for sexual harassment, retaliation, breach of the covenant of good faith and fair dealing,[FN1] failure to promote and all claims under the Delaware Wage Payment and Collection Act. For the reasons set forth below, the court grants in part and denies in part defendant PBG's motion. Also before the court is Local 830's motion for a more definite statement which, for the reasons set forth below, the court shall deny.

   FN1. The court shall grant the motion to dismiss plaintiff's claim alleging breach of the implied covenant of good faith and fair dealing, as it is unopposed. (D.I. 11 at 2)

II. BACKGROUND [FN2]

   FN2. Given the standard for a motion to dismiss, the court considered only those facts pled in the complaint and not those additional facts alleged in the brief answering defendant PBG's motion to dismiss.

PBG hired plaintiff on May 8, 2001, as a merchandiser in the Merchandising/Marketing/Sales department. (*Id.* at ¶ 11) Plaintiff, employed in an entry level position, was paid an hourly rate of $10.57 per hour. (*Id.*) In September 2001, plaintiff was moving pallets at work when a wood chip entered her eye. (*Id.* at ¶ 13) She was taken to the hospital and missed two days of work. (*Id.*) Plaintiff returned to work and her supervisor, Bruce Wray, informed her that she would not be paid for the missed days. (*Id.*) Believing that she was entitled to six paid sick days, plaintiff discussed the situation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 2

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

with the Human Resources Department ("HR"). (*Id.*) Five months later, plaintiff was assigned to the Conventional Department by Wray; because plaintiff was maintaining her responsibilities in the Merchandising/Marketing/Sales Department, she was effectively working two jobs. (*Id.* at ¶¶ 14, 20) Plaintiff believes that the transfer was an act of retaliation for her conversation with HR regarding the unpaid sick days. (*Id.*)

The Conventional Department position is union-eligible. (*Id.* at ¶ 15) According to Local 830's by-laws and the defendants' collective bargaining agreement, the defendants had thirty days after transferring plaintiff to either incorporate her into Local 830 or return her to her original position in the company.[FN3] (*Id.* at ¶ 19) This procedure was not followed by defendants. (*Id.*) Further, plaintiff went to HR to ask for assistance in obtaining entry to Local 830, but was not permitted to join. (*Id.*)

> FN3. The complaint does not differentiate between the defendants and, as the court must accept the facts of the complaint as true, the court will use "defendants" to refer to both PBG and Local 830 as the complaint does.

Plaintiff worked both positions for eight months, starting October 13, 2001 and ending May 28, 2002. (*Id.* at ¶ 20) During this period, plaintiff did not receive overtime pay or the Union's higher weekend pay rate. (*Id.* at ¶ 18) Plaintiff, an African-American female, was the only employee in the department performing union work who was not paid union wages. (*Id.* at ¶ 15) Plaintiff continued to be paid at her initial hourly rate of $10.57 while other male employees were paid $16.63 per hour. (*Id.* at ¶ 16) Additionally, plaintiff was supposed to be paid for a pre-determined forty hour work week but on several occasions was not compensated for the full forty hours. (*Id.* at ¶ 25) On average, plaintiff worked approximately fifteen to twenty overtime hours per week without any overtime compensation. (*Id.* at ¶ 26). In failing to pay plaintiff wages to which she was entitled,

defendants are alleged to have violated the collective bargaining agreement between them. (*Id.* at ¶¶ 25, 31) Plaintiff requested back pay for the eight months that she had been working both positions and her request was denied by defendants. (*Id.* at ¶ 37) Further, by not gaining admittance to Local 830, plaintiff was also denied union benefits and protection. (*Id.* at ¶ 17)

*2 Despite her repeated requests, plaintiff was not made a member of the Union. (*Id.*) In April 2002, plaintiff asked HR to transfer her to a union position. (*Id.* at ¶ 35) On May 28, 2002, plaintiff was returned to her original position in the Merchandising/Marketing/Sales Department and was given a pay raise, making her hourly rate $10.86. (*Id.* at ¶ 36) On July 22, 2002, HR transferred plaintiff to a union position in the Warehouse Department. (*Id.* at ¶ 39) Prior to plaintiff's transfer, PBG hired (in the same capacity as plaintiff) three male employees who had no prior experience and had never worked for PBG. (*Id.* at ¶ 40) The male employees were installed in union positions before plaintiff's transfer was finalized and, therefore, were able to surpass plaintiff in seniority.[FN4] (*Id.* at ¶ 41) Plaintiff filed a complaint with HR and Local 830 because the hiring violated company policy to hire from within. (*Id.* at ¶ 42)

> FN4. This hiring affected plaintiff's seniority and her ability to bid for positions. (D.I. 1 at ¶ 43)

After being transferred to the Warehouse Department, plaintiff was paid $12.68 per hour. The union rate, which her male colleagues received, was between $15.75 and $16.63 per hour. (*Id.* at ¶ 44) In her complaint, plaintiff also alleges that, during July 2002, her new male co-workers made comments on her breast size and other inappropriate topics. (*Id.* at ¶¶ 45-47) A co-worker, Howard Laws, told plaintiff that she needed "to get laid" and that "[he was] just the man to do it to [her]." (*Id.* at ¶ 46) On another occasion, Laws asked plaintiff if he could borrow a pen. (*Id.* at ¶ 47) When plaintiff removed the pen from her shirt pocket, Laws

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 3

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

commented "you just want me to watch you touch your breasts." (*Id.*) Plaintiff filed a grievance with HR alleging sexual harassment, but no action was taken.[FN5] (*Id.* at ¶ 48) In August 2002, plaintiff asserts that the Warehouse Department supervisors began to scrutinize her more than her co-workers by singling her out for verbal discipline and threatening to place written reprimands in her file. (*Id.* at ¶¶ 51, 52)

> FN5. Plaintiff also complained to HR and management about rumors that were circulating. (D.I. 1 at ¶ 50) The rumors portrayed the plaintiff as sleeping with co-workers. (*Id.*) The complaint to HR about the rumors also went unanswered. (*Id.*)

On August 28, 2002, plaintiff filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of her race and her gender. (*Id.* at ¶ 53; D.I. 9, ex. 1) Plaintiff's charge states the following:

I am a black female individual who has been employed by Respondent since 5/8/01. Respondent has denied me various promotional opportunities, particularly for Driver positions. Instead, I have been assigned to work in various departments, including, currently, the Warehousing Department, where I am subjected to disparate treatment with regard to terms and conditions of my employment. My supervisors, Glen Matthew (white male) and Tom Riley (black male) hold me to a higher standard than my white male coworkers with regard to rules and regulations. As recently as 8/27/02, I was falsely accused of leaving my shift without checking with the Supervisor on Duty. Also, I am paid lower wages than my white male counterparts, although I am expected to perform the same work as they are.

*3 I have been told that I could not get a Driver position because I am not in the Union. I believe I have been discriminated against in violated [sic] of the Civil Rights Act of 1964, as amended, and the Delaware Discrimination in Employment Act,

because: I am the only female working in my classification, and I am paid lower wages than my male counterparts, denied promotional opportunities, and held to a higher standard. I have seen male coworkers who are not in the union, some with less tenure, obtain Driver positions and thereby become union members.

(D.I.9, ex. 1) Shortly thereafter, plaintiff received a salary increase to $15.75 per hour. (D.I. 1 at ¶ 54)

Plaintiff was fired, along with other members of her Department, on September 18, 2002. (*Id.* at ¶ 55) All of plaintiff's co-workers were recalled to work two days later, but plaintiff was not recalled until October 21, 2002.[FN6] (*Id.* at ¶¶ 55-57) Upon her return to work, plaintiff's supervisors started a disciplinary file on her. (*Id.* at ¶ 58) Every minor infraction was recorded and plaintiff was sometimes written up without her knowledge. (*Id.*) Prior to this time, plaintiff had never been issued a written reprimand. (*Id.*) In November 2002, plaintiff was singled out and verbally reprimanded for using a personal cell phone. (*Id.* at ¶ 60) Plaintiff filed a grievance with Local 830, but no action was taken. (*Id.* at ¶ 61)

> FN6. Upon her return to work, plaintiff filed another grievance with the Local 830 regarding her layoff. (D.I. 1 at 58) This time, Local 830 demanded the company pay plaintiff for the four weeks she was laid off. (*Id.*) Plaintiff was paid these wages in December 2002. (*Id.*)

In April 2003, plaintiff heard a male supervisor, Joe Rizzo, make racial and derogatory comments about African-Americans, Hispanics and women. (*Id.* at ¶ 63) Plaintiff complained to HR and was assured that an investigation would take place. (*Id.*) To the best of plaintiff's knowledge, no action was taken against Rizzo. (*Id.*) After filing the complaint with HR, plaintiff observed an immediate change in Rizzo's behavior towards her. (*Id.*) Plaintiff was then transferred to the Production Department of which Rizzo was supervisor. (*Id.*) Plaintiff requested a transfer from the Production

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

Department on three occasions; all were denied. (*Id.*) On April 22, 2003, plaintiff filed an additional charge of discrimination with the DDOL against Local 830 alleging racial and sex discrimination and also retaliation. (*Id.* at ¶ 64)

On November 6, 2003, plaintiff injured her leg while climbing out of a truck and was placed on short term disability. (*Id.* at ¶ 65) Plaintiff did not receive her disability check for ten weeks because HR forgot to file the paperwork. (*Id.*) Plaintiff ultimately was paid in one lump sum and, therefore, was taxed heavily on the full amount. (*Id.*) Plaintiff returned to work on April 19, 2004, and was assigned to the can line filler room. (*Id.* at ¶ 66) This position required plaintiff to stand for prolonged periods of time. (*Id.*) Plaintiff went to Rizzo and asked for accommodations or to "bump" another employee for a sitting position because she was unable to stand for long periods of time. (*Id.*) Rizzo informed plaintiff that her only option would be to take a short term disability leave again. (*Id.*) Plaintiff was not paid for the second short term disability period. (*Id.*)

*4 The DDOL investigated plaintiff's Charge of Discrimination and found in favor of plaintiff. (*Id.* at ¶ 67) With respect to the Charge of Discrimination filed against PBG in August 2002, the DDOL characterized the disputed facts as follows:
1. Charging party states that she was discriminated against by Respondent because she was not afforded the same opportunities as her male counterparts in regards to promotions such as driver positions and she is subjected to disparate treatment from management in regards to the terms and conditions of her employment.
2. Respondent states that Ms. Tillman was treated the same as her male co-workers and afforded all the same opportunities for promotions and not treated disparately by her supervisors.

(D.I.1, ex. A) After its investigation, the DDOL resolved these issues of facts as follows:1. Charging Party was able to establish that she had been treated disparately compared to her male co-workers. This was demonstrated through the documentation provided by Respondent in regards to Charging Party's attendance records and the various documentation regarding the amount of time she was late, left work early and called off of work. The same attendance records for her co-workers do not reflect the same amount of scrutiny on a regular basis as Charging Party in regards to being less than 5 minutes late to work....
2. A review of the punch detail reports along with the timecard records reveals that male employees more frequently are receiving the standard number of hours in a week and are also more frequently receiving overtime hours than Charging Party....

4. Charging Party provided documentation, which reflects a decreased amount of hourly wage than that of her male co-workers....
5. Witnesses were contacted and asked about their schedules, the number of hours they are afforded each week, the disciplinary [sic] received or not received regarding their work schedules and the use of personal cell phones on the job. The results of these interviews clearly revealed that Charging Party's male counterparts are treated more favorably than Charging Party.

(*Id.*) The DDOL concluded that plaintiff had "met her burden of showing that she was discriminated against based on her gender." (*Id.*) Plaintiff was issued two right to sue letters from the EEOC on July 1, 2004. (*Id.* at ¶ 68)

Plaintiff took three weeks vacation from August 8, 2004 through August 30, 2004. (*Id.* at ¶ 69) Upon returning to work, plaintiff was called into HR to discuss her complaints about the sexual harassment.<sup>FN7</sup> (*Id.*) On August 12, 2004, the NAACP held a press conference in which plaintiff participated. (*Id.* at ¶ 70) After the press conference, plaintiff was informed that she had been awarded a transfer to the Transport Department, a position she had bid on three or four times over the last few years. (*Id.*) Plaintiff was awarded this position on September 17, 2004. (*Id.*) After transferring to the Transport Department, plaintiff was warned to "watch her back" because the company wants "to get rid of [her]." (

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 5

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
(Cite as: Not Reported in F.Supp.2d)

*Id.* at ¶ 71)

> FN7. Plaintiff also gave HR a pornographic magazine which she had found on a clipboard inside a truck. (D.I. 1 at ¶¶ 49, 69)

### III. STANDARD OF REVIEW

*5 In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

When deciding a motion to dismiss, the court also is allowed to consider any exhibits attached to the complaint as well as documents attached to the motion to dismiss which form the basis of the plaintiff's claims. *See Rosman v. Fleet Bank Nat'l Assoc.*, 280 F.3d 384, 388 n. 4 (3d Cir.2002); *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 559-60 (3d Cir.2002); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.").

### IV. DISCUSSION

PBG makes three separate arguments for dismissal of plaintiff's claims against it. First, PBG claims that plaintiff's sexual harassment and retaliation claims fail because she did not exhaust all available administrative remedies. (D.I. 9 at 1) Second, PBG argues that there is no legal basis for plaintiff's failure to promote claim. (*Id.*) Finally, PBG asserts that plaintiff's claim pursuant to the Delaware Wage Payment and Collection Act is preempted by § 301 of the Labor Management Relations Act. (*Id.*)

#### A. Sexual Harassment and Retaliation Claims

PBG seeks dismissal of plaintiff's claims for sexual harassment and retaliation because she did not exhaust all her administrative remedies. (D.I. 9 at 4) Specifically, PBG contends that plaintiff's claims fail because her allegations of sexual harassment and retaliation were not included in her Charge of Discrimination. (*Id.*)

The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of a Notice of Right to Sue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). The requirement that a complainant file charges with the EEOC gives that administrative agency the opportunity to investigate, mediate and take remedial action with respect to a charge of discrimination. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir.1976). Although preliminary requirements for a Title VII action are to be interpreted in a non-technical fashion, *see Love v. Pullman Co.*, 404 U.S. 522, 527 (1972), nonetheless, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of the proceedings." *Ostapowicz*, 541 F.2d at 398-99. The relevant test for determining whether plaintiff must exhaust her administrative remedies, therefore, is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir.1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984)). Claims considered within the scope of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

the prior EEOC complaint either arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge. *See Waiters v. Parsons,* 729 F.2d 233 (3d Cir.1984); *Ostapowicz,* 541 F.2d at 398-99; *Flesch v. E. Pa. Psychiatric Inst.,* 434 F.Supp. 963, 970 (E.D.Pa.1977); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984).

*6 As evidenced by plaintiff's Charge of Discrimination filed with the DDOL and the EEOC, and the Notice of Reasonable Cause Finding issued by the DDOL, plaintiff's sexual harassment claim is not reasonably within the scope of either the claim or the investigation. The sexual harassment claim arises from a set of facts wholly distinct from plaintiff's contention of disparate treatment with respect to the terms and conditions of her employment, i.e., wages, promotional opportunities, and disciplinary record. *See, e.g., Sandom v. Travelers Mortgage Servs., Inc.,* 752 F.Supp. 1240, 1248 (D.N.J.1990). Because neither plaintiff nor the DDOL ever mentioned any of the incidents about inappropriate comments as described in plaintiff's complaint at bar, "[t]he sexual harassment claim would, most likely, not have arisen out of a reasonable EEOC investigation of the filed claim absent a specific allegation in the charge." *Id.* The sexual harassment claim cannot be said to closely relate to the conduct alleged in the charge nor is it an explanation of the conduct in the charge. Additionally, the conduct did not occur during the pendency of the EEOC investigation, as the alleged sexual harassment occurred in July 2002, at least one month prior to plaintiff filing her Charge of Discrimination. (D.I. 1 at ¶¶ 45, 53) Therefore, plaintiff failed to exhaust her administrative remedies as to this claim and the motion to dismiss shall be granted in this regard.

Retaliation claims have been considered within the scope of a prior charge. *See Molthan v. Temple Univ.,* 778 F.2d 955, 960 (3d Cir.1985) (finding a retaliation claim within the scope of a prior claim filed with the EEOC alleging sexual discrimination); *Howze,* 750 F.2d at 1212 (3d Cir.1984) (allowing a retaliation claim for failure to promote allegation within race discrimination). In this case, plaintiff's Charge of Discrimination sets forth three allegations: 1) plaintiff is paid lower wages than her male counterparts; 2) plaintiff is denied promotional opportunities; and 3) there is disparate treatment between plaintiff and her white male counterparts. (D.I.9, ex. 1) Plaintiff filed a charge of discrimination on August 28, 2002. (D.I. 1 at ¶ 53) Plaintiff was fired on September 18, 2002, and returned to work on October 21, 2002. (*Id.* at ¶¶ 55, 57) After plaintiff returned to work, her supervisors began creating a disciplinary file on her based on conduct for which other employees received no discipline. (D.I. 1 at ¶¶ 59-60) Additionally, plaintiff alleges that she was denied equal pay, benefits, and promotional opportunities in retaliation for filing her Charge of Discrimination. (D.I. 1 at ¶¶ 62, 65-66, 88(b)) Accepting the allegations contained in the administrative record as true, the motion to dismiss the retaliation claim shall be denied.

B. Failure to Promote

PBG argues that plaintiff's failure to promote claim is not sufficiently pled because plaintiff failed to identify whether her claim was based on racial or gender discrimination or both. (D.I. 9 at 5; D.I. 13 at 3) "When deciding a motion to dismiss for failure to state a claim, 'one must read Fed.R.Civ.P. 12(b)(6) in conjunction with Fed.R.Civ.P. 8(a), which establishes the requirements for adequately pleading a claim in federal court.' " *Relational Funding Corp. v. TCIM Servs., Inc.,* No. Civ. A. 01-821-SLR, 2002 WL 655479, at *3 (D.Del. Apr. 18, 2002) (quoting *Brunetti v. Rubin,* 999 F.Supp. 1408, 1409 (D.Col.1998)). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* The statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A plaintiff is not required to state precisely each element of the claim. *Relational Funding Corp.,* 2002 WL 655479, at *3 (discussing 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* §

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 7

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

1216 (2d ed.1990)). "Despite that fact, a plaintiff must 'set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " *Id.* (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988)). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

*7 In her complaint, plaintiff states that she is an African-American female. (D.I. 1 at ¶ 2) As an African-American female, plaintiff is clearly a member of a protected class. *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir.2002). Given the liberal pleading requirements of Rule 8, the court concludes that plaintiff's statement that she is an African-American female is sufficient as it asserts factual allegations that support her claim.

Additionally, PBG's inference that there is no statutory or common law basis for a failure to promote claim is without merit, as the Third Circuit has previously recognized such claims. *See, e.g., Young v. Pennsauken Township Sch. Dist.*, 47 Fed. Appx. 160, 161 (3d Cir.2002) ("Such failure-to-promote claims are analyzed under the well known burden-shifting framework as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."). The court concludes that plaintiff's failure to promote claim meets the requirements of Rule 8 and the motion to dismiss shall be denied.

C. Delaware Wage Payment and Collection Act

Plaintiff asserts that her claim under the Delaware Wage Payment and Collection Act is not dependant upon, or inextricably intertwined with, the collective bargaining agreement because her claim for lost wages is only for the time period when plaintiff was not a member of the Union. (D.I. 11 at 17) In the same paragraph, plaintiff claims that the collective bargaining agreement has "nothing to do" with her claim other than the fact that she "rightly should have been paid at the same rate of pay as those other individuals, similarly situated, who were being paid in accordance with that agreement." (*Id.*)

The reach of Section 301 of the Labor Management Relations Act ("LMRA") "encompasses not only state-law claims that are directly based on a collective bargaining agreement but also all those that are 'substantially dependent upon analysis of the terms' of the agreement." *Wheller v. Graco Trucking Corp.*, 985 F.2d 108, 113 (3d Cir.1993) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)); *see also id.* at 112 (holding that state law claims for wages allegedly due under a collective bargaining agreement are preempted by § 301 of the LMRA); *Phillips v. United Parcel Serv., Inc.*, No. 01-22-GMS, 2001 WL 694535, at *2-3 (D.Del. Jun. 20, 2001) (holding that claims brought pursuant to the Delaware Wage Payment and Collection Act for wages under a collective bargaining agreement are preempted by the LMRA).

Plaintiff claims that she is entitled to liquidated damages in an amount equal to unpaid overtime and wage differences pursuant to Delaware's Wage Payment and Collection Act. (D.I. 1 at ¶ 104) Specifically, plaintiff asserts that PBG "refused to pay [her] for overtime for weeks in which she worked in excess of forty hours, as well as time and a half for Saturday hours worked and double-time for Sunday hours worked per the terms of the collective bargaining agreement." (D.I. 1 at ¶ 31) Additionally, plaintiff asserts the collective bargaining agreement was violated when she was not admitted to Local 830 in November 2001. (*Id.* at ¶ 19) To determine whether the collective bargaining agreement was violated, whether plaintiff is entitled to the higher Union wages, and whether plaintiff is entitled to overtime, the court will have to interpret the collective bargaining agreement. The court finds that this interpretation of the collective bargaining agreement will be substantially dependent upon analysis of the terms of the agreement and, therefore, plaintiff's state wage claims are preempted by the LMRA. The motion to dismiss this claim shall be granted.

D. Motion for a More Definite Statement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 8

Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633
**(Cite as: Not Reported in F.Supp.2d)**

*8 Local 830 moves the court to require plaintiff to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e). (D.I.10) In this case, Local 830 contends that a more definite statement is needed because the complaint fails to "specifically delineate" the conduct performed by each defendant and that the conduct of Local 830 is only alluded to, not "specifically" pled. (D.I. 10 at 2)

A motion under Rule 12(e) is made to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case.[FN8] *Symbol Techs., Inc. v. Hand Held Prods., Inc.*, No. Civ. A. 03-102-SLR, 2003 WL 22750145, at *3 (D.Del. Nov. 14, 2003).

FN8. The advisory committee notes to Rule 12(e) state: "With respect to preparations for trial, the party is properly relegated to the various methods of examination and discovery provided in the rules for that purpose." *See, e.g., Campbell v. Miller*, 836 F.Supp. 827, 832 (M.D.Fla.1993) ("A motion for a more definite statement is not a substitute for discovery.")

Consistent with Fed.R.Civ.P. Rule 8, the complaint states the nature of the action, the general factual background, the basis for seeking relief, and the relief sought. "This is all that is required by notice pleading under the [Federal Rules of Civil Procedure]. In these circumstances, a motion for a more definite statement should not be granted." *Marshall v. Local 326*, No. 80-181, 1980 U.S. Dist. LEXIS 16547, at *1 (D.Del. May 5, 1980). Paragraph I of the complaint alleges that the action arises under Title VII. (D.I. 1 at 1) Among other things, the complaint alleges that the Union failed to respond to plaintiff's complaints, violated its collective bargaining agreement, and engaged in discrimination on the basis of race and sex. (D.I. 1 at 19, 31, 42, 61) In addition, the complaint demands various forms of compensation to be determined at trial. (D.I.1) The complaint, therefore, complies with Rule 8's liberal pleading requirements and provides sufficient notice to Local 830 to prepare a responsive pleading. Local 830's motion for a more definite statement shall be denied.

V. CONCLUSION

For the reasons stated above, defendant PBG's motion to dismiss is granted as to the sexual harassment claim, the breach of implied covenant and good faith and fair dealing and the Delaware Wage Payment and Collection Act, and as to all other claims denied. Defendant Local 830's motion for a more definite statement is denied. An order consistent with this memorandum opinion shall issue.

D.Del.,2005.
Tillman v. Pepsi Bottling Group, Inc.
Not Reported in F.Supp.2d, 2005 WL 2127820 (D.Del.), 178 L.R.R.M. (BNA) 2628, 151 Lab.Cas. P 10,559, 10 Wage & Hour Cas.2d (BNA) 1633

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.