## In THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ST.LOUIS | ) | |
| PLAINTIFF | ) | |
| v. | ) | C. A. NO. 06-236-SLR |
| LT. CHERYL MORRIS, et al, | ) | JURY TRIAL REQUESTED |
| DEFENDANT | ) | |

JUL 2 ᴇ 2007

RG scan

## ANSWER TO DEFENDANTS INTERROGATORIES TO PLAINTIFF

1. (a) Included in discovery. (b) Included in discovery (c) Included in discovery (d) Included in discovery.

2. Included in discovery

3. To plaintiffs knowledge includes but not limited to all personnel and inmates in prison system. ACLU. NEWS JOURNAL. All others included in discovery.

4. All inmates who are or were employed by the kitchen from 2000 until present and all guards included by but not limited to the same period. Included but not limited to all officers within the prison as well as all but not limited to all counselors also all included but not limited to Carl Danburg and all but not limited to his officers and commanding forces. Representative of the News Journal. Medical staff needed to explain treatment given.

5. DOC rules and regulation for procedures and any other evidence gathered through discovery along with evidence already in plaintiff's discovery.

6. Carl Danburg and any of his staff needed to explain procedures and policy of DOC as to (i) (ii) (iii) and (iv).

7. (a) JAMES ST.LOUIS (b) 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 (c) 6/13/51 (d) Carthage N.Y. (e) 2nd year college.

8. Items matter of public record.

9. Not applicable to present case.

10. No.

11. Not applicable to present case.

12. Doc has medical records. Wife handled everything on or before incarceration and she fails to co operate.

13. None accept those since the kitchen incident. Medical records will describe all problems except my discussions with Fr. Jim Jackson because of my unable to sleep and mental anguish

14. Blood pressure raise / rashes on body / non ability to sleep /body pains /dizziness /headaches / loss of appetite.

15. medical cream for rash /pain medication for body aches

16. (a) Talking to Fr. Jackson about the mental anguish / creams for rashes / blood pressure checked every other day (b) included in medical records.

17. Yes—all paperwork included in discovery.

18. $20,000 per defendant plus front money and any monetary award deemed fitting by the jury for emotional, physical and spiritual suffering. Talked to my legal advisors and came up with what we thought was fair. *and all legal expenses w/20% of reward going to prison ministry*

19. NO. (a) Prior none (b) none.

20. YES (a) included in discovery. (b) Included in discovery.

21. NONE YET. For (a) and (b).

*James St. Louis*

JAMES ST. LOUIS  #446518

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-236-SLR |
| | ) | |
| LT. CHERYL MORRIS, et al, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

## VERIFICATION AS TO ANSWERS:

I hereby declare under penalty of perjury that the attached Plaintiff's Responses to State

Defendants' Interrogatories are true and correct.

James St. Louis Jr.

James St. Louis

8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES ST. LOUIS,                          (

        PLAINTIFF,                     (

    v.                                      (          C. A. NO. 06-236-SLR

LT. CHERYL MORRIS, et al              (          JURY TRIAL REQUESTED

        DEFENDANTS.                    (

………………………………………………………………………………………………...

## ENCLOSED IS FIRST BATCH OF

## DISCOVERY

DATE..7/21/07

JAMES ST. LOUIS

JAMES ST. LOUIS

1181 PADDOCK RD.

SMYRNA DE. 19977

Sat. | Oct. 15 2005 - 2 wk notice to Lehman

Mon. | Oct 17 2005 - talked Morris about problems
in kitchen offered to step down if it would
be for the betterment of order. she said no.

Sund. | Nov. 13 2005    Govan & Sr. Louis probation
For one week per Morris (meeting)

Sund. | Nov. 13 2005    Govan told entire 3rd cooks
anyone who did not work for T-June will
no pay would be fired - Govan and I
went head to head. — 3rd cooks
went to Johnson he called Govan into
office after talking to me and I told
him to let it go and reprimanded him.
Govan went to Morris & asked for
my job.

Weds. | Dec. 7 day off called in worked 4 HRS.

Thurs | Dec. 8 called in day off for hearing on
incident

Fred. | Dec. 9 reported for work after 1 hr.
told fired. → asked for written comments. 3x

Sat | Dec. 10 Grievance filed

Weds. | Jan 18 2006 letter to Jansen all about kitchen

6/26/07    Fed Civ. Judicial Procedures & Rules (pg 140)
           273 F3d 761
           Supreme Court Rule 15 (a)(i)

March 12 2004 — Jersey & I had to be separated by Barton
April 12 2004 — 2nd Cook
11/5/04 — Govan said to Mena & Me → has gotten redey
ded weight can fire us to if we do not do as he orders. 4:45 P.M.
Feb 2005 — Blood pressure problems because pressure
work had low talks 2-3 times a week
Aug. 2005 — Threat Kelihor by Govan
10/15    2 wk notice Lelmore
10/18    Morris    Talked went stay.
11/13    Govan threatened All cooks if No work Thanksgiving
11/13    Govan & I probation for week. For Arguing
1/24/06    letter Morris/Klein/Warden/Knight asking for Morris request.
                                                                    information
2/1/06    letter to Price
2/16/06   met with C/o Bauley
6/27/06   Amend complaint news journal

6/29/2007

Dear Counselor

I have been ordered via Distric Court
by disclosure for Delaware Justice
Dept, To produce records that would
be used In my civil law suit, THESE
records will INClude my files, ALL
CORRESpondence involving myself, Programs
PSI Reports, CertIFICATes, classiFicAtions
reports And ANy other pAper work
with my NAme upon or involved in or
on it, I will Need 3 copies And [MUST]
present it to the Dept. oF JusTIce And
DISTRICT Court within 30 days From
(June) the 27th oF This MonTH. I will Also
need A copy (3) oF MY lAst classiFicntion
And How these points were determined
AT this time I am Also putting [ALL]
IN FRONT oF DISTRICT Court JuAge Sue Robinson
Counselors on notice As witnesses,
IF Need their presents will be
MAde AvAilAble to each As to dny
And time viA Court pAper work.

Mailed via in house
6/29/07
CC: file

THANK You
# 446518
James St Louis
Delta East
F 17  B

6/29/2007

To LT DeJesus

I requested a copy of a report and investigation done last year about Sg Johnson, from the kitchen, solititated Inmates To discurrage me from continuing with my civil law suit. You asked me About P.C. And recommended me to do it. I believed I had Nothing To hide And why should I be punished because a C/o broke The law. I told you the inmates NAME, HAWKINS And that he lives in 51. Now the justice dept. And the District Court has set A date they want this by Aug 15 2007. I Need (3) copies of everything And what disciplinary Action was taken Against C/o Johnson.

THANK You

MAiL in House
6/29/2007

James St Louis
Wells East
F-17 (B)
#446518

CC: file

P.S    report taken in E Building.

6/29/2007

To whom it concerns

I have a civil law suit in Delaware
District Court AND NEED (3) THREE COPIES
OF MY MEDICAL RECORDS SINCE I entered
the Delaware Prison System in
GeorgeTown. I Need [ALL] INFORMATION
contAined or should becontained for
presentation To Delaware Justice
Dept. AND DISTRICT CourT. IT [MUST]
be in by Aug 15 2007 — So I would
Like [ALL] documents ASAP.

THANK You

James St. Lawis
#446518
Della Earl
F-17 (8)

Submitted per
medical drop Box
6/29/2007

cc: files

In The United States District Court
For The District of Delaware

James St. Louis

   Plaintiff      Civil Action No.

     v        06-236-SLR

Lt. Cheryl Morris, Dir Chris
Klees, and Delaware Prisons
(all Officers and Supervisors)
including State of Delaware
   Defendants

Motion For Leave To File An
Amended Complaint

  Plaintiff James St. Louis, pursuant to Rules 15(a)
and 19(a) Fed. R. Civ. P. under Federal Rules
of Civil Procedure Rule 59(e), requests leave
to file an amended complaint adding and
negating parties and addressing 8th and 14th
Constitutional violations and Federal "precedent"
decisions not addressed in previous submitted
case.

  1. The plaintiff in his original complaint named
Lt. Cheryl Morris, Dir Chris Klees, and Delaware
Prisons (all officers and Supervisors including
State of Delaware) as defendants

  2. Since filing plaintiff has or would like

to change dependants to read Lt. Cheryl Morris,
Dir Chris Klein, administrator Michael Knight
and all officers and supervisors of the prisons
systems in the state of Delaware (to be named
later now known as John Does), who holds Constitution mentioned
   3. Plaintiff initial and most important violation
was not addressed and brings it to this courts
prompt attention now for it to carry out it
ruling as per "precedent" setting U.S. courts
have already decided.
   In Mc Duffie v Estelle  935 F2d 682,686
it was decided it was unconstitutional to
give inmates jobs involving supervisory
or disciplinary authority over other inmates
because of the risk of violence or exploitation.
It also says the power to hire and fire supervise
and control employee work schedules it
illegal. In Carrigan v State of Delaware
957 F.S. 1376 we read " in order to establish
and 8th Amendment violation by prison
officials, it must be shown that alleged
deprivations was objectively sufficiently
serious and that prison officials state
of mind was one of deliberate indifference
to inmates health and/or safety. Under
Dawson v Kendrick 527 F.S. 1252 prisoners
have the right to be secured by the 8th and
14th Amendment to be reasonably protected

from threats of violence and sexual assaults,
and are [not] required to wait until
they are actually injured by assalts
to obtain relief from such conditions).
We also see in Weemer v Amen 870
F2d 1400 were acknowledging in dicta
that if officials has authority over relevant
procedurals systems, his/her action or
[inaction] ear constitute "established
state procedure" and the official ear
be held liable.

4 Since initial filing of case these
witnesses have come forth to verify plaintiffs
accusations of threats, bribery, illegal firing
and punishment by fellow inmates especially
1st Cook Author Hoover and acknowledged
via complaints and letters to prison officals
and supervisors who not only were inactive
but condoned actions by standing behind
and authorizing said punishments and
firings per delaware correctional job
classifications posted and verbally given
to inmates.

1 Wayne Collazo            6. Richard Russell
2 WM. Hawkins              7. Thomas Morgan
3. Ralph O'Day             8 Kenny Thomas
4 Joshua Fox
5. Henry Duhadaway

5 There are much more names but they fear retalization if their names are printed.

6. To show prison concern a report or incident was filed per plaintiff on June 8 2006 which is included. To be added to this complaint one of the said inmates has authorized his name to be released to this court but does fear retalization from said Sg. Johnson, officer who made these comments. His name is William Hawkens and asks the court to protect his name but will testify for the plaintiff.

7. Plaintiff is not looking for only personal compensation because of these violations but also asks for normal damages and punitive damages and asks for an injunction that others will not follow in the same violations.

8. Plaintiff ask that [all] defendants be held in their "individual" capacity as well as "official" capacity.

9. Plaintiff would also like to add as defendants the Warden and Deputy warden as defendants through their "inactions".

10. This Court should grant leave freely to amend this complaint per Foman v Davis

371 U.S 178, 182 (1962)

6/27/2006

Respectfully submitted

James St. Louis Jr.
SBI # 446518
1181 Paddock Rd.
Smyrna Delaware

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Wallace E. Harden,
                    Plaintiff,

        vs.

Ruth Ann Minner, et al.,
                    Defendants.

Civil Action No.04-1392-11F

## Amended Complaint

This is a civil rights action filed by the Plaintiff, Wallace E. Harden, pro se, pursuant to United States Statutes, 42 U.S.C.A. §§1983-85, seeking damages and injunctive relief for alleged violations for "cruel and unusual punishment" under the Eighth Amendment for unconstitutional retaliatorial disciplinary action, and harrasment for Redress of Grievance in violation of the First Amendment, pursuant to the Americans with Disabilities Act of 1990, §§201-245, 42 U.S.C.A. §§12131-1216's, Civil Rights Act of 1991, §112., and the Handicap Persons Employment Protection Act, as applicable to Miller vs. Beneficial Management Corp., 977 F.2d 834 (3rd Cir. 1992), Thaddeus-X vs. Blatter, 175 F.3d 378, 389 (6th Cir. 1999)(en banc); see also Drexel vs. Vaughn, Civ.A.No.96-3918, 1998 WL 13178, at *7 (E.D.Pa. Apr.2, 1998)(determining that prisoner had engaged in constitutionally protected conduct before proceeding with retaliation inquiry).

Comes as following:
  1. The Plaintiff is a incarcerated inmate at the Delaware Correctional Center, Smyrna, Delaware 19977.
  2. Following an unknown period of time of having continuouslied been harrassed, giving numerous discriminatory job assignments disproportionate than those given to other inmates, by than Food Services Cpl.

Jim Feitz and Tommy Young.

On Nov 1, 2003, following his complaint about Cpl. Helper a package of sugar was found in one of his coat pockets, and was approached by Cpl. Helper regarding how it got there.

4. On that same day Plaintiff wrote a letter to Sgt's Feitz and Young regarding the incident. See exhibit A-1 . . . . . . . . . . .

5. On Jan 15, 2004, following the continual conduct of Cpl. Helper and complaints to Food Services management officials Plaintiff was told that his employment had been terminated (via) than Food Services Director Michael Knight II. reason given was management felt because of his complaints regarding Cpl. Helper, they beleive'd he need a psychological evaluation, and could not return to work unto an evaluation had been completed and they get the results thereof.

6. Plaintiff filed an institutional grievance, wrote another complaint of his employees conduct and requested an investigation into their actions. See exhibits A-2, and A-3 (Grievance also attached).

7. Plaintiff further submitted separate letters to Gov. Minner, Comm: Taylor, Wrdn: Carroll, Ron Drake (Internal Affairs Officer for (DCC)), Dpty Bureau Chief of Management Services: English, Building Counselor: Melbourne, and Dpty Wrdn: Burris, requesting from each to intervene. By returning him back to work and for back pay and good time, for the period he missed work. See exhibit A(3)(2) (reverse side of exhibit A-3 . . . . . . . . .

---

1. May the Court note that this discovery accured while the Plaintiff was at work, his coat was propely secured in the inmate coat room, accessible to all inmates and officers. In accordance with (DOC/DCC) rules, any inmate found to be in possession of any substance from his or her job may be reprimanded or suspended upon final disciplinary outcome.

2.

8. On Jan 12, 2004, Plaintiff received the Internal Affairs response from Director: Lupinetti, that stated he had found no cause for an investigation. See exhibit A-4............

9. On Feb 12, 2004, Plaintiff submitted a second grievance regarding the matter stating that he had never received the (1GC) copy of his initial grievance or any information from his former employers when and if he was going to receive the psychological evaluation. See exhibit B-1.......

10. On March 1, 2004, under grievance no. #146818. Plaintiff received the (1GC) Chairperson: Lisa M. Merson's memorandum rejection notice stating that the matter was a classification issue. See exhibit B-2............

11. On March 12, 2004, Plaintiff repeated the process with the same results. See exhibits C-1, and C-2............

12. Sometime thereafter, Plaintiff submitted an inquiry to Mr. Melbourne regarding whether or not he had received a write-up from the kitchen. Mr. Melbourne confirmed that while he had received two past write-ups, none was from the kitchen. See exhibit D-1.........

13. On June 8, 2004, now Food Services Director: Christopher Kline issued a memo finalizing Plaintiff's termination by stating:

"Mr. Heden, this letter is in response our discusion on May 14, 2004, as well as the information that I have gathered pertaining to the letter you have written referencing your employment in the kitchen. First of all I would like to make clear to you that employment in this facility is a privilage, which can be lost for various reasons. From the information I have gathered I dont feel that beinging you back to the workplace at this time will be benificial to you or the operation. During my interview with you it alarmed me that you still feel as if the staff is "out to get you". This feeling along with your expressed and documented difficulties accepting authority could potentially cause unnecessary disturbances. You requst to be reinstated is denied." See exhibit D-2.......

14. The Plaintiff truthfully can state that any counseling reports that may be found in his employment file from working in the kitchen can be link directly or indirectly to allegations of Defendant Helper.

## Cause for Action

In Abdul-Akbar, this ruled that in order for a prisoner to advance on a claim on retaliation. He must plead that the prison authority's decision does not advance legitimate penological goals such as preserving institutional order and discipline in dimissing him from his job. 1d. 910 F.Supp.986,1000-01 (D.Del. 1995). However, in Rauser, the Third Circuit held that the first prong was, a prisoner only prove that the conduct in question led to the alleged retaliation of constitutionally protected rights. 1d. 241 F.3d at 333 (citing Thaddeus-X vs. Blatter, 175 F.3d 378,389 (6th Cir.1999). The second prong of Rauser requires a prisoner to show that he suffered some adverse action at the hands of prison authority's. 1d. at 333 (citing Allah vs. Seiverling, 229 F.3d 220,225 (3rd Cir.2000). The third aspect requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. Mount Healthy Bd. of Ed vs. Doyle, 429 U.S. 274,287 (1977); see also Hines vs Gomez, 108 F.3d 265,269 (9th Cir.1977). Both cases were public employment cases and have been adopted in prisoner retaliation cases, in accessing "adverse action". Examples in that context means discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. Umbehr, 518 U.S. 668,116 S.Ct.2342 (nonrenewal of contract), Sindermann, 408 U.S. 593,92 S.Ct.2694 (same). In a prison setting, an "adverse action" is comparable to tranfer to segregation. Bart vs. Telford, 677 F.2d 622,625 (7th Cir.1982) (quoting Judge Posner) (another employment case). Ruled there is no justification for harassing people for exercising their constitutional rights (the effect on the freedom of speech) need not be great in order to be actionable. 1d. 677 F.2d at 625.

4.

Thus, finding a "causal connection" in a prisoner retaliation case means there must be a "causal connection" between the protected conduct and the "adverse action" to complete an affirmative case. Prisoner cases involves subjective motivation on the behalf of the Defendants. Crawford-El vs. Britton, 93 F.3d.813, 826 (D.C.Cir.1996) (quoting 844 F.Supp. 795, 801 (D.D.C.1994) (quoting Bart). Plaintiff asserts that he has demon-strated all three prongs of Rauser, in conjunction with the mandated (DOC/DCC) Policy's under Inmate Employment and Compensation Rights, Policy no. #1135 (for the hiring and firing of all institutional inmates).

Wherefore, Plaintiff seeks damages and injunctive relief for injury caused by the herein named Defendants, for conduct performed not preserving institutional order and discipline in dismis-sing him from his job. But was for the redress of grievances, violating his constitutionally protected rights. Abdul-Akbar, 910 F.Supp.986,1000 (D.Del.1995). By which, their actions are sufficient to have deterred a person of ordinary firmness from exercising his constitution rights. Allah, 229 F.3d at 225 (3rd.Cir.2000), as follows:

1. Defendant Phillis Helper is sued in her individual and official cap-acities acting under color of state law, for harassment in violation of his 1st Amendment Right. West vs. Atkins, 482 U.S.42, 50, 108 S.Ct.2250 (1988).

2. Defendants Tim Feitz, Tommy Young, Sheryl Morris, Harry Legates, Paul Downing, and Jay Wingle are sued in their individual and official cap-acities acting under color of state law, as conspirators in the actions of Defendant Helper. By failing to correct as supervising managers and other staff officials. Greason vs. Kemp, 891 F.2d 829, 836 (11th Cir.1990) (A supervisor can be liable under 1983 when reasonable person in the supervisor's position would have known conduct infringed on the constitutional rights of Plaintiff, and his conduct was causally

5.

related to the constitutional violation committed by his subordinate).

3. Defendants Michael Knight and Christopher Kline are sued in their individual and official capacities, as the Food Services Directors, acting under color of state law, for failure to adhere to their duties to uphold the laws, policies, statute, and customs of both the state and (DOC/DCC) in protecting the Plaintiff's rights. Johnson-El vs. Schoemehl, 878 F.2d 1043, 1049 (8th Cir. 1989)(liability may be found based on the breach of a legal duty that is proximately cause of injury), Williams vs. Smith, 781 F.2d 319, 323-24 (2nd Cir. 1986)(supervisor who learns of violation through report or appeal may be liable)

4. Defendant Ruth Ann Minner, is sued in her individual and official capacities as Governor of the State of Delaware, acting under color of state law, for failing to cure Plaintiff's civil rights violation upon the knowledge and evidence of the fact known to her. West vs. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250 (1988), Alexander vs. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990)(prison officials can't just sit on their duff and not do nothing to prevent violations of rights).

5. Defendants Stanley Taylor, is sued in both his individual and official capacities as Commissioner of the Dept of Corrections, acting under color of state law, for failure to act upon the knowledge of his subordinates. McMann vs. Coughlin, 689 F.2d 112, 125 (2nd Cir. 1983)(Commissioner could be liable for failure to act on knowledge of unconstitutional disciplinary practice), Morgan vs. Ward, 699 F.Supp. 1025, 1046 (N.D.N.Y. 1988)(Commissioner and prison superintendent could fairly be charged with constructive notice of defective disciplinary procedures). Including, the actions of Thomas Carroll (Wadn of DCC), Elizabeth Burris (Dpty Wadn of DCC), Kathy English (Dpty Bureau Chief of Supt Serv's), and James Lupinetti (Inte Aff'r's Dir) are individually and officially charged with the same duties as the Commissioner's underlyers when used in duty of authority in the prison context.

6.

**Requested Relief**

The Plaintiff request that the court grant the following relief:

A. Issue a declaratory judgment stating that _____

1. The violations against the Plaintiff's protected constitutional rights by Defendants Helper, Feitz, Young, Morris, Legates, Downing, Wingle, Knight, Kline, Minner, Taylor, Carroll, Burris, Lupinetti and English, do demonstrate an "adverse action" under the 1st Amendment to the United States Constitution, constituting a claim of retaliation against redress of grievance.

B. Issue an injunction ordering Defendants Minner and/or Taylor or his assigned disignee to:

1. Return Plaintiff immediately back to work to which he was and continue to be classified to, but prevented yet still by the Defendants retaliatorial hiring practices in relationship to my past grievances, that is the heart of this present action. Let the court note that Plaintiff has never caused a disruption or shown threaten behavior to fellow employees or staff personnel. Cpl. Helper who is the only link to any of the Defendants possible concerns no longer works under the Food Services division.

2. Pay back to Plaintiff all lost wages or back pay at an hourly rate of 18¢ per hour, as was his previous pay scale for each 40 hour work week missed.

C. Award compensatory damages in the following amounts:

1. $500 against Defendant Helper, who acted wilfully, wanton and deliberately in violation of state laws, correctional policy and the constitutional rights of the Plaintiff. Smith vs. Wade, 461 U.S. 30, 39-40 n. #8 (1983).

2. $1,000 against Defendants Feitz, Young, Morris, Legates, Downing, Wingle, Knight, Kline each for failure to correct subordinate conduct Smith v. Wade, 461 U.S. 30, 39-40 n. #8 (1983).

3. $1,000 against Defendant Lupinetti for failure to correct known or should have known violation of Plaintiff's constitutional rights. Smith vs. Wade, 461 U.S. 30, 39-40 n. #8 (1983).

4. $1,500 against Defendants Taylor, Burris, Carroll, and English each for failing to correct known or possible known violation by subordinates. Smith v. Wade, 461 U.S. 30, 39-40 n. #8 (1983).

5. $2,000 against Defendant Minner, as executive officer of the state. She has a legal obligation to protect Plaintiff constitutional rights. Alexander vs. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990), Smith vs. Wade, 461 U.S. 30, 39-40 n. #8 (1983).

E. Award punitive damages to Plaintiff as it may be appropriately entitled, or collectively for $5,000. Adding, that "respect for the law, particularly by officials responsible for the administration of the state's correctional system, is in itself a matter of the highest public interest). Duran vs. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986).

Respectfully submitted,

Dated: February 23, 2006

Wallace E. Harden
Delaware Correctional Center
Smyrna, Delaware 19977

8.

Sgt. Friss or Sgt. Young;                                    11/1/03

Today, Saturday, when I got done work and went to get my coat out of the coat room, I noticed that my coat was heavy. When I checked my pockets I found a package of sugar in my pocket. I threw the package away. I don't know who put the sugar in my coat, but given recent events I believe ms. Helper had something to do with it. I believe she was hoping I wouldn't notice it, or she could shake the coat room down and find it and try to fire me again - nothing happened friday when I came back to work, but saturday she comes in and this happens. could this be a coincidence, I don't steal, and this letter serves as notice if she shakes down the coatroom, or has somebody shake down and something is found in my coat. I was set up.

CC: Counselor Milbourne

                                        Wallace Harden

                         Ex. A-1

Ron Drake                                    Jan. 15, 2004

I Wallace Harden would like to make a complaint gainst c/o sgt. cook ms. P. Helper, on the above Date 2-23-03 A incident that was unacceptable happen. That shouldn't of happen, it started at breakfast time this c/o sgt. Helper knows that every morning all the inmates that works in the kitchen other then the cooks are suppose to eat in D-chow boy three A/M. But for some reason this ms. sgt. Helper wants to shut and lock the door to the chow hall befor anybody can get to the chow hall, so this morning I asked another inmate to go and get another c/o by the name frisch to come down to make ms. Helper open the door to let a few of us inmates into the chow hall to eat, we even yell out to Her through a serving line Window for ms. Helper to open the door but she just sat their and ignored us, so this is when we called for sgt. frisch, so now after Her and sgt. frisch have their little words a mongs each ther about not closing the door until after (3) she wants to start making threats towards me about she should of fired my ass along time ago if I just keep talking and she said this because she knows everytime I have a problem with her I always go to sgt. frisch and tell Him my Problems about this c/o cook given me a hard time, so I tell's this c/o cook that she is not going to keep threating me about fireing me from my job, but this is not the only isolated incident that has occures

Ex.A-2

Internal affairs

Jan. 15, 2004

On January, 14, 2004. Kitchen Manager Michael Knight terminated my employment Pending a Psychological evaluation. The reason that I was given for this was because I filed a complaint with internal affairs about c/o cook Helper. c/o cook Helper has repeatedly threatened me, and when I was told " I should have fired your ass a long time ago" I complained in writing. It was not the first time. The reason was further elaborated that I did not follow the chain of command. Nothing in the DOC Procedure requires an inmate to follow a chain of command when a c/o makes threats against an inmate, Violates the code of conduct, and acts in an unprofessional Manner. That said, I had complained about Her to several c/o cooks sgt. young and sgt. frisch on more than one occassion, But Nothing was done. I do not know why c/o cook Helper has a Problem with me, But she has a Personal Problem with me. She wants me out of the Kitchen, and this is how she is doing it. I am not the only inmate who had a complaint about her behavior. I request the following. A complete and Thorough investigation of c/o cook Helper, and Kitchen Manager Knight for Violations of their code of conduct, and not following Doc Procedure's. I request that my job be re-initated and I be credited for all the time missed.

Ex. A-3

INTERNAL AFFAIRS UNIT

January 22, 2004

M E M O R A N D U M

TO:        Inmate Wallace Harden
           SBI #00146818
           Delaware Correctional Center

FROM:      James J. Lupinetti, Director
           Internal Affairs Unit

SUBJECT:   Your Letter of Complaint

*****************************************************************

        I have reviewed the circumstances of your request. At
this time, I find no cause for an Internal Affairs investigation.

        Your letter is being forwarded to Ron Drake,
Institutional Management and he will contact you regarding your
letter of complaint.

JJL:jd
I.A. Case File #04-008
Cc:  File

Ex. A-4

FORM #584

## GRIEVANCE FORM

FACILITY: DCC

DATE: Jan. 14, 2004

GRIEVANT'S NAME: Wallace Harden

SBI#: 00/46818

CASE#:

TIME OF INCIDENT: 08:00

HOUSING UNIT: E

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

On 1/14/04 Kitchen Manager Michael Knight terminated my
employment in the kitchen pending a psychological evaluation.
This was done because I filed a complaint with Internal Affairs
regarding c/o Cook Helper who made repeated threats against
me. This violates procedure as an inmate has a right to file
a complaint against an officer, and not be retaliated against
as a result of the complaint
(See attached copies of complaints)

ACTION REQUESTED BY GRIEVANT: Investigate why Kitchen Manager Knight
was allowed to retaliate against grievant. Reinstate grievant
to his job, and credit grievant with the pay and good time he
would have earned if Manager Knight had not violated procedure
and retaliated against grievant for exercising his protected rights.

GRIEVANT'S SIGNATURE:_____    DATE:_____

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)  _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

RECEIVED
FEB 0 4 2004

April '97 REV

Inmate Grievance Offic

FORM  #584

GRIEVANCE FORM

FACILITY: DCC _____     DATE: 2/12/04 _____

GRIEVANT'S NAME: Wallace Harden     SBI#: _____

CASE#: _____     TIME OF INCIDENT: ONGOING _____

HOUSING UNIT: _____E_____

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

This is supplemental information on a previously filed
grievance. I have not received a copy back with a number to
give you. It was filed on 1-14-04. Kitchen Manager Michael
Knight was supposed to notify mental Health to give me a
psychological evaluation which I was (suspended, terminated
placed on sick leave) and depending on the results would determine
my job status. Michael Knight has never contacted mental
Health. I learned this when I got tired of waiting and
contacted mental Health myself.

ACTION REQUESTED BY GRIEVANT: See previously filed grievance

GRIEVANT'S SIGNATURE: Wallace Harden     DATE: 2/12/04

WAS AN INFORMAL RESOLUTION ACCEPTED?     _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____     DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

Ex.B-1

RECEIVED
FEB 2 4 2004
Inmate Grievance Office

STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
**OFFICE OF THE INMATE GRIEVANCE CHAIRPERSON**
1181 Paddock Road
SMYRNA, DELAWARE 19977

**MEMORANDUM**

To:     Inmate Harden, Wallace          E          *146818*

From:   Cpl. L.M.Merson, Inmate Grievance Chairperson

Date:   Monday, March 1, 2004

RE:     Grievance

The grievance submitted by you dated 02/13/04 is being returned to you for the following reason(s):

_____  The complaint was addressed by the IGC:

_____  **Security issue** (involves the security and/or staffing of the Institution and/or the safety, health, and/or welfare of inmates, staff, and the public.

__X__   **Classification issues** (security classification, jobs, transfers, programs, housing unit assignment). Classification has its own appeal process. The inmate must write to the DCC Classification Office within 7 days after the inmate receives the Classification decision. The letter must state that the inmate is appealing the classification and clearly indicate the reasons the inmate disagrees with the classification decision.

_____  **Disciplinary issue.** Disciplinary actions cannot be grieved but must be APPEALED following the Correctional Code Of Penal Discipline.

_____  **Parole Board Decision.** The inmate must write a letter to the Parole Board within 30 days of the Board's decision, expressing the desire to appeal the decision and listing the reasons. The Parole Board's address is: Board of Parole; Carvel State Office Bldg.; 820 N. French Street, 5th Floor; Wilmington, DE 19801.

_____  **Inmates cannot request or demand disciplinary action on staff.** If you have a complaint regarding staff, WRITE A LETTER to that person's supervisor; in this case, that is:

_____  This is an issue/complaint that has already been grieved by you or another inmate.

_____  Grievance is unacceptable because it has passed the seven day timeframe allotted to file a grievance.

_____  The grievance is a photocopy, carbon copy, written in pencil, red ink or is illegible. Original grievance forms must be legible and written in dark blue or black ink.

_____  This complaint is addressed in the housing rules for your housing unit. Refer to the Housing Rules, page ____, for clarification and/or direction.

_____  Action Request is Inappropriate or not completed. Inmate must make an actual request; such as, request that an Investigation be conducted. (inmates are not forwarded results of investigations that involved staff conduct)

_____  Documentation must be attached to the grievance when it is resubmitted that supports allegations/complaint; such As commissary receipts, Form 537, etc. The IGC will make copies of the items submitted with the grievance and Return the originals to the inmate.

_____  Other:  *FSD Right-479 + follow-up*

cc: inmate
Original: file

$Ex.B-2$

# The ISTHMUS, August 1998

Page

## Inmate Grievance Procedure

### What Is Its Purpose?
- To reduce tensions in correctional facilities
- To identify and effectively resolve problems
- To eliminate and/or reduce the number of class action lawsuits

NOTE: Inmates are encouraged to seek their counselor's advice on how to best pursue a response to their concerns before prematurely filing a grievance.

### What Is A Grievable Issue?
- Complaints about staffs' actions
- Issues dealing with monetary accounts and records
- Institutional operations (food, clothing, commissary, housing conditions, etc.)
- Institutional programs
- Mail, telephone, and/or other Communication issues
- Law library problems

### What Are Non-grievable Issues?
- Classification
- Disciplinary
- Parole board decision

NOTE: These issues must be appealed through their respe appeals' processes.

#### For Your Information
Grievance forms are available in the Sergeant's Office of your unit. Medical grievances have their own forms.

Questions regarding the grievance procedure can be addresse Institution Grievance Chairperson, Sgt. D. M. Williams, by in-house

Sending numerous copies to various persons is not necessary. Y only send one copy to the I.G.C.

The I.G.C. prohibits reprisals against inmates for their use or part in the process.

Grievances are kept separate from the inmates master file.

These and other grievance procedure guidelines are available for in your housing units Sergeant's Office.

## Grievance Procedure Diagram



FORM #584

GRIEVANCE FORM

FACILITY: Dcc                          DATE: 3/17/04

GRIEVANT'S NAME: Wallace Harden        SBI#: 146818

CASE#:_____                         TIME OF INCIDENT: on going

HOUSING UNIT: E

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Two months ago to the day grievant filed grievance over
actions of Kitchen manager Michael Knight Placing him
on sick leave for Psychological Evaluation. Grievants
complaint was about Knight Volating Procedure. To date
grievant has heard nothing from grievance office,
not even an acknowledgement of the grievance.

ACTION REQUESTED BY GRIEVANT: get Process moving on Two
Month old grievance. Investigate why grievance
office is not Processing and following through on
grievances in a timely fashion.

GRIEVANT'S SIGNATURE: Wallace Harden      DATE: 3-17-04

WAS AN INFORMAL RESOLUTION ACCEPTED?        ____(YES)  ____(NO).

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____       DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

Ex. C-1

RECEIVED

April '97 REV

MAR 2 0 2004

Inmate Grievance O

STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
OFFICE OF THE INMATE GRIEVANCE CHAIRPERSON
1181 Paddock Road
SMYRNA, DELAWARE 19977

MEMORANDUM

To:    Inmate Harden, Wallace        E

From:  Cpl. L. M. Merson, Inmate Grievance Chairperson

Date:  Monday, March 22, 2004

RE:    Grievance

The grievance submitted by you Dated: 03/17/04 is being returned to you for the following reason(s):

____   The complaint was addressed by the IGC:

____   Security issue (involves the security and/or staffing of the Institution and/or the safety, health, and/or welfare of inmates, staff, and the public.

____   Classification issues (security classification, jobs, transfers, programs, housing unit assignment). Classification has its own appeal process. The inmate must write to the DCC Classification Office within 7 days after the inmate receives the Classification decision. The letter must state that the inmate is appealing the classification and clearly indicate the reasons the inmate disagrees with the classification decision.

____   Disciplinary issue: Disciplinary actions cannot be grieved but must be APPEALED following the Correctional Code of Penal Discipline.

____   Parole Board Decision: The inmate must write a letter to the Parole Board within 30 days of the Board's decision, expressing the desire to appeal the decision and listing the reasons. The Parole Board's address is: Board of Parole; Carvel State Office Bldg.; 820 N. French Street, 5th Floor; Wilmington, DE 19801.

____   Inmates cannot request or demand disciplinary action on staff. If you have a complaint regarding staff, WRITE A LETTER to that person's supervisor; in this case, that is:

____   This is an issue/complaint that has already been grieved by you or another inmate.

____   Grievance is unacceptable because it has passed the seven day time frame allotted to file a grievance.

____   The grievance is a photocopy, carbon copy, written in pencil, red ink or is illegible. Original grievance forms only and they must be written in Black or Dark Blue Ink.

____   This complaint is addressed in the housing rules for your housing unit. Refer to the Housing Rules, page ____, for clarification and/or direction.

____   Action Request is Inappropriate or not completed. Inmate must make an actual request; such as, request that an investigation be conducted (inmates are not forwarded results of investigations that involve staff conduct).

____   Documentation must be attached to the grievance when it is resubmitted that supports allegations/complaint; such as commissary receipts, Form 537, etc. The IGC will make copies of items submitted with the grievance and return the originals to the inmate.

__X__  Other: Both grievances were returned to you as neither are grievable. Jobs are a classification issue and a privilege.
cc: inmate         F SD K night F -/-7 /
Original: file

Ex. C-2

## COUNSELOR APPOINTMENT REQUEST FORM

NAME _Wallace Harden_

TIER _B_    CELL # _12_

REASON _I need you to check my file to find out if I have any write-ups from food service or any counsel reports from food service and if so how many, thank you._

1. Write up For Poss. Non-Deg. Contraband Mayounnaise?
2. 11-16-01 Chow # 11 Fugly tooban

## DO NOT WRITE BELOW THIS LINE

\* _You Have a lot of Write-ups but only one From the Kitchen_

I will be able to see you on _____
sometime between _____.
If you cannot keep this appointment, you need to inform me in writing and fill out another request form. Please have your questions and concerns together at the time of the appointment to avoid delays.


Thank you,

Counselor R _____

FORM # 795

Ex. D-1

CERTIFICATE OF SERVICE

I, _Wallace E Harden_, hereby certify that I have served a true and correct cop(ies) of the attached: _Amended_ _Complaint_ upon the following parties/person(s):

TO: _Office of the Clerk_
_United States District Court_
_844 North King Street_
_lockbox 18_
_Wilmington, Delaware 19801-3570_

cb: _Office of the Clerk_
_To: Department of Justice_
_Carvel State Office Building, 6th Flo_
_820 North French Street_
_Wilmington, Delaware 19801_

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977, :

On this _23_ day of _February_, 200_6_.

* _Wallace E. Harden_

3-31-07

I worked in the Kicthen Bock in
04 And the Headcook told me what
I had to do, Bock in the main Kicthen

Jerry Payne
#415200 CBL9

We certify that we worked in the
kitchen at DCC in Smyrna, and the officers
there appointed inmates to be supervisors and
through their authority had power of punishment
and assigning jobs. We believe that because of this
authority to inmates the atmosphere there was
hostile and played a major role in our performance
because of the physical and emotional stress and
the constant fear of retaliation. We also have never
received any rules or what action will be taken for breaking
those rules from the prison.              Eddie D Kline Jr.

                              Hugh P. Mc Cafferty
                              David Muzzi
                              Wynne Collage
                              Warren Chapman
                              DIRRICK PIERCE
                              Kenneth Thomas

To: Whom it may Concerns
From: Clyde F. Evans     SBI#205823
House: 1181 Paddock Road
     Smyrna, DE 19977
Dated: 4-16-07

Re: To How The Main Kitchen is being ran at D.C.C.
     (Smyrna Jail)

To: Whom it May concern,

   I Clyde F. Evans would like to inform you on the things
that has been done to me and other inmate; by the C/O's and
The First Cook in the Kitchen.
   I would like to inform you on a few different things that
are going on in the Main Kitchen and MHU's Kitchen.
   • You have inmate's as first cooks' and second cooks'.
   • They are telling other inmates to do two or three
different job.
   • If you do not leasen to the (inmate) First or second
cook, they will threat you; by demoteing you or haueing you fired.
   • They keep track of you attendance;
          (If you miss days for sick call or a visit they are not)
          (Suppose to hold it against you; But they do.)
   • When you miss like six or seven day in a month on
to the first cook (inmate) will "tell you if you miss other
day you'll be demote."
   • C/O well demote a person for something and
give them 90 days in a different position.
   • C/O's and T/'s will demote and then when you try
to get your job (position) back them might not.
          (they will tell you that you have 90 working day;)
          (when if First start off as 90. reaglry day.)
   • T/'s have also gave same people a raise and same
did not receive a raise.
   (People that work for 8 monthy recieve a raise where a)
   (Person that work there for a year and get demote)
   (did not recieve one)

• 4/T Morris has told me that I would not get a position back that I was demote From for a 90 day period.

These is just some of the thing I have seen and have heard.

I would like to thank you For your time in this matter. I would appreicate it if you would let me know you decide.

Respectfully thankyou.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES ST. LOUIS,                              )
        Plaintiff,                          )
                                  )
             v.                               )        Civil Action No. 06-236-SLR
                                  )
Lt. CHERL MORRIS, et al. ,                   )
        Defendant.                          )

## MOTION TO AMEND PLEADING

        Plaintiff moves to amend is pleading pursuant to Fed. R. Civ. P. 15(a), and in support of motion, states:

        Plaintiff, JAMES ST. LOUIS, pursuant to Rules 15(a) and 19 (a) Fed. R. Civ. R. under Federal Rules of civil procedures Rule 59 (e), request leave to file an amended complaint adding defendants not addressed in previous submission . In support of this action plaintiff uses Judge Robinson's #8 dated 4/16/2007 Memorandum Order  giving petitioner option to Amend complaint adding defendants;    (A)      1.RALPH HEVERIN 2. DAVID PIERCE 3.BERNIE WILLIAMS 4. MICHAEL McMAHON 5. ANTHONY RENDINA.      The plaintiff uses the following facts, rules, and statutes to argue this motion (B) 1.In U.S. v. Goodwin 102 S.Ct. 2485 the Supreme Court said due process of law is violated when government vindictively attempts to penalize a person from exercising existing protected statutory or constitutional rights. U.S.C.A. 5, 14.2. In Griffin v. Spratt  969 F2d 16 the 3rd Circuit said due process is violated if a written statement by factfinder of evidence is [NOT] presented to plaintiff and this was done in both instances by all (see letters inclosed requesting this information) 3. The nucleus of this argument is deeply seeded in o6-236-SLR and both cases are embroiled in the same alligations. 4. The (5) individuals in this case were involved in an APPEAL NOT A DISCIPLINARY action  of plaintiff initiated by plaintiff [2 ] Months after disciplinary action was taken by Lt Morris. (see

exhibits enclosed). 5. All (5) defendants were notified about appeal but to no avail. Petitioner was sentenced to (5) days CTQ and was sent to the MHU for (138) days denying him his minimum status and priveledges for in their own rules was a minor infraction. (see rules 4.2 listing infraction and class it falls under). 6. Under "clearly establish" 11 Del. 6535 ,it says every inmate "SHALL" receive a copy of the rules and prison regulations along with procedures for dealing with violations ;acknowledged by Del. Supr. Court in ROSS v. D.D.O.C. 697 A2d377; WHICH ALL PARTIES INVOLVED HAS YET TO DO (see Texaco Inc. v. Short 102 S. Ct. 781 and procedures from Bureau of Affairs--Hope v. Pelzer 122 S.Ct. 2508) that prison sentenced petitioner to a class 1 sentence for a class 2 infraction at an appeals hearing. (see inclosed exibites). 7. Petitioner also wished to add mailing from 10/27/2006 as evidence of appeal which includes letters asking for an appeal and being granted. 8. The S.Ct. in PARROTT v. TAYLOR says all state officials who fail to follow p rescribed procedures (statutes) guaranteed under due process CAN AND MUST be held accountable under § 1983. 9. Under the S.CT. ruling in Hunter v. Bryant all individuals though they have qualified immunity can and must be held accountable and it is the duty of this court to protect the rights of all inmates when they see a violation of statue and/or constitutional magnitude thus inforcing an injunction to mandate prison officials to follow existing statute and void any disciplinary action until this is done.

Submitted this 1 day of May 20 07

James St. Louis Jr.

Delawere Correctional Center
1181 Paddock road
Smyrna, DE 19977

Petitioner ask for legal fees including mailing and monitary reinbursments a jury trial deems fit.

In the United States District Court
For the District of Delaware

James St. Louis
            plaintiff

Ralph Heneuer
David Pierce
Officer Bernie Williams et al.

Motion For leave to File Pertinent
evidence not available until recently
as provided by ACLU under freedom
of information act.

Plaintiff James St. Louis persuant to
Civil Rights Act 42 USC 1983 filed
on 10/14/2006 regarding procedural
due process violations would like
to add exhibits and explanations
below.

1. exhibit A
    A. note date of incident
    B. note disciplinary type
    C. violations recorded
2. exhibit B
    A. date on form of grievance
    B. date of return on back

3    exhibit C

____ A. return letter from deputy Worden
addressing appeal with date and assigned
officer.

4.    exhibit D and E

A. date officer first looked into
appeal (top right)

B. notice of hearing.

5.    exhibit F

A. last appeal from Chief of Bureau
denying defendant due process.

The argument brought forth for
defendant is one of violation of procedures
by the State of Delaware Correctional Center
and officers involved in this complaint
per their own procedural manual
(exhibit G)

In manual it list Class I and
Class II offenses and what each are and
how to handle these hearings. On page
5 it list Class I hearings and procedures
to page 8 where Class II offenses begin.
If you check violations on defendants
sheet all his charges are Class II despite
an individual identifying them as class I.

Also on page 8 it list sanctions and
continues on page 9 with Class II sanctions

It also says that with a class II
violation all penalties are given out by
supervising authority unless you already
have 3 write ups, then the 4th is a
class I. Defendant has [no] other write
ups not even a 24 hours loss of all
privledges. As read in Class II hearings
   Appeals are addressed next for class
I and Class II which was not followed
per departments own procedures.
   Defendant asked numerous time
for a copy of rules from law library
and building C/o and was denied
access saying they are prohibited from
giving out to inmates.
   It also addresses how a Class I or
Class II offense has to be forwarded to
the watch commander for review before
punishment is handed out. This was
never done. Defendants report was only
addressed because defendant pushed
the issue as a false report for
retaliation in the kitchen. Procedures
also say that once a Class II hearing
is done which I was terminated with
no other punishment. Upon appeal no
further punishment can be handed out.
Defendant recieved 5 days confined to quarters

and was classified to a higher security housing unit with less freedom and access to law library and other activities like church and bible study which defendant has been denied. (See exhibit H)

Defendant first is asking for an injuction for defendant to return to his minimum security classification, expunge of incident from records, return to building where defendant was housed.

Defendant also ask this court to order the Delaware Correctional Prison System to post in a relevant and high traffic location the procedures and listings of all disciplinary actions so this unfortunate incident doesn't repeat itself. Defendant also ask like previously all personally in their official and individual capacity those who in activity and non activity be held accountable monetary and sanctions permitted and any other relief deems appropriate by this court.

James St. Louis

Disciplinary#
1022173

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261
**DISCIPLINARY REPORT**

Date: 12/09/2005

| Disciplinary Type: Class1 | | Housing Unit: Bldg E | | IR#: 1028348 | |
|---|---|---|---|---|---|
| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
| 00446518 | Stlouis, James J | DCC | Bldg.14 Food Prep. Area | 12/07/2005 | 12:00 |

Violations: 2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

| Witnesses:1. N/A | 2. N/A | 3. N/A |
|---|---|---|

**Description of Alleged Violation(s)**

On The Above Date And Approx. Time I/M James St. Louis Was Terminated For Lying And Abuse Of Privileges/M James St. Lou Told Me, Fssii Boring That Chicken Parmesan And Bread Pudding W/ Raisins Was Approved By Director Klein. I/M Lied To Me Fs. Boring About The Approval Of The Products.

Reporting Officer: Boring, Mary M (FS Specialist I & II)

**Immediate Action Taken**

Immediate action taken by: Boring, Mary M -FS Specialist I & II

404 Written

**Offender Disposition Details**

Disposition: N/A                            Date:N/A          Time: N/A          Cell secured? No

Reason: N/A

Disposition Of Evidence: N/A

**Approval Information**

Approved: ☐          Disapproved: ☐          Approved By:_ ()

Comments: N/A

**Shift Supervisor Details**

Date Received:                  Time:                  Received From:_

Shift Supervisor Determination:

[] Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[] Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing

_____
, ()

I have received a copy of this notice on DATE:_____ TIME: _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer:         _____          Offender: _____

Stlouis, James J

*exhibit A*

#22285

**FORM  #584**

## GRIEVANCE FORM

FACILITY: _Bldg. 14 Food Prep Area_    DATE: _12/10/05_

GRIEVANT'S NAME: _JAMES ST. Louis_    SBI#: _00446518_

CASE#: _disciplinary # 1022775_    TIME OF INCIDENT: _Report  12:00_

HOUSING UNIT: _E_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_See sheet included (3) to explain_
_grievance,_

ACTION REQUESTED BY GRIEVANT: _appolize from Ms Boring_
_and reinstatement and back pay from_
_main kitchen and struken from my_
_record,_

GRIEVANT'S SIGNATURE: _James St. Louis_    DATE: _12/10/05_

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

_exhibit B_

April '97 REV

RECEIVED
DEC 1 3 2005

10:30 AM    talked to Karney to see grievance officer

12/9/05    9:50 AM

9AM left Building E to go to Kitchen to work upon entering Kitchen I handed my pass to officer Wagner and proceeded into Kitchen to coat room and then to set up for todays work. After getting the count and needs for diet cooks I noticed a sign up on the zone one office for 2nd cooks. I saw I/M Coles and asked him about it. He explained that I was Terminated and he was told to run the floor. I proceeded to Lt. Lehman's office and upon entering asked him if I was terminated. He said he just received an E mail outlining suspension pending termination of out come of hearing. And told me spec. Boring wrote up this order. I asked him what for and could I get a copy of it. He proceeded to enter his computer and gave me a copy of said order. We talked for awhile and he said his advise to me is chill for awhile and grieve it, and was sure the truth would come out sooner or later. I left and went back to my building were I noticed the write up was dated 2 days ago at noon.

facts:

#1. Around Thanksgiving time we (cooks) were preparing a Thanksgiving day meal and Ms. Boring asked if we were going to have bread pudding I responded and told her no we were having sweet potato pie instead. She said she always

adds raisins to her bread pudding and wouldn't it be nice if we could do it here. I told her probably but I didn't know when we were going to have it. She asked me to let her know so she could bring in some raisins for workers chow and I said I would. In the mean time Mr. Greenwell (a second cook) told me Mr. Govan (1st cook) and himself met with Mr. Cline (head of kitchen) and was told if we had enough bread after making stuffing for Thanksgiving he could do bread pudding sometime. Now two weeks ago we had chicken patties and had 200 left over from lunch which I put in the freezer. And last Monday we had spaghetti and meat sauce left over from dinner that was put in the cooler. I said to Mr. Govan it would be nice if this week we had chicken patties w/sauce and bread pudding and he agreed says ask zone one if we can do it Thursday seeing it is a terrible meal. I proceeded to zone 1 and asked officer Johnson if he was incharge Thursday and he said yes. And I asked to run something by him I told him of Greenwells conversation about Kline oking bread pudding

and I told him about the chicken
patty and sauce and ask if it would
be alright with him if we had them
Thursday and he said it was OK.
Upon leaving zone one I saw
Ms. Boung and told her we were
having Bread pudding and chicken patty
and sauce Thursday and she said she
wanted to bring in raisins. I told her
to talk to Mr. Greenwell because he
had Klenes permission and that she
should clear it through him. She
immediately went to Greenwell and
discussed the issue upon completion
told me she was going to deck Mr. Kleno
  The next thing I know I have Wensday
off but worked ½ a day (which was
the 7th worked to 1pm) and no one said
anything to me. Thursday I was called
into the kitchen at 1:30pm to see
Lt Morris and Lt. Lehman to answer
questions about the supposedly meal.
I did not go into work Thursday because
I was told by 3rd Cooks Wensday
night at 5pts that the meal was
Canceled and was asked if I was
OK. No one mention the write-
up or suspension until this AM.

12/8



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

#### MEMORANDUM

TO:      IM James St. Louis SBI# 446518 E D33B

FROM:   Deputy Warden Pierce

DATE:   February 7, 2006

RE:      Disciplinary

I received your letter dated February 1 2006, regarding a disciplinary you received
and have forwarded your concerns to Hearing Officer Williams for his action.

DP/dc
Attachment
cc:    S/Lt Williams
       File

exhibit. C

#44658 E Bldg.
D33B

RECEIVED   2/1/06

FEB 0 2 2006

DEPUTY WARDEN I

Dear Deputy Warden Pierce

Sir I am writing you because I can not
get an answer to my problem. On Dec. 7 2005
Officer Boring, from the kitchen, wrote a
disciplinary report #1022173 which said I
lied to here for my own personal gains. I
worked pass the 1200 hour this report
was done and upon asking 2 times if I
was fired was told no by Lt. Lekman
from the kitchen. On December 9 2005 I
was told about this disciplinary report,
2 days later, and was given a copy of
it but was also told by Lt. Lekman
I was suspended pending a disciplinary
hearing and that I should file a grievance
in this action. Upon my return to my
building I asked the building officer in charge
to call to C/O incharge of prison so I could
put forth a complaint. I was told he would
be over as soon as he was free, that was
about 9:40 AM December 9 2005, and I
still haven't seen him. I asked two
more times and was told to be patient
I decided to write my grievance and
presented it to the building C/O who placed
it in the grievance box on 12/10/05.
As of January 24, 2006 I had heard
nothing about my grievance or my

disciplenary hearing and wrote a letter
to the Warden, the Grievance Officer, Chris Klein,
Michael Knight and Lt S. Morris explaining
to them that I have yet received my 8th Am
rights to due process by [not] having a
disciplinary hearing and also requested
information which I tried to get from
law library and the building C/O about
kitchen disciplinary hearing, which I was
told does not exist. I told them about
the witnesses I would like to call for
my hearing.
    Now we come to today 2/1/06 I
received back from the Grievance Officer
my paper work telling me I can not
Grieve a disciplinary action. The first
time I did a grievance was about Counselor
McMann and the physical threats and
was told I could not grieve that. What
exactly can be grieved? I do not
understand. I do want a disciplinary
hearing and have a right to one and
will go to civil federal court for one.
I am in the process of obtaining a lawyer
you are all familar with civil law
suits I don't want any problem only
what the law says I can get and that
to be treated fairly and which is
[not] happening,

I'm not going to threaten anyone
by I am telling you this I've made copies
of everything and sent them out to my
son and told him to go to the papers
with both grievances if I do not tell
him progress is being made.

I'm so so sorry for having to
involve you but as an officer told me
who give me your name. If we had
competent c/o here who knew what
was right and how to do it I wouldn't
have to address this to you.

See I'm not an angle but I also
do not lie and I will not admit
something I did [not] do or have something
in my record I did not do without
fighting with everything I have at hand.
I was told if I push this issue there
could be repercussions the only thing
I say to that is God protects those who
trust in Him and nothing happens
without His sayso.

I hope we can address this issue
and come to a fast solution

Thanks for your
time

Jim St. Lewis
446518
D33

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## DISCIPLINARY REPORT

Disciplinary Type: Class1                    Housing Unit: Bldg E                    IR#: 1028348

| Pop. | SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|---|
| | 00446518 | Stlouis, James J | DCC | Bldg.14 Food Prep. Area | 12/07/2005 | 12:00 |

Violations: 2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

Witnesses:1. N/A                    2. N/A                    3. N/A

### Description of Alleged Violation(s)

On The Above Date And Approx. Time I/M James St. Louis Was Terminated For Lying And Abuse Of Privileges/M James St. Lou
Told Me, Fssii Boring That Chicken Parmesan And Bread Pudding W/ Raisins Was Approved By Director Klein. I/M Lied To Me Fs
Boring About The Approval Of The Products.

Reporting Officer: Boring, Mary M (FS Specialist I & II)

### Immediate Action Taken

Immediate action taken by: Boring, Mary M -FS Specialist I & II

404 Written

### Offender Disposition Details

Disposition: N/A                    Date: N/A          Time: N/A          Cell secured? No

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: ☑    Disapproved: ☐    Approved By: Lee, Bradley Jr.(Staff Lt./Lt)

Comments: N/A

### Shift Supervisor Details

Date Received: 02/15/2006        Time: 13:57        Received From: Boring, Mary M

### Shift Supervisor Determination:

[ ]    Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate
revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]    Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin-

Rec

Disp                    Lee, Bradley Jr.(Staff Lt./Lt)

I have received a copy of this notice on DATE:_____ TIME: _____ and have been informed of my rights to have
a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions
outlined in the Rules of conduct.

Preliminary Hearing
Officer:                                              Offender:
                Lee, Bradley Jr.                                      Stlouis, James J

exhibit D

DR #
*1022173*

Date: 2/16/06

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## NOTICE OF DISCIPLINARY HEARING – FOR MINOR/MAJOR OFFENSE

To: Inmate: St Louis, James J.    SBI# 00 446518    Housing Unit: E

1. You will be scheduled to appear before the Hearing Office to answer charges pending against you. (Staff are to explain the charges as listed on the 122.)

2. At that time, a hearing will be held to determine whether you violated Institutional Rule(s) as alleged in the attached Disciplinary Report.

   How do you plead?    ☐ Guilty    ☑ Not Guilty

3. A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a. Written Reprimand.
   b. Loss of one or more privileges for a period of time **of more than 24 hours but less than 15 days.**

4. A "Major Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a. Loss of one or more privileges for a period **of more than 15 days but less than 60 days.**
   b. Confinement to assigned quarters for a period of time not to exceed 30 days.
   c. Isolation confinement for a period of time not to exceed 15 days.
   d. Loss of good time for a period of time not to exceed 30 days. (Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.)

5. You have the rights in the disciplinary process as stated on the lower and back of this page. These have been fully explained to you at the time of this notification.

6. Counsel requested?    ☐ Yes    ☑ No    Name of Counsel: _____

7. Confront accuser?    ☑ Yes    ☐ No

8. Witness requested?    ☑ Yes    ☐ No    Name of Witness: F/m Greenwell, Bryon
                                                    FSS Morris, Cheryl
                                                    FSSIII Johnson, A.

I certify that on 2/16/06 at _____
(Date)        (Time)

I served upon the above inmate this notice of Disciplinary Hearing for Minor/Major Offense and the Disciplinary Report is attached hereto.

_K. PH_

(Employee's Signature & Title)

I have received copies of 122 & 127 and understand my rights as Form #127 has been read to me.

X _James St Louis Jr_

(Inmate's Signature)

*exhibit E*

2/16/06  Page 1  letter to C/o Disciplinary Officer
for director Klein – S/m Govon
C/o Lt. Lehman / also no response
for first hearing from Lt. Morris

| DR# 1022173 | DCC  Delaware Correctional Center<br>Smyrna Landing Road<br>SMYRNA DE, 19977<br>Phone No. 302-653-9261 | Date: 03/10/2006 |
|---|---|---|

### DISCIPLINARY HEARING DECISION

Inmate  :  Stlouis, James  J                                              SBI#:00446518          Type:Class 1

Institution:DCC  Delaware Correctional Center                     Hearing Date: 02/23/2006     Time: 12:37

Inmate Present: Yes          Reason(If No): N/A

Violation:  2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

Inmate PLEA: Not Guilty

Inmate Statement:  Because I didn't do what she said I did.   *wess not present*

Witness Name: Greenwell, Bryon

Testimony : Lt. Morris state's Mr greenwell said nothing about raise for bread pudding
          Sgt. johnson, Andre state's He know nothing of this bread pudding W/Raisins

Witness Name: Morris, Cheryl

Testimony : N/A

Witness Name: Johnson, Andre

Testimony : N/A

Decision :Guilty

Rational :Accuser state's I/M said he got the approved from Mr. Klein. After listen to Lt. Morris an Sgt. Johnson I find I/M Guilty
          of all charges

Sanctions: N/A

### HEARING OFFICER'S SIGNATURE

Heverin, Ralph

I understand that I may appeal the decision of a Class II Hearing  to the Class I Hearing  Officer.I may appeal the decision of a Class I Hearing  to the facility administrator.I also understand that I have 72 hours to submit my notice of appeal in writing to the Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

I [X]   DO    [ ]    DO NOT INTEND TO APPEAL

INMATE's SIGNATURE

### ORDER TO IMPLEMENT SANCTIONS

[ ]  Inmate does not wish to appeal              [X]  Appeal has been denied by Commissioner or Designate

[ ]   Sanctions have been modified            [ ]   Time Limit(72 Hours since hearing) for appeal has expired

It is here by ordered to implement the sanctions:

| Sanctions | Start Date | Days | End Date |
|---|---|---|---|
| 1. Confinement to Quarter | 04/10/2006 | 5 | 04/14/2006 |

DR #
_1022133_

Date: _2-23-06_

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## DISCIPLINARY HEARING DECISION

☑ Class I (Major)    ☐ Class II (Minor)    ☐ Summary (24 Hour LOAP)

Inmate: _Morris Jones_                    SBI#: 00 _444518_
Institution: Delaware Correctional Center    Hearing Date: _2-23-06_    Time: _____

Inmate Present: ☑ Yes    ☐ No

Reason (If No): _____

Violation: _201, 115 AP 733,713 Lying_
Inmate Plea: _Not Guilt_
Inmate Statement: _Because I didn't do what she said I did._

Witness Name: _Williams showed that she knew nothing about_
Testimony: _Rain for fresh pickling._

Witness Name: _Lt Tolman, Andre Tolue Ve knows nothing of this_
Testimony: _fresh peddling w/ Cousins_

Witness Name: _____
Testimony: _____

Decision: _____ ☑ Guilty    ☐ Not Guilty    ☐ Further Investigation
Rational: _Morris still Time said he got the appenie team on Plain afficit testit_
_to Il Morris + Lt Tolman I find Time with of all charge_

Sanctions: _5 days NTA_
                    Hearing Officer's Signature _Nichols Lee_

I understand that I may appeal the decision of the Hearing Officer (or Shift Supervisor in the case of a Summary Sanction) to the Commissioner of Correction or his designee. I must complete a Disciplinary Appeal Form within 72 hours immediately following the hearing and mail it to the DCC Hearing Office.

☑ I do intend to appeal.

☐ I do not intend to appeal.

                    _____
                    Inmate's Signature

## ORDER TO IMPLEMENT SANCTIONS

☐    Inmate does not wish to appeal        ☐    Appeal has been denied by Commissioner or Designee

☐    Sanctions have been modified          ☐    Time Limit (72 hours since hearing) for appeal has expired

Modifications: _____
It is hereby ordered to implement the sanctions or modified sanctions on Date: _____    Time: _____
Form 121 – May 30, 2003 – 2 pt. NCR  DACS

exhibit F

| DR# | DCC  Delaware Correctional Center | Date: 03/02/2006 |
|---|---|---|
| 1022173 | Smyrna Landing Road<br>SMYRNA DE, 19977<br>Phone No. 302-653-9261 | |

Inmate  :  Stlouis, James  J                                                                    SBI#:00446518        Type:Class 1

Institution:DCC  Delaware Correctional Center                          Hearing Date: 02/23/2006    Time: 12:37

## MEMORANDUM

To    : Stlouis, James  J

From : Chief, Bureau of Prisons

RE    : APPEAL DECISION

### 1. Confinement to Quarter

Your appeal                          [ ]    Accepted        [X]    Denied

The decision of hearing        [X]    Affirmed      [ ]    Reversed    [ ]  Remanded for further proceedings

The sanction imposed by hearing officer will  [X]    Remain as imposed by the Hearing Officer [ ]    Reduced

The basis of this decision is as follows :

The reports support the guilt. your appeal contains no evidence to support a change.{SLD}

This report has been reviewed by Rendina, Anthony J

Date Reviewed 03/02/2006

*letter sent
dissappointment
journal
attorney*

*exhibit F*

| STATE OF DELAWARE | PROCEDURE NUMBER: 4.2 | PAGE: 1 OF 18 |
|---|---|---|
| BUREAU OF PRISONS | RELATED ACA STANDARDS: 29 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION MAKING RELATING TO OFFENDERS | SUBJECT:    RULES OF CONDUCT | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: | | |
| EFFECTIVE DATE:    Revised October 1, 2004 | | |

I.    **AUTHORITY:**  DOC Policy 4.2

II.    **PURPOSE:**  To establish reasonable rules of conduct and a system of penal discipline for inmates under the jurisdiction of the BOP. The purpose of discipline is to correct behavior. The least serious sanction needed to correct the inmate's behavior should be used.

III.    **APPLICABILITY:**  All BOP employees, volunteers, persons or organizations conducting business with the BOP, all inmates under the supervision or custody of the BOP.  This procedure will not be used at Delaware Correctional Center.    The Corrections Code of Penal Discipline will be used at DCC.

IV.    **DEFINITIONS:**

  A.    ATTEMPT: An act which constitutes a substantial step in a course of conduct planned to result in the commission of a rule violation and/or criminal offense.

  B.    CLASS I OFFENSE: Violations, which are termed a major misconduct and are considered serious.

  C.    CLASS II OFFENSE: Violations, which are termed a minor misconduct and are considered less serious.

  D.    CONTRABAND: Article, substance or thing which is not authorized by the Department of Correction, obtainable through the institutional commissaries, specifically permitted by applicable prison regulations, or otherwise specifically authorized by the Warden, and the accumulation of authorized items beyond the established limit.

  E.    INTOXICATION: Condition in which a person's powers of self-control have been impaired because of the consumption of alcohol and/or drugs.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 2 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

**F.** LEAD WORKER: An employee who continuously works in a limited supervisory capacity as a function of the employee's normal duty assignment.

**G.** PRIVILEGES: Benefits conferred upon the inmate population by institutional regulation including commissary, recreation (including tier recreation), telephone calls, and visits, which may be temporarily revoked for violation(s) of the Rules of Conduct.

**H.** PROHIBITED AREA: Any area to which an inmate is not authorized to be present.

**I.** RESTITUTION: Repayment for property taken, damaged or destroyed by an inmate.

**J.** RIGHT: Anything guaranteed by law, which may not be revoked as a disciplinary sanction.

**K.** SUMMARY ACTION: Action taken by an authorized person without benefit of a disciplinary hearing. The sanction for Summary Action shall be from the time it is imposed, not the time of the incident.

**L.** UNIT SUPERVISOR: An employee of the rank of Lieutenant or higher with supervisory responsibilities over a unit or sub-unit within a facility.

**M.** WATCH COMMANDER: An employee of the rank of Lieutenant or higher with supervisory responsibilities over an entire facility during the employee's shift and/or tour of duty. (May be a Sergeant in smaller institutions)?

**N.** WILLFULLY: Conscious purpose to engage in the conduct or cause the result.

**V. PROCEDURE:** This procedure will be construed according to the fair meaning of its terms; to correct behavior, not punish; to utilize the least restrictive sanction that achieves desired behavior; to promote justice; and to accomplish the following general objectives:

**A.** Promote the safety and welfare of everyone within the institution.

**B.** Promote the efficient administration and operation of the institution.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 3 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

C.    Define what conduct is prohibited in the institution and state the Sanctions that may be imposed to punish such conduct. Prisoners of the Department shall have access to those portions of the disciplinary rules which would result in a disciplinary action or loss of privileges.  This access may take form as posted bulletin boards, law library file copies, housing unit postings, or other general notice formats approved in advance by the Commissioner. Individual copies of specific disciplinary rules will be made available at the inmate's written request and expense, in similar manner to other law library document requests.

D.    Prevent arbitrary or retaliatory treatment of inmates accused or convicted of offenses.

E.    Prescribe penalties that are proportionate to the seriousness of the offenses.

F.    Provide a climate of certainty within which both correctional staff and inmates will have a clear picture of the relationship of each to the other and each to the interests of the institution.

Upon the reasonable belief of an institutional staff member that an offense has been committed, he/she should consider if a Summary Action, Class I disciplinary report or Class II disciplinary report is required. If the determination is made that the action requires Summary Action it shall be completed as outlined in this procedure. If a disciplinary report is required, the report shall include:

A.    The specific rule (s) violated.

B.    The facts surrounding the incident.  Conjecture or conclusion shall not be made by reporting staff.

C.    The names of the witnesses to the incident, if any.

D.    The disposition of any evidence involved.

E.    Any immediate action taken.

F.    The date and time of the offense.

G.    The signature of the reporting staff member.

The disciplinary report should be submitted before the end of the shift, and must be submitted within 24 hours. All staff members listed as witnesses on the disciplinary report should submit an Incident Report (Form 404).    These reports will be turned in to the Watch Commander.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.2 | PAGE:<br>4   OF   18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

The Watch Commander reviews the disciplinary report to
determine if the report is complete.   The Watch Commander or
designee determines if the violation is a Class I or Class II
offense. If the violation is one designated as requiring
pre-hearing detention, the Watch Commander or designee
(Lieutenant or higher) reviews the report with the inmate and
records the inmate's statement about the charges on the form.
This should be done at the time of or soon after the inmate is
moved to pre-hearing detention.

For other Class I or II the Watch Commander or designee Lead
Worker Class II, Lieutenant or higher Class I will review the
report with the charged inmate, record the inmate's statement
about the charges and provide the inmate with a copy of the
disciplinary report.  This will normally be done on the shift
the report is written or within 24 hours if circumstances do
not permit it.  In all cases the report will be provided to
the inmate at least 24 hours before the hearing.

Inmates assigned to pre-hearing detention will have their
Class I hearing not less than 24 hours nor more than 72 hours
(excluding weekends and holidays) after placement in pre-
hearing detention.

**PRE-HEARING DETENTION:** The following offenses are considered
serious and should require automatic pre-hearing detention:

A.   Arson

B.   Assault

C.   Engaging in a Riot

D.   Escape and Attempt to Escape

E.   Felony

F.   Fighting

G.   Homicide

H.   Inciting to Riot

I.   Restraint

J.   Sexual Assault

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 5 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

Watch Commanders may, at their discretion waive automatic pre-hearing detention. They may impose pre-hearing detention for any Class I Offense when deemed necessary.

For any other offense not listed, the inmate may remain in his existing status unless the inmate is considered a threat to other inmates, staff, or himself sufficient to warrant pre-hearing detention. When pre-hearing detention is ordered by the Watch Commander for offenses not listed as requiring pre-hearing detention, the Warden must review such order within 24 hours. Failure to review pre-hearing detention may return the inmate to his previous status. Any time spent in pre-hearing detention should be credited against any subsequent sanction imposed. All inmates on pre-hearing detention will have their status reviewed every 24 hours.

The inmate will be given the reasons for pre-hearing detention in writing, and the inmate will have the opportunity to respond to the charges and the pre-hearing detention order.

**CLASS I HEARINGS:**

All Class I hearings will be conducted by an impartial Hearing Officer, who should not have had direct supervisory responsibility over the accused inmate during the six month period immediately preceding the hearing. A hearing officer will be disqualified to preside over hearings in which he witnessed the incident in question, was involved in preparation of the charge, or is otherwise biased against the inmate who is the subject of the hearing. The hearing officer will be of rank no lower than lieutenant and may be a supervisor from the nonuniformed staff.

The stipulation requiring six months of no direct supervisory contact may be waived for small facilities with inmate populations of less than 250 that lack sufficient staff of the rank of lieutenant or higher to comply with this requirement.

At the Class I Hearing, the inmate is entitled to the following:

**A.** An opportunity to be present during the hearing, except that he may be excluded during the

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.2 | PAGE: 6 OF 18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

Hearing Officer's deliberations and at any time the inmate's behavior becomes disruptive to the proceedings. Reasons for such exclusion will be recorded in writing.

B.   The accused inmate may consult with counsel or counsel substitute prior to the hearing. At the hearing, an inmate may be accompanied by a counsel substitute who may be either a staff member or an inmate approved by the Hearing Officer. The extent to which counsel substitutes may present an inmate's case at a disciplinary hearing is within the discretion of the Hearing Officer taking into consideration such factors as illiteracy and intelligence of the inmate, the complexity of the issues under consideration, and any other factors which may prevent the inmate from making a reasonable presentation on his own behalf.

C.   Copies of any written information which the Hearing Officer may consider will be provided to the inmate except where disclosure of such information would be hazardous to institutional safety or could endanger the physical safety of an individual. Reasons for non-disclosure will be stated in writing.

D.   An opportunity to make a statement and present documentary evidence on his behalf including written witness testimony.

E.   An opportunity to call witnesses and/or present written statements on his behalf unless doing so would be irrelevant, redundant, or hazardous to institutional safety and security, or could endanger the physical safety of any individual. Such reasons for denial will be stated in writing. The Hearing Officer may also deny witnesses if the Hearing Officer stipulates to or will agree to the testimony that would have been given. Such stipulation or agreement will be made in writing.

F.   An opportunity to confront and cross-examine his accuser and all adverse witnesses, unless doing so could be hazardous to institutional safety, order and security or could endanger the physical safety of the witness. Such reasons for denial will be stated in writing.

At any time during the hearing, the Hearing Officer may exclude evidence, although relevant, if its evidential value is outweighed by considerations of undue delay, waste of

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 7  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

time, or needless presentation of cumulative evidence; such
reasons shall be stated in writing.

At any time during the hearing, the Hearing Officer on his
own motion, may order an investigation into the incident and
continue the hearing at a future time.    If the hearing
officer finds the facts do not support the charge but do
support a different charge, he/she may change the charge and
proceed with the hearing.

**DECISION AND RECORD OF FINDING:**

At the conclusion of the hearing the Hearing Officer shall
announce the decision and sanction.  The decision and the
evidence used to reach that decision will be put in writing
and a copy will be given to the inmate.  The imposition of any
of the sanctions may be suspended and the inmate may be placed
upon probation for a period of time not to exceed 90 days.  No
sanction shall be implemented during the period of time that
a decision is under appeal.

The Hearing Officer's written record of the hearing should be
completed at the hearing and include:

A.    The Hearing Officer's decision.

B.    The sanction imposed.

C.    A summary of the rationale upon which the decision and
      sanction were based.

D.    A list of all witnesses and a summary of their
      testimony.

E.    A statement as to whether the sanction is stayed during
      an appeal and the reasons for that decision.

F.    The date and time of the hearing.

G.    The signature of the Hearing Officer.

All hearing reports of Class I write ups resulting in a
finding of guilt will be retained in the inmate's permanent
record in the Records Section of the facility.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 14 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

** **1.29 Refusal to Participate in Classified Treatment Program**
Willfully refusing to participate in Bureau sanctioned treatment
programs

** **1.30 Refusal to comply with Sex Offender Registration
Procedures**
Willfully refusing to comply with registering as a sex offender.

**1.31 Conspiracy to Commit a Class I Offense**

**CLASS II OFFENSES:**

**2.01 Abuse of Privileges:** Willful violation of any institutional
regulation dealing with a privilege.

**2.02 Bartering:** Unauthorized buying, selling, trading, lending, or
giving of gifts. Taking, exercising control over or otherwise
using the property of another person with or without the consent
of the owner. Lending of property or anything of value with or
without the expectation of anything in return.

**2.03 Creating a Health, Safety, or Fire Hazard:** Activities which
create a situation dangerous to the health or safety of persons
within the institution or create a danger of fire within the
institution, including but not limited to dirty cell, lack of
personal hygiene, smoking in an unauthorized area, and excessive
accumulation of personal property.

**2.04 Damage or Destruction of Property Under $10:** Tampering
with, damaging or destroying property belonging to the state of
Delaware or to another person when the replacement value of such
property is less than $10.

**2.05 Disrespect:** Words, actions, or other behavior, which is
intended to harass employees, volunteers, or visitors including
cursing, abusive language, writing, or gestures directed at the
person.

**2.06 Failing to Obey an Order:** Disobeying any verbal or
written order that does not constitute a Class I violation.
Including but not limited to refusal to work and/or violation of
posted rules in the housing unit or work area where there is no
threat to institution security.

**2.07 Gambling:** Organizing or participating in wagers or
games for personal gain, money or anything of value.

**2.08 Horseplay:** Any physical contact or attempted physical
contact between two or more persons done in a jesting or
playful manner, without anger or intent to injure or
intimidate. This includes but is not limited to towel
snapping at others, body punching, or attempted physical
wrestling, etc.

**2.09 Late for Appointments/Assignments:** Late for any work
assignment, program assignment, medical appointments, etc.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.2 | PAGE: 15 OF 18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

**2.10 Lying:** Making a false statement to a Department of Correction staff person with intent to deceive such staff member. This includes false information for personal gain from good time earnings or compensation.

### 2.11 Off Limits:

A. Failing to report as prescribed to an appointed place of duty or assignment or to any other place when directed by the valid order of a staff member.

B. Leaving without permission from an appointed place of duty or assignment or any other place.

C. Entering or remaining in a prohibited area.

D. Being in area for the purpose of committing a Class I violation would make Off Limits a Class I Offense.

**2.12 Possession of Money and Coin Under $1:** Possession of money, coin, currency or other forms of legal tender under $1.

**2.13 Possession of Non-dangerous Contraband:** Possession or control of any contraband, which by its nature does not present a substantial threat to the safety of persons within the institution. This also includes, but is not limited to, any article of clothing that is not specifically authorized to be worn and excessive accumulation of authorized items, and after January 1, 1993, cigarettes and other smoking materials.

**2.14 Unauthorized Communication:** Any contact by letter, gesture, or verbally, with an unauthorized person or in an unauthorized manner, including but not limited to passing property on a visit either directly or through a third person, communication with a visitor through any channel other than visiting room, or unauthorized use of telephone.

### 2.15 Conspiracy to Commit a Class II Offense

SANCTIONS:

CLASS I OFFENSES:

A Class I Offense, as defined in the Definitions Section, is a rule violation in which a more severe sanction may be imposed than permitted for a Class II offense. Sanctions which may be imposed for a Class I offense include:

A. Loss of one or more privileges for a period of time of not more than 90 days. The following are not considered privileges and cannot be revoked:

1. Education

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 16  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

3. Counseling Services

4. Drug/Alcohol Rehabilitation Programs

5. Regular Work Assignments

6. Religious Services

7. Legal Access (Law Library)

B. Confinement to assigned quarters for a period of time of not more than 15 days.

C. Isolated confinement for a period of time not more than 90 days.

D. Loss of good time up to and including all good time earned.

E. Restitution.


**CLASS II OFFENSES**

A Class II Offenses, as defined in the Definitions Section, is a rule violation in which the extent of the sanctions to be imposed shall be restricted to:

A. Written reprimand.

B. Loss of one or more privileges for a period of time of not less than 24 hours but not more than 5 days. The same list of programs that cannot be revoked as listed on page 15 under sect A of Sanctions for Class I Offenses apply for this section.

C. Confinement to assigned quarters for a period of time not to exceed 5 days.

D. Summary Action.

E. By mutual agreement the inmate may be assigned extra work assignments in lieu of any other sanction for a Class II offense.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 17 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

### IMPOSITION OF SANCTIONS:

A.  Where an offense constitutes both a rule violation and a criminal offense under state or federal statute, the inmate may receive internal disciplinary action and receive up to the maximum sanction. In addition the inmate may be referred for criminal prosecution and receive whatever sanction a court may impose.

B.  Any combination of authorized sanctions for a specific class violation may be imposed for a single violation. Such combination of sanctions must be imposed concurrently; i.e., 5 days isolation and 15 days cell confinement, the inmate would serve 5 days in isolation and 10 days on cell confinement for a total of 15 days.

C.  Consecutive sanctions may not be imposed except for separate violations. When a single incident contains more than one separate violation, the inmate may be disciplined for each. Sanctions may be imposed for each violation to run concurrently.

D.  When imposing sanctions, the Hearing Officers should consider the full range of penalties in each case and make the penalty fit the particular offense. The least sanction necessary to obtain compliance with the rules is intended.

E.  Forfeiture of accumulated good time is subject to the approval of the Warden.

F.  A finding of guilt on a Class I offense can be grounds for reclassification to more secure confinement.

G.  The Hearing Officer will place a check mark in the "Offender Present" block of the DACS Disciplinary Hearing screen to confirm that the offender was present during all phases of the Disciplinary Process and the offender was notified of the sanction imposed upon him, and his right to appeal. The inmate's signature is not required on any form during the Disciplinary Process.

### RESTITUTION:

A.  The Hearing Officer may order restitution for the cost of property that has been taken, damaged or destroyed by an inmate where such property is not recovered in the same condition as existed prior to the taking.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 18  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

B.    Where the Hearing Officer has found the existence
of such a rule violation and ordered that
restitution be made, and such order has not been
reversed on appeal, the administrative officer of
the institution shall enforce the order by
attaching the inmate's account for the amount of
restitution ordered. Where the account has no
funds, it will be attached for 1/2 all income until
the judgment is paid.

C.    The amount of restitution ordered shall be the
replacement value of the item taken, damaged or
destroyed.

**SUMMARY ACTION:**

A.    Upon observing inmate misconduct staff may
determine that it is a minor offense properly
responded to by an immediate revocation of one or
more privileges or confinement to assigned quarters
for a period of time not to exceed twenty-four
hours. The employee will notify the Unit Supervisor
when placing Summary Action on an inmate. Summary
Actions will be entered into DACS; however, they
will not be considered in future Classification or
Disciplinary Processes.

B.    When an inmate commits a rule infraction that is a
Class II Offense, the staff requesting Summary
Action will write a Form A25.  The inmate will be
called into the office and informed of the sanction
which shall be up to 24-hour loss of all
privileges, 24-hour cell confinement or up to 24
hours extra work.  The inmate will sign the A25
indicating that he/she accepts the sanction.  If
he/she refuses to sign, a Class II disciplinary
report will be written in lieu of summary action.

All Wardens should develop facility SOPs to implement this
procedure. These SOPs may not deviate from the general
format of this procedure, but may allow for the unique
differences between facilities.

Inmates may be administratively transferred pending
classification or reclassified to more restrictive security
levels for violations of the Rules of Conduct.  This may occur
through an accumulation of a combination of Class I and/or
Class II offenses or a single serious offense.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.2 | PAGE: 8 OF 18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

**CLASS II HEARINGS:**

Class II hearings shall be held by the Unit Supervisor/Lead Worker on the shift that the Class II violation occurred.

At the Class II Hearing, the inmate is entitled to the following:

**A.** An opportunity to be present during the hearing.

**B.** An opportunity to make a statement and present documentary evidence.

Unless the Unit Supervisor/Lead Worker feels additional testimony is necessary, his decision may be based on the disciplinary report, the statement of the inmate, and any other relevant information presented at the hearing.

The Unit Supervisor/Lead Worker will state in writing, utilizing the Disciplinary Hearing Report Form; his findings, the rationale, and the sanctions imposed. The inmate will receive a copy of the written decision and will be advised of his right of appeal. All hearing reports of Class II write ups resulting in a guilty finding will be placed in to the housing unit's working file. An inmate working file shall be forwarded to any facility/unit that an inmate is transferred to.

Three guilty findings for the same Class II offense in a six-month time period will automatically convert the fourth same offense to a Class I hearing.

**APPEALS:**

The inmate will be advised of his/her right to appeal the decision of the Class I Hearing Officer to the Warden or Warden's Designee and will be provided with an appeal form presented from the DACS Disciplinary Module. The inmate will be advised of his right to appeal the decision of the Class II Hearing to a Class I Hearing Officer.

All appeal forms must be completed and forwarded to the Hearing Officer within 72 hours of the inmate receipt of the written record of the hearing. FAILURE TO COMPLY WITH THIS TIME LIMIT WILL CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 9 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

Upon filing of the appeal form, the Hearing Officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. If no appeal form is filed within the stated time period or the inmate indicates in writing that he does not intend to appeal, the sanction shall be implemented.

All appeals of Class I offenses will be heard by the Warden or Warden's Designee. All appeals of Class II offenses will be heard by a Class I Hearing Officer. The appeal decision will be in writing and should be rendered within ten (10) working days of receipt of the appeal. A copy of the appeal decision goes to the inmate.

The official hearing the appeal may affirm the decision, reverse the decision, or remand the decision back to the Hearing Officer for further proceedings. Sanctions may be reduced but not increased.

If for any reason an inmate is found not guilty of an offense, Class I or Class II, it shall be so noted in DACS.

**PROCEDURES FOLLOWING CRIMINAL MISCONDUCT:**

Upon the determination of the Watch Commander or the Hearing Officer that an inmate has committed a state or federal criminal offense, the Warden or his designee will be notified. The proper law enforcement authority will then be notified. Administrative disciplinary proceedings may be pursued in addition to possible criminal prosecution. Any disciplinary hearing for this alleged offense will be conducted in accordance with this procedure, and the inmate will be advised that he may choose right to remain silent in the hearing and that his silence will not be construed adversely against him at the hearing.

**PROCEDURES FOLLOWING AN EMERGENCY:**

In the event of an institutional disruption, which requires emergency action, any or all portions of these regulations may be temporarily suspended by the Warden in writing. Any inmate involved in the emergency may be detained without a hearing throughout the course of the emergency. Upon the restoration of order, all inmates who were detained will be disciplined in accordance with this procedure.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.2 | PAGE:<br>10 OF 18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

**CLASS I OFFENSES:**

**1.01 Arson:** Intentionally or recklessly starting a fire or causing an explosion. Inmate may also be referred for criminal prosecution.

**1.02 Assault:** Physical attack on or intentional contact of another person by one or more persons, done either in anger, or with the purpose of abusing or injuring another; striking with feces, urine, or other physical objects; physical resistance of or interference with an employee. Injury is not necessary but contact is. Inmate may also be referred for criminal prosecution.

**1.03 Bribery:** Giving, offering or promising anything of value to any employee, volunteer, visitor, or person or organization conducting business with the BOP:

**A.** To influence any act within the realm of responsibility of said person.

**B.** To induce said person or persons to do or omit from doing any act in violation of their responsibility.

**1.04 Damage or Destruction of Property (over $10):** Any destruction, removal, alteration, tampering, or other misuse of property belonging to the state of Delaware or to another person when the replacement value of such property exceeds $10. This includes but is not limited to tampering with or blocking any security or locking device, breaking windows, destroying blankets, clothing, or mattresses.

**1.05 Demonstrations (Strike):** Inciting or urging two or more inmates to engage in a disturbance involving non-violent conduct which substantially disrupts the normal functioning and operation of the institution. Participating in a disturbance involving nonviolent conduct, which substantially disrupts the normal functioning and operation of the institution.

**1.06 Disorderly or Threatening Behavior:** Words, actions, or other behavior expressing any intent to injure, which intends to place another in fear of being assaulted. This includes, but is not limited to attempted assault, threats of

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 11  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

sexual assault made by one inmate to another, or writing
threatening letters to another person.

**1.07 Engaging in a Riot:** Participating in a riot, which is in
existence at the time of this act.  However, an inmate who is
merely present at the scene of an ongoing riot is not guilty
of an offense under this section, provided that he moves to a
designated area after being directed to by proper authority.
Inmate may also be referred for criminal prosecution.

**1.08  Escape and Attempt to Escape:**  Leaving or attempting to
leave the confines of an institution or from official custody
while beyond the confines of the institution, or failing to
return to official custody within an institution following
temporary release from an institution.  Inmate may also be
referred for criminal prosecution.

**1.09 Extortion, Blackmail or Protection:**  Demanding of or
receiving from another person, anything of value in return
for protecting that person from others or refraining from
committing bodily injury or sexual assault on that person.

**1.10 Failure to Abide by Sanctions or Conditions of a Class I
or II Disciplinary Disposition:**  Breaking a condition of
restitution or other sanction.

**1.11 Falsifying Physical Evidence and/or Influencing a
Witness:** While believing that an official proceeding or an
official investigation is pending or about to be instituted:

A. Altering, destroying, concealing or removing anything
   with intent to impair its authenticity or availability
   in such proceeding or investigation.

B. Presenting or using anything knowing it to be false, with
   intent to deceive staff or anyone who is or will
   be a member of such proceeding or investigation.

C. Attempting to cause a witness to testify falsely or to
   withhold any testimony or information or other
   evidence.

D. Committing any act prohibited by these rules in
   retaliation for anything done by another p person in his
   capacity as a witness.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 12 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

**E.** Soliciting, accepting or agreeing to accept any benefit in return for providing false testimony or information or withholding any testimony or information or other evidence.

**1.12 Felony:** Any act that would be a felony under state or federal law is also a major misconduct. Inmate may also be referred for criminal prosecution.

**1.13 Fighting:** Physical confrontation between two or more persons, including a swing and miss, done with anger or intent to injure. This includes fights between inmates, whether with fists, broom handles, weapons, or other physical objects.

**1.14 Forgery, Counterfeiting:** Unauthorized reproduction of any signature, document, article of identification, money, security, or official papers; knowingly possessing a falsified or altered document; altering or falsifying document with the intent to deceive or defraud.

**1.15 Giving a False Alarm:** Willfully communicating a false report concerning a fire, explosion, or other catastrophe or emergency where the report is likely to cause the evacuation of a building or to cause the staff to respond in alarm.

**1.16 Homicide:** Causing the death of another person by any means. Inmate may also be referred for criminal prosecution.

**1.17 Inciting to Riot:** Inciting or urging a group of two or more inmates to engage in a current or pending riot or commanding, directing, instructing, or signaling a group of two or more inmates to cause, continue or enlarge a riot. A "riot" is a disturbance involving an assemblage of three or more persons whose conduct creates a threat of damage or injury to property or persons and disrupts the normal functioning of the institution. An inmate may be found guilty of Inciting to Riot even where no riot actually occurs as a direct or indirect result of his urging. Inmates may also be referred for criminal prosecution.

**1.18 Possession of Dangerous Contraband:** Unauthorized possession of weapons, physical objects that could be used as weapons, explosives, acids, caustics, materials for incendiary devices or escape materials; possession of "critical" tools and material or dangerous tools and

materials. This includes but is not limited to gasoline, sulfuric acid, lye, prison-made knives, and pipe bombs. After 1/1/93, matches and lighters are added to this list.

**1.19 Possession of Money and Coin Over $1:** Possession of money, coin, currency or other forms of legal tender such as certificates of deposit, stocks, or bonds.

**1.20 Possession of Staff Clothing:** Possession of any article of clothing which is identifiable as part of or an accessory to the Department of Correction staff uniform.

**1.21 Receiving Stolen Property:** Receiving or possessing property of another person knowing that it has been stolen or believing that it has probably been stolen.

**1.22 Refusal to Cooperate in Drug-Abuse Testing:** Willfully refusing to provide a urine sample, to breathe into a breathalyzer or to participate in other drug-abuse testing.

**1.23 Restraint:** Willfully restraining another person under circumstances, which may expose the other person to a risk of bodily injury. This includes, but is not limited to kidnapping or the taking of a hostage. Inmate may also be referred for criminal prosecution.

**1.24 Sexual Assault:** Sexual contact with another person without that person's consent, including but not limited to rape, intentional touching of sexual areas (buttocks, breasts, genitals) without consent, kissing or embracing without consent of one who is kissed or embraced. Inmate may also be referred for criminal prosecution.

**1.25 Sexual Misconduct:** Sexual contact with another person with that person's consent; indecent exposure; excessive kissing, hugging or unauthorized touching of visitors; and possession of wearing apparel designed for the opposite sex.

**1.26 Substance Abuse:** Possession, use, selling, introduction, or under the influence of any intoxicant, inhalant, controlled substance or imitation, or any other substance which may be used to cause a condition of intoxication; possession of excessive amounts of ingredients used for the manufacture of alcoholic beverages, possession of drug paraphernalia including but not limited to such items as needles, syringes, roach clips, pipes, etc.

**1.27 Theft:** Any unauthorized taking of property.

**1.28 Refusal to Cooperate in DNA Testing:** Willfully refusing to provide a blood sample as required to comply with Federal or State Court sanctioned testing.

October 11, 2006

James St.Louis, 446518
22
AU5

I will be preparing your classification this month.  Building 21 is maximum security.
Let's talk about that more at classification.  I will leave my recommendation blank until
we talk.

Per your request, here is your breakdown for classification.

6 – Severity of offense
0 – Open charges
0 – Escapes
0 – Age
0 – Prior convictions 10 years prior to the start date of this sentence
2 – Points for number of write-ups in the last 18 months
3 – Points for most severe write-up in the last 5 years
2 – Points for programming/not programming, working or being terminated from work
3 – Points for time remaining on your sentence.

The total points are 16 points with a review of 06/07.  However, I have approval to
review your classification this month.  Counselor McMahon and Lt. Porter were on the
MDT of that classification.
Thank you, and see you soon.

Cindy Atallian
Counselor – 22

Mailed
10/14/06

(Rev. 5/05)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) James St. Louis          446 518
(Name of Plaintiff)      (Inmate Number)

Delaware Correctional Center

1181 Paddock Road Smyrna Del
(Complete Address with zip code)     19977

(2)_____ None _____
(Name of Plaintiff)      (Inmate Number)

_____ None _____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) RALPH HEVERIN

(2) DAVID PIERCE

(3) OFFICER b<sup>th</sup> WILLIAMS et al.
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

:
:
:
:
:
:
:
:
:   _____
:   (Case Number)
:   ( to be assigned by U.S. District Court)
:
:
:
:
:
:   CIVIL COMPLAINT
:
:
:
:   •/• Jury Trial Requested
:
:
:

I.    PREVIOUS LAWSUITS

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
      including year, as well as the name of the judicial officer to whom it was assigned:

      ST. Louis  v  MORRIS  et al          1:06-CV-236

            Judge Sue Robinson          Doc # 11  9/26/2006

      ST Louis  v  Wilson  et al          1:05-CV-38'

            Judge Sue Robinson                    2005

II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?  ••Yes  ••No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?  ••Yes  ••No

C.    If your answer to "B" is Yes:

1. What steps did you take? _took complhAint to Deputy WARDen AND He Assigned a Lt to investigate Appeal._

2. What was the result? _AFTER investigation decide to holt ANoTheR disciplinARy hearing displite investigafor Agreeing that orIginal disciphinary report was vindictive._

D.    If your answer to "B" is No, explain why not: _____

III.    DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: _RAIPH  HEVERIN_

Employed as _HeeRiNg OFFICeR_ at _DelawARe CoRReCTionul CeNteR_

Mailing address with zip code: _1181 Paddock Road_

_SMYRNA De. 19977_

(2) Name of second defendant: _Deputy WARDen PieRCe_  (David)

Employed as _Deputy WARDen_ at _DelawAre CoRReCTionAl CeNTeR_

Mailing address with zip code: _1181 Paddock Road_

_SMYRNA De. 19977_

(3) Name of third defendant: _HEARINE OFFICER WILLIAMS_

Employed as _HEARING OFFICER_ at _Delaware CoRReCTiona( CeNteR_

Mailing address with zip code: _1181 Paddock Road_

_SMYRNA De. 19977_

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

and any one else the judicial system deams responsible and who should be held accountable.

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. Cause problems started 3/3/2005 with meeting with Lt Morris & Lt Legates who Lt Louis had complaint to Lt Legates about constitutional issues and threats and retaliation against 1st cook Govan on 3rd cooks. Was told in meeting per Morris which included Govan that he is incharge no matter what

2. On 3/19/2005 another meeting about threats and firing inmates by 1st cook and Lt Morris said had to follow procedures. Had to first give notice of infraction so there would be counseling by assigned officer for counselors report before anyone can be fired. Was also asked in

3. at that time who we wanted fired out of kitchen and talked about how to handle it. He supposed we would talk to "he" officers and have them comply to our wishes. Since then interviews for promotions have been done with Govan asking questions and promotions to inmates for commissary there also simply got the questions he would ask

## V. RELIEF                                                    see exhibit 12

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. Lt Louis is asking these inmates whether action or inaction to be held accountable in their personal and official capacity not only for procedure violations but also for the double and triple jeopardy shown in exhibit evidence complaint. Lt Louis wants compensation for abuses from mental, verbal and emotional abuse suffered along with humiliation and interference. Lt Louis would like to see an injunction filed on main kitchen and department of corrections to force them to follow their own procedures in future

Exhibit A    pg #1

Lt. Lewis refused to participate in these practices and told Lt. Morris. 2 weeks before Lt. Lewis was fired Gowan threatened him personally and Lt. Lewis went to Zone one Officer Johnson and after talking to witnesses reprimanded verbally. Gowan also proceeded to Lt. Morris and had Lt. Lewis called in to her office. Gowan asked to have Lt. Lewis fired and Lt. Morris said this couldn't be done because of no prior problems or disciplinary actions. Lt. Lewis left meeting and Gowan and Morris talked for about 1 more hour. Gowan returned telling Lt. Lewis his time was limited. 2 weeks later he was fired.

On 12/7/2005 Lt. Lewis was written up and terminated a few days later from the prison kitchen. Defendant put in a grievance per Lt. Lehman who was notified by Lt. Morris that she terminated him. Grievance put in on 12/16/2005 and was denied because disciplinary actions are non grievable. On 1/24/06 Lt. Lewis wrote Morris asking for copy of post findings report she had done and sent copy of letter to Warden, Grievance Officer, Chris Klein, Medical Knight and Ms. Morris. Lt. Lewis also wrote Deputy Warden Pierce to explain everything and asked for help for appeal and who to contact. Dep. W/ P. Pierce wrote Lt. Lewis and forward concerns to Officer Bernie Williams to investigate. On 2/15/06 Lt. Lewis was contacted by Lee Bradley Jr (Staff Lt/Lt.) and informed him that he met with Boeing, Mary (P.S. specialist I, III) about the incident and was surprised that she told him it was already handled and Lt. Morris had terminated defendant Lt. Lewis over his investigation. She

pg 82

also said, after he told her St Louis was appealing decision, that she did [NOT] want to do the disciplinary write up on St Louis and thought the whole thing was a misunderstanding [BUT] was ordered by her supervisor, Lt. Morris, not once but twice to write it up and she, Lt Morris, would handle everything from there. Lt Morris did hold a fact finding meetings but St Louis never got to face his accuser or question any witnesses presented against him as per procedures. Bradley informed defendant that at this time, he believed that this incident was totally invalidated after St Louis explained everything talked about above, and to ignore it and in 6 months could go back into the kitchen and work and St Louis would have none if any chance of winning an appeal. After much discussion and thought St Louis decided to file an appeal on 2/16/06 a notice of disciplinary hearing for major and minor was drawn up St Louis questioned this as an appeal not a new disciplinary matter but Bradley said this was the only way to handle an appeal. St Louis listed Greenwell, Morris and Johnson as witnesses he also wanted Lehman, Jones and Klein but because there were only [3] lines for witnesses Bradley informed St Louis he could write a letter adding their names as witnesses to hearing officer. Which on 2/16/06 St Louis did write up and placed in disciplinary officer box in the building

pg #3

On 2/23/06 Lt. Louis was called to report to the disciplinary hearing office for hearing. Upon entering Lt. Louis was met by hearing officer Ralph Hererer. Seeing Lt. Louis was never written up for disciplinary hearing he asked what and how it was going to be handled.

Hererer just told Lt. Louis no one was there yet and called the main kitchen for all witnesses and individuals to attend. While Lt. Louis was waiting Hererer went over the rules for a hearing and told Lt. Louis the only person he could question was complaining officer who wrote up the incident. Lt. Louis did note that this is against prison procedures and wasn't acceptable. Hererer said he would come hearing and find Lt. Louis guilty if that was better. Also officers arrived including Kleen, Boeing, Morris and Johnson. Defendant asked where I/m Gorman and I/m Greenwell, his witnesses, were and never received a response or reason why they could not be there or why no one took a written statement from either one. Testimony against Lt. Louis was put forth by Boeing, Johnson and Morris and Morris testified as to what Greenwell would have said even though he wasn't there to testify or be questioned. Hererer decided in his statement of conviction Greenwell's testimony [through] Morris was evident of finding of guilt. Lt. Louis was only allowed to question Boeing again in violation of prison disciplinary procedures,

and hearing ended. The Kitchen officers
returned to the Kitchen and Heverin and St. Louis
remained an discussed the outcome. Heverin
told St. Louis that he felt terrible and he
didn't believe St. Louis to be guilty [but] had
to rule against him because he could not
rule against an officer from the Kitchen and he
believed Greenwell should be held accountable
the these actions not St. Louis [BUT] Heverin
said he would only give St. Louis [5] days
CTQ as punishment. St. Louis asked why
was he being punish seeing this was an appeal
from actions already punished per termination
and now would change his classification and
send him to segregated housing losing what
freedom he did have. Heverin said all he
could do was let St. Louis appeal his decision
to Anthony Rendens, chief of Prisons and
St. Louis did and was denied. St. Louis has
written Deputy Warden Pierce, Warden Carroll
and Everyone involved and has gotten no action
or satisfaction to this date. Actually St. Louis
besides being terminated has now received
[5] days CTG and now is in segregated
housing as of 4/29/06 and doesn't
expect to be reclassified until 7/07
As per Counsels McMahan. Endg Complaint.

2. There already is in front of Judge Sue Robenson a civil action against the Main Kitchen officials for retaliation and hopes this incident at the Main building can be taken care of so that

3. in the future anyone who wants to appeal a firing and Constitutional violation will not be punished further for trying to regain due process.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ___13___ day of ___October___, 2_0 0 6_.

_James A. Louis_
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

In the United States District Court
For the District of Delaware

James St. Louis
        plaintiff
                v
Ralph Heveus
David Pierce
Officer Bernie Williams et al.

Motion For leave to File Pertinent
evidence not available until recently
as provided by ACLU under freedom
of information act.

Plaintiff James St. Louis pursuant to
Civil Rights Act 42 USC 1983 filed
on 10/14/2006 regarding procedural
due process violations would like
to add exhibits and explanations
below.

1. exhibit A
        A.  note date of incident
        B.  note disciplinary type
        C.  violations recorded
2. exhibit B
        A.  date on form of grievance
        B.  date of Return on back

3. exhibit C.

    A. return letter from deputy Worden addressing appeal with date and assigned officer.

4. exhibit D and E

    A. date officer first looked into appeal (top right)

    B. notice of hearing.

5. exhibit F

    A. last appeal from chief of Bureau denying defendant due process.

    The argument brought forth for defendant is one of violation of procedures by the state of Delaware Correctional Center and officers involved in this complaint per their own procedural manual (exhibit G.)

    In manual it list Class I and Class II offenses and what each are and how to handle these hearings. On page 5 it list Class I hearings and procedures to page 8 where Class II offenses begin. If you check violations on defendants sheet all his charges are class II despite an individual identifying them as class I.

    Also on page 8 it list sanctions and continues on page 9 with Class II Sanctions

It also says that with a class II
violation all penalties are given out by
supervising authority unless you already
have 3 write ups, then the 4th is a
Class I. Defendant has [no] other write
ups not even a 24 hours loss of all
privileges. As read in Class I hearings

    Appeals are addressed next for class
I and Class II which was not followed
per departments own procedures.

    Defendant asked numerous time
for a copy of rules from law library
and building C/o and was denied
Access saying they are prohibited from
giving out to inmates.

    It also addresses how a Class I or
Class II offense has to be forwarded to
the watch commander for review before
punishment is handed out. This was
never done. Defendants report was only
addressed because defendant pushed
the issue as a false report for
retaliation in the kitchen. Procedures
also say that once a Class II hearing
is done which I was terminated with
no other punishment. Upon appeal no
further punishment can be handed out.
Defendant received 5 days Confined to Quarters

and was classified to a higher security housing unit with less freedom and access to law library and other activities like church and bible study which defendant has been denied. (see exhibit H)

Defendant first is asking for an injection for defendant to return to his minimum security classification, expunge of incident from records, return to building where defendant was housed.

Defendant also ask this court to order the Delaware Correctional Prison System to post in a relevant and high traffic location the procedures and listings of all disciplinary actions so this unfortunate incident doesn't repeat itself. Defendant also ask like previously all personally in their official and individual capacity those who in activity and non activity be held accountable monetary and sanctions permitted and any other relief deems appropriate by this court.

James Sr. Louis

SMYRNA DE, 19977
Phone No. 302-653-9261

## DISCIPLINARY REPORT

| Disciplinary Type: Class1 | Housing Unit: Bldg E | IR#: 1028348 |
|---|---|---|

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00446518 | Stlouis, James J | DCC | Bldg.14 Food Prep. Area | 12/07/2005 | 12:00 |

Violations: 2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

Witnesses:1. N/A        2. N/A        3. N/A

### Description of Alleged Violation(s)

On The Above Date And Approx. Time I/M James St. Louis Was Terminated For Lying And Abuse Of Privileges/M  James St. Lou
Told Me, Fssii Boring That Chicken Parmesan And Bread Pudding W/ Raisins Was Approved By Director Klein. I/M Lied To Me Fs:
Boring About The Approval Of The Products.
Reporting Officer: Boring, Mary M (FS Specialist I & II)

### Immediate Action Taken

Immediate action taken by: Boring, Mary M -FS Specialist I & II

404 Written

### Offender Disposition Details

Disposition: N/A        Date:N/A        Time: N/A        Cell secured? No

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: ☐        Disapproved: ☐        Approved By: ()

Comments: N/A

### Shift Supervisor Details

Date Received:        Time:        Received From:

**Shift Supervisor Determination:**

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate
revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearing

. ()

I have received a copy of this notice on DATE:_____ TIME: _____ and have been informed of my rights to have
a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions
outlined in the Rules of conduct.

Preliminary Hearing
Officer: _____        Offender: _____

Stlouis, James  J

*exhibit  A*

FORM #364

## GRIEVANCE FORM

FACILITY: _Bldg. 14 Food Prep Area_       DATE: _12/10/05_

GRIEVANT'S NAME: _JAMES ST. Louis_       SBI#: _00446518_

CASE#: _Complaint # 1022775 M_       TIME OF INCIDENT: _Report 12:00_

HOUSING UNIT: _E_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

_see sheet included (3) to explain grievance._

ACTION REQUESTED BY GRIEVANT: _appology from Ms Boring and reinstatement and back pay from main Kitchen and strucken from my record._

GRIEVANT'S SIGNATURE: _James St. Louis_       DATE: _12/10/05_

WAS AN INFORMAL RESOLUTION ACCEPTED?        ____(YES)   ____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

_exhibit B_

RECEIVED
DEC 1 3 2005

April '97 REV

10:30 AM  talked to Karney to see grievance officer

12/9/05    9:50 AM

I left Building E to go to kitchen to work
upon entering kitchen I handed my pass to officer Wagner
and proceeded into kitchen to coat room and then to
set up for todays work. After getting the count and
needs for diet cooks I noticed a sign up on the
nore one office for 2nd cooks. I saw I/M Coles
and asked him about it. He explained that I was
terminated and he was told to run the floor.
I proceeded to Lt. Lehman's office and upon entering
asked him y I was terminated. He said he just
received an E mail outlining suspension pending
termination y out come of hearing. And told me
spec. Boring wrote up this order. I asked him
what for and could I get a copy y it. He proceeded
to enter his computer and give me a copy y said
order. We talked for awhile and he said his advice
to me is chill for awhile and grieve it, and was
sure the truth would come out sooner or later.
I left and went back to my building were I
noticed the write up was dated 2 days ago
at noon.

                    facts:
#1. Around Thanksgiving time we (cooks) were
preparing a Thanksgiving day meal and Ms. Boring
asked y we were going to have bread pudding
I responded and told her no we were having
sweet potato pie instead. She said she always

adds raisins to her bread pudding and
wouldn't it be nice if we could do it here.
I told her probably but I didn't know when
we were going to have it. She asked me
to let her know so she could bring in
some raisins for workers chow and I said
I would. In the mean time Mr. Greenwell
(a second cook) told me Mr. Govan (1st cook)
and himself met with Mr. Cline (head of
kitchen) and was told if we had enough
bread after making stuffing for Thanksgiving
he could do bread pudding sometime.
Now two weeks ago we had chicken
patties and had 200 left over from
lunch which I put in the freezer. And
last Monday we had spagetti and meat
sauce left over from dinner that was
put in the cooler. I said to Mr. Govan
it would be nice if this week we had
chicken patties w/sauce and bread pudding
and he agreed says ask zone one if
we can do it Thursday seeing it is
a terrible meal. I proceeded to zone 1
and asked officer Johnson if he was
incharge Thursday and he said yes.
And I asked to run something by him
I told him of Greenwells conversation
about Kline oKing bread pudding

and I told him about the chicken
patty and sauce and ask if it would
be alright with him if we had them
Thursday and he said it was ok
Upon leaving your one I saw
Mrs. Boreing and told her we were
having Bread pudding and I hope
and sauce Thursday and she and
wanted to bring in raisins. I told
to talk to Mr. Greenwell because
had kleins permission and that
should clear it through him. She
immediately went to Greenwell
discussed the issue upon comp
told me she was going to deci
   The next thing I know I have
off but worked 1/2 a day (until
the 7th worked to 1pm) and no
anything to me. Thursday I we
into the kitchen at 1:30pm by
Lt Morris and Lt. Lehman
Questions about the supposedly
I did not go into work Thur
I was told by 3rd cooks Werd
night at 5pts that the mea
Cancelled and was asked if
OK. No one mentions th
up or suspension until he

12/8

and I told him about the chicken
patty and sauce and ask if it would
be alright with him if we had them
Thursday and he said it was OK.
Upon leaving zone one I saw
Ms. Boring and told her we were
having Bread pudding and chicken patty
and sauce Thursday and she said she
wanted to bring in raisins. I told her
to talk to Mr. Greenwell because he
had Klines permission and that she
should clear it through him. She
immediately went to Greenwell and
discussed the issue upon completion
told me she was going to check Mr Kline
The next thing I know I have Wendsday
off but worked ½ a day (which was
the 7th worked to 1pm) and no one said
anything to me. Thursday I was called
into the kitchen at 1:30 pm to see
Lt Morris and Lt. Lehman to answer
questions about the supposedly meal.
I did not go into work Thursday because
I was told by 3rd cooks Wendsday
night at 5 pts that the meal was
cancelled and was asked if I was
OK. No one mention the write-
up or suspension until this AM.

12/8



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

## MEMORANDUM

TO:        IM James St. Louis SBI# 446518 E D33B

FROM:      Deputy Warden Pierce

DATE:      February 7, 2006

RE:        Disciplinary

I received your letter dated February 1 2006, regarding a disciplinary you received and have forwarded your concerns to Hearing Officer Williams for his action.

DP/dc
Attachment
cc:    S/Lt Williams
       File

exhibit C

Dear Deputy Warden Pierce

## DEPUTY WARDEN I

Sir I am writing you because I can not get an answer to my problem. On Dec. 7 2005 Officer Boing, from the kitchen, wrote a disceplinary report # 1022173 which said I lied to her for my own personal gains. I worked pass the 1200 hour this report was done and upon asking 2 times if I was fired was told no by Lt. Lehman from the kitchen. On December 9 2005 I was told about this disceplinary report, 2 days later, and was given a copy of it but was also told by Lt. Lehman I was suspended pending a disceplinary hearing and that I should file a Grievance on this action. Upon my return to my building I asked the building officer in charge to call to C/O incharge of prison so I could put forth a Complaint. I was told he would be over as soon as he was free, that was about 9:40 AM December 9 2005, and I still haven't seen him. I asked two more times and was told to be patient I decided to write my Grievance and presented it to the building C/O who placed it in the Grievance box on 12/10/05.

As of January 24, 2006 I had heard nothing about my Grievance or my

disciplinary hearing and wrote a letter
to the Warden, the Grievance Office, Chris Klein,
Michael Knight and Lt S. Morris explaining
to them that I have yet received my 8th Am
rights to due process by [not] having a
disciplinary hearing and also requested
information which I tried to get from
law library and the building C.O. about
kitchen disciplinary hearing, which I was
told does not exist. I told them about
the witnesses I would like to call for
my hearing.
    Now we come to today 2/1/06 I
received back from the Grievance Office
my paperwork telling me I can not
Grieve a disciplinary action. The first
time I did a grievance was about Counselor
McMann and the physical threats and
was told I could not grieve that. What
exactly can be grieved? I do not
understand. I do want a disciplinary
hearing and have a right to one and
will go to civil federal court for one.
I am in the process of obtaining a lawyer
you are all familer with civil law
suits I don't want any problem only
what the law says I can get and that
to be treated fairly and which is
[not] happening

I'm not going the threaten anyone
by I am telling you this I've made copies
of everything and sent them out to my
son and told him to go to the papers
with both Grievances. If I do not tell
him progress is being made.

I'm so so sorry for having to
involve you but as an officer told me
who give me your name. If we had
competent C/O here who knew what
was right and how to do it. I wouldn't
have to address this to you.

Sir I'm not an angle but I also
do not lie and I will not admit
something I did [not] do a have something
on my record I did not do without
fighting with everything I have at hand.
I was told if I push this issue there
could be repercussions. The only thing
I say to that is God protects those who
trust in Him and nothing happens
without His sayso.

I hope we can address this issue
and come to a fast solution

Thanks for your
time
Jim St. Louis
446 518
unit D 33

1022173

Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## DISCIPLINARY REPORT

Disciplinary Type: Class1        Housing Unit: Bldg E            IR#: 1028348

| SBI# | Inmate Name | Inst. Name | Location Of Incident | Date | Time |
|---|---|---|---|---|---|
| 00446518 | Stlouis, James J | DCC | Bldg.14 Food Prep. Area | 12/07/2005 | 12:00 |

Violations: 2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

Witnesses:1 N/A                  2. N/A                    3. N/A

### Description of Alleged Violation(s)

On The Above Date And Approx. Time I/M James St. Louis Was Terminated For Lying And Abuse Of Privileges/M  James St. Lou Told Me, Fssii Boring That Chicken Parmesan And Bread Pudding W/ Raisins Was Approved By Director Klein. I/M Lied To Me Fs Boring About The Approval Of The  Products.

Reporting Officer: Boring, Mary M (FS Specialist I & II)

### Immediate Action Taken

Immediate action taken by: Boring, Mary M -FS Specialist I & II

404 Written

### Offender Disposition Details

Disposition: N/A                    Date: N/A       Time: N/A      Cell secured? No

Reason: N/A

Disposition Of Evidence: N/A

### Approval Information

Approved: ☑    Disapproved: ☐    Approved By: Lee, Bradley  Jr.(Staff Lt./Lt)

Comments: N/A

### Shift Supervisor Details

Date Received: 02/15/2006        Time: 13:57        Received From: Boring, Mary M

Shift Supervisor Determination:

[ ]   Upon reviewing this Disciplinary Report, I conclude that the offense may be properly responded to by an immediate revocation of the following privileges(see reverse side) for _____ hours not to exceed 24 hours)

[X]   Upon reviewing this Disciplinary Report, I conclude that the offense would be properly responded to by Disciplinary Hearin

_(signature)_

Lee, Bradley  Jr.(Staff Lt./Lt)

I have received a copy of this notice on DATE:_____ TIME: _____ and have been informed of my rights to have a hearing and to present evidence on my own behalf. I understand, if found guilty, I will be subject to imposition of sanctions outlined in the Rules of conduct.

Preliminary Hearing
Officer: _____        Offender: _____
                    Lee, Bradley  Jr.                                    Stlouis, James  J

_exhibit D_

DR #
*1022173*

Date: 2/16/06

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## NOTICE OF DISCIPLINARY HEARING – FOR MINOR/MAJOR OFFENSE

To: Inmate: *St Louis, James T.*    SBI#: 00*446518*    Housing Unit: *E*

1. You will be scheduled to appear before the Hearing Officer to answer charges pending against you. (Staff are to explain the charges as listed on the 122.)

2. At that time, a hearing will be held to determine whether you violated Institutional Rule(s) as alleged in the attached Disciplinary Report.

How do you plead? ☐ Guilty    ☒ Not Guilty

3. A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a. Written Reprimand.
   b. Loss of one or more privileges for a period of time of more than 24 hours but less than **15 days**.

4. A "Major Offense" is a rule violation in which the extent of the sanction to be imposed shall be restricted to:
   a. Loss of one or more privileges for a period of **more than 15 days but less than 60 days**.
   b. Confinement to assigned quarters for a period of time not to exceed 30 days.
   c. Isolation confinement for a period of time not to exceed 15 days.
   d. Loss of good time for a period of time not to exceed 30 days. (Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.)

5. You have the rights in the disciplinary process as stated on the lower and back of this page. These have been fully explained to you at the time of this notification.

6. Counsel requested? ☐ Yes    ☒ No    Name of Counsel: _____

7. Confront accuser? ☒ Yes    ☐ No

8. Witness requested? ☒ Yes    ☐ No    Name of Witness: *Fm Greenwell, Bryon*
                                                      *FSS. Morris, Cheryl*
                                                      *FSSM Johnson, A.*

I certify that on 2/16/06 at _____
(Date)        (Time)
I served upon the above inmate this notice of Disciplinary Hearing for Minor/Major Offense and the Disciplinary Report is attached hereto.

I have received copies of 122 & 127 and understand my rights as Form #127 has been read to me.

_____
(Employee's Signature & Title)

X _____
(Inmate's Signature)

*exhibit E*

Form 127: May 30, 2003   DACS

Page 1  *letter to C/o Disciplinary Officer for director Klein – I'm given C/o Lt. Lehman / also no response for first pending from Lt. Morris*

## DISCIPLINARY HEARING DECISION

Inmate  : StLouis, James  J                                SBI#:00446518        Type:Class 1

Institution:DCC Delaware Correctional Center               Hearing Date: 02/23/2006    Time: 12:37

Inmate Present: Yes      Reason(If No): N/A

Violation:  2.01/200.105 Abuse of Privileges, 2.10/200.213 Lying

Inmate PLEA: Not Guilty

Inmate Statement:  Because I didn't do what she said I did.     *wass not present*

Witness Name: Greenwell, Bryon   ————→  *wass not present*

Testimony : Lt. Morris state's Mr greenwell said nothing about raise for bread pudding
            Sgt. johnson, Andre state's He know nothing of this bread pudding W/Raisins

Witness Name: Morris, Cheryl

Testimony : N/A

Witness Name: Johnson, Andre

Testimony : N/A

Decision :Guilty

Rational :Accuser state's I/M said he got the approved from Mr. Klein. After listen to Lt. Morris an Sgt. Johnson I find I/M Guilty
          of all charges

Sanctions: N/A

### HEARING OFFICER'S SIGNATURE

Heverin, Ralph

I understand that I may appeal the decision of a Class II Hearing  to the Class I Hearing  Officer.I may appeal the decision of a
Class I Hearing  to the facility administrator.I also understand that I have 72 hours to submit my notice of appeal in writing to the
Class I Hearing Officer if I am appealing a Class II Hearing decision or the Warden if I am appealing a Class I Hearing decision.

I [X]   DO    [ ]    DO NOT INTEND TO APPEAL

INMATE's SIGNATURE

### ORDER TO IMPLEMENT SANCTIONS

[ ]  Inmate does not wish to appeal            [X]  Appeal has been denied by Commissioner or Designate

[ ]    Sanctions have been modified            [ ]    Time Limit(72 Hours since hearing) for appeal has expired

It is here by ordered to implement the sanctions:

| Sanctions | Start Date | Days | End Date |
|---|---|---|---|
| 1. Confinement to Quarter | 04/10/2006 | 5 | 04/14/2006 |

Page 1 of 1

DCC Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

## DISCIPLINARY HEARING DECISION

☑ Class I (Major)    ☐ Class II (Minor)    ☐ Summary (24 Hour LOAP)

Inmate: _Morris Frame_                                    SBI#: 00 _445518_
Institution: Delaware Correctional Center    Hearing Date: _3.23.06_    Time: _____

Inmate Present: ☑ Yes    ☐ No

Reason (If No): _____

Violation: _201 /15 HP 215.213 Lying_
Inmate Plea: _Not Guilty_
Inmate Statement: _Because I didn't do what she said I did._

Witness Name: _Phillips_ _claimed that she removed and nothing about_
Testimony: _Rain for bread picking._

Witness Name: _Lt Johnson and Lt Police Ofc Harris nothing of it_
Testimony: _Bread peddling w/ Rawism._

Witness Name: _____
Testimony: _____

Decision: _____ ☑ Guilty    ☐ Not Guilty    ☐ Further Investigation
Rational: _Because both Tom said he got the greatest from our Policing off Witt_
_to Ofc Morris + Lt Johnson I find the truth of all charges_

Sanctions: _5 days ITA_                                        ___/11/___
                                        Hearing Officer's Signature _McCoy    Ner_

I understand that I may appeal the decision of the Hearing Officer (or Shift Supervisor in the case of a Summary Sanction) to the Commissioner of Correction or his designee. I must complete a Disciplinary Appeal Form within 72 hours immediately following the hearing and mail it to the DCC Hearing Office.

☑ I do intend to appeal.

☐ I do not intend to appeal.                         _Morris Frame_
                                        Inmate's Signature

## ORDER TO IMPLEMENT SANCTIONS

☐    Inmate does not wish to appeal        ☐    Appeal has been denied by Commissioner or Designee

☐    Sanctions have been modified        ☐    Time Limit (72 hours since hearing) for appeal has expired

Modifications: _____
It is hereby ordered to implement the sanctions or modified sanctions on Date: _____    Time: _____

Form 121 – May 30, 2003 – 2 pt. NCR  DACS

_exhibit F_

Inmate  : Stlouis, James J                                      SBI#:00446518    Type:Class 1

Institution:DCC  Delaware Correctional Center            Hearing Date: 02/23/2006    Time: 12:37

## MEMORANDUM

To   : Stlouis, James J

From : Chief, Bureau of Prisons

RE   : APPEAL DECISION

1. Confinement to Quarter

   Your appeal              [ ]   Accepted    [X]  Denied

   The decision of hearing  [X]   Affirmed    [ ]  Reversed  [ ]  Remanded for further proceedings

   The sanction imposed by hearing officer will  [X]  Remain as imposed by the Hearing Officer [ ]  Reduced

The basis of this decision is as follows :

The reports support the guilt. your appeal contains no evidence to support a change.{SLD}

This report has been reviewed by Rendina, Anthony J

Date Reviewed 03/02/2006

letter sent
disappointment
journal
attorney

exhibel F

James St.Louis, 446518
22
AU5

I will be preparing your classification this month. Building 21 is maximum security.
Let's talk about that more at classification. I will leave my recommendation blank until
we talk.

Per your request, here is your breakdown for classification.

6 – Severity of offense
0 – Open charges
0 – Escapes
0 – Age
0 – Prior convictions 10 years prior to the start date of this sentence
2 – Points for number of write-ups in the last 18 months
3 – Points for most severe write-up in the last 5 years
2 – Points for programming/not programming, working or being terminated from work
3 – Points for time remaining on your sentence.

The total points are 16 points with a review of 06/07. However, I have approval to
review your classification this month. Counselor McMahon and Lt. Porter were on the
MDT of that classification.
Thank you, and see you soon.

Cindy Atallian
Counselor – 22

```
AMERICAN CIVIL LIBERTIES      )
UNION OF DELAWARE,            )
                             )
    Plaintiff,               )
                             )
    v.                       )   Civil Action No.
                             )
STANLEY W. TAYLOR, JR.,       )
in his official capacity as the   )
COMMISSIONER OF THE          )
DELAWARE DEPARTMENT          )
OF CORRECTION,               )
                             )
    Defendant.               )
_____)
```

## COMPLAINT UNDER DELAWARE FREEDOM OF INFORMATION ACT

Plaintiff American Civil Liberties Union of Delaware, by its undersigned

attorneys, for its Complaint against Defendant, alleges:

### NATURE OF ACTION

1. This action seeks to compel compliance with the Delaware Freedom of

Information Act, 29 Del. C. §§ 10001 et. seq. Pursuant to the Act, Plaintiff

requested that Defendant disclose certain public records pertaining to the

provision of health care in Delaware prisons. Defendant has refused to provide

the requested records. Defendant claims that the requested records are not public

records subject to disclosure under the Act because they are "trade secrets and

commercial or financial information obtained from a person which is of a

privileged or confidential nature." See 29 Del. C. § 10002(g)(2).

2. This Court has jurisdiction over this action pursuant to 10 Del. C. § 541 and

venue is proper under 29 Del. C. § 10005(b).

## PARTIES

3. Plaintiff American Civil Liberties Union (ACLU) of Delaware is a non-profit

public interest organization with its principal place of business in Wilmington,

Delaware. Since its founding in 1961, the ACLU of Delaware has worked before

the legislature and in the courts to advance the civil liberties of all Delawareans

and to educate the public on a wide range of civil liberties issues. In particular,

the ACLU of Delaware has engaged in advocacy and litigation on behalf of

Delaware's inmate population.

4. Defendant Stanley W. Taylor, Jr. is the Commissioner of the Delaware

Department of Correction. Defendant Taylor is sued in his official capacity.

## FACTS

5. The Delaware Freedom of Information Act (FOIA) declares: "It is vital in a

democratic society that public business be performed in an open and public

manner so that our citizens shall have the opportunity to observe the performance

of public officials and to monitor the decisions that are made by such officials in

formulating and executing public policy; and further, it is vital that citizens have

easy access to public records in order that the society remain free and

democratic." 29 Del. C. § 10001.

6. The Delaware FOIA provides that "[a]ll public records shall be open to inspection

and copying by any citizen of the State . . . ." 29 Del. C. § 10003(a).

2

ACLU of Delaware, pursuant to the Delaware FOIA, requested that Defendant

provide a copy of five categories of documents.

8. By letter dated June 27, 2006, a copy of which is attached as **Exhibit 2**,

Defendant responded to the ACLU's FOIA request. In that letter, Defendant

informed the ACLU that he had authorized disclosure of the first three categories

of documents requested, but Defendant refused to produce any documents from

the fourth and fifth categories of documents requested by the ACLU.

9. The fourth category of documents sought by the ACLU was treatment protocols

for the following illnesses or conditions: HIV/AIDS, hepatitis, diabetes, heart

disease, cancer, sexually transmitted diseases, pregnancy and gynecological care,

high blood pressure, high cholesterol, dental care, and chronic pain. Defendant

has not produced any such treatment protocols to the ACLU.

10. The fifth category of documents sought by the ACLU was operating procedures

with respect to wellness visits, including routine gynecological care. Defendant

has not produced any such operating procedures to the ACLU.

11. In the June 27, 2006 letter, Defendant also asserted that the requested treatment

protocols and operating procedures "do not fit the definition of 'public record'" as

used in the Delaware FOIA "because they are 'trade secrets and commercial or

financial information obtained from a person which is of a privileged or

confidential nature.'" *See* 29 Del. C. § 10002(g)(2). In support of this assertion,

Defendant stated only that "[t]he treatment protocols you have requested consist

3

provider Correctional Medical Services, Inc. ('CMS')."

12. The only basis asserted by Defendant to justify its refusal to disclose the requested treatment protocols and operating procedures is Defendant's claim that the requested documents are exempt from disclosure under 29 Del. C. § 10002(g)(2).

13. Because the Delaware Department of Correction is a state agency, there is no administrative process by which the ACLU can appeal Defendant's decision. *See* 29 Del. C. § 10005(f); 29 Del. C. § 2540(2). Plaintiff ACLU of Delaware has no mechanism to enforce the Delaware FOIA other than by bringing suit.

14. All conditions precedent have been performed or have occurred.

15. Plaintiff ACLU of Delaware has a right to the records it seeks, and there is no legal basis for Defendant's refusal to provide them to Plaintiff.

## CLAIMS FOR RELIEF

Plaintiff requests that this Court:

1. Declare that Defendant's failure to disclose the requested treatment protocols and operating procedures violates 29 Del. C. § 10003 and is unlawful;

2. Order Defendant to make the requested records available to Plaintiff;

3. Award Plaintiff its attorneys' fees and costs pursuant to 29 Del. C. § 10005(d); and

4. Grant all other appropriate relief.

August 8, 2006

Respectfully submitted,

Julia M. Graff (DE Bar No. 4708)
ACLU of Delaware
100 W. 10th Street, Suite 309
Wilmington, DE 19801
Tel. (302) 654-5326, ext. 103
Fax (302) 654-3689

Michael T. Kirkpatrick
*Applicant for admission pro hac vice*
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
Tel. (202) 588-1000
Fax (202) 588-7795

Attorneys for Plaintiff

5

# EXHIBIT 1



Wilmington Delaware 19801
(302) 654-5326 Fax (302) 654-3689
acludelaware@acludelaware org    www.aclu-de.org

Sidney Balick
*President ACLU Delaware*
Nancy D Dean
*Vice President*
Jeanne M Hanson
*Second Vice President*
Max S Bell, Jr
*Secretary*
Grace E Messner
*Treasurer*
Gilbert J Sloan
*President ACLF Delaware*
Joan D Kandler
*Treasurer ACLF*

*Board of Directors*
Timothy F Brooks
Joan DelFattore
Alice E Eakin
Anne M Farley
Helen K Foss
Judith D Govatos
Lawrence A Hamermesh
Patricia A. Hampton
Selma Hayman
Bangalore I Lakshman
Phyllis Levitt
Elizabeth M McGeever
Judith E Meilen
Norman M Monhait
Joy Mulholland
Joseph S Naylor
Darryl A Parson
Jeffrey A. Raffel
Scott Reid
Joan L. Rosenthal
Carl Schnee
Warren A. Scott
Sonia S. Sloan
Peggy E Strine
Randy Tiffany
Leland B Ware
James C Welch
Serena M. Williams
Cecil C. Wilson

*Advisory Board*
Gary W. Aber
Mashoor I Awad
Victor F. Battaglia Sr
Sam Beard
Henry H Beckler
Richard G Elliott, Jr.
Herbert Graves, Jr
Shirley C Horowitz
Kathi A. Karsnitz
Penny Marshall
John E. Osborn
B. Wilson Redfearn
Joseph A. Rosenthal
Carolyn Walker
Paul P. Welsh

Drewry Nash Fennell, Esq
*Executive Director*

June 12, 2006

Mr. Stanley W. Taylor, Jr
Commissioner
Delaware Department of Correction
245 McKee Road
Dover, DE 19904

### Re:  **FOIA REQUEST**

Dear Commissioner Taylor:

This is a request under the Freedom of Information Act, 29 Del
Code § 10001 et seq

I respectfully request a copy of the following:

1. The disciplinary rules whose violation would result in action
   against an inmate;

2. and the policies and procedures controlling disciplinary
   infractions, including Department of Correction policies and
   procedures and the Bureau of Prisons policies and procedures;

2 The prison grievance procedures for medical grievances as well
   as non-medical grievances;

3. Treatment protocols for the following illnesses or conditions:

   a. HIV/AIDS;
   b. Hepatitis;
   c. Diabetes;
   d. Heart Disease;
   e. Cancer;
   f. Sexually Transmitted Diseases;
   g. Pregnancy and Gynecological Care;
   h. High Blood Pressure;
   i. High Cholesterol;
   j. Dental Care;
   k. Chronic pain; and

4 Operating procedures with respect to wellness visits, including
   routine gynecological care

*Protecting the Civil Liberties of Delawareans Since 1961*

To permit me to reach an intelligent and informed decision about whether to file an administrative appeal of any denied material, please describe any with held records (or portions thereof) and explain the basis for your exemption claims.

I also request a waiver of all fees for this request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in my commercial interest

To help to determine my status for the purpose of assessing fees, please note that I am requesting such information on behalf of the American Civil Liberties Union of Delaware, a public interest organization that seeks the information for public use, and not for private or commercial use

If you have any questions regarding the scope of the request or any other matters, please call me at (302) 654-5326, ext. 102. I look forward to receiving your response by June 27, 2006 [1]

Sincerely,

Julia M Graff
Staff Attorney
ACLU of Delaware

---

[1] *See* Letter from Attorney General (June 3, 2004): "This Office has determined that 'reasonable access means that a public body 'should, within 10 days of receipt of a definitive request, issue a written determination to the requestor stating which of the requested records will, and will not be released and the reasons for any denial of a request. Att'y Gen. Op. 91-IO03 (Feb. 1, 1991),'" *available* at http://www.state.de.us/attgen/main_page/opinions/2003/03-ib13.htm *See also* Letter from Attorney General (June 2, 2003): "Statutes in a number of other states exclude Saturdays, Sundays and holidays in calculating the required response time for public records See e.g., D C Code S 1-522(c); La Rev Stat. S 41:31; S.C. Code Ann. S 30-4-40. We think it appropriate to exclude weekends and holidays in Delaware as well. In addition, just as the courts do not count the day of filing, the time-line for a FOIA response to a public records request begins the next business day after the public body received the request," *available* at http://www.state de.us/attgen/main_page/opinions/2003/03-ib13.htm.

2

# EXHIBIT 2

STATE OF DELAWARE
DEPARTMENT OF CORRECTION
245 McKee Road
Dover, Delaware 19904

Stan Taylor
Commissioner

(302) 739-5601
Fax: (302) 739-8221
E-Mail: sttaylor@state.de.us

June 27, 2006

*VIA Hand Delivery and U.S. Mail*

Julia M. Graff, Esquire
Staff Attorney
ACLU of Delaware
100 W. 10th Street, Suite 309
Wilmington, DE 19801

Re:    The ACLU's FOIA request to DOC dated June 12, 2006

Dear Ms. Graff:

Please accept this letter as a response to your written FOIA request dated June 12, 2006. Your recent request for information was made under the State of Delaware's Freedom of Information Act (FOIA), 29 *Del. C.* § 10001, *et seq.* Therein, you requested the following information:

1.    The disciplinary rules whose violation would result in action against an inmate;[1]

2.    The policies and procedures controlling disciplinary infractions[2], including Department of

---

[1] Presumably, the phrase "action against an inmate" refers to disciplinary sanctions short of criminal prosecution for disciplinary infractions committed by inmates. Please advise if you intended a different meaning.

[2] Presumably, the term "policies and procedures controlling disciplinary infractions" refers to the notice, hearing, and appeal provisions associated with the inmate disciplinary process. Please advise if you intended a different meaning.

> Correction policies and procedures and the Bureau of
> Prisons policies and procedures;
>
> 3.     The prison grievance procedures for medical
> grievances as well as non medical grievances;
>
> 4.     Treatment Protocols for the following illnesses or
> conditions:
>> a. HIV/AIDS
>> b. Hepatitis
>> c. Diabetes
>> d. Heart Disease
>> e. Cancer
>> f. Sexually Transmitted Diseases
>> g. Pregnancy and Gynecological Care
>> h. High Blood Pressure
>> i. High Cholesterol
>> j. Dental Care
>> k. Chronic Pain
>
> 5.     Operating Procedures with respect to wellness
> visits, including routine gynecological care.

As you may be aware, the FOIA statute contains a number of exceptions to the definition of "public record". *See* 29 *Del. C.* § 10002(g).   Legally speaking, the records requested in paragraphs 1 – 3 are exempted from the definition of public records because they are subject to statutory privilege. *See* 11 *Del. C.* § 4322(d)[3] in conjunction with 29 *Del. C.* § 10002(g)(6). Nonetheless, pursuant to my authority under 11 *Del. C.* § 4322(d), I authorize the disclosure of these policies in response to your request. They are enclosed herein.

With respect to the remainder of your requests, these records do not fit the definition of "public record" because they are "trade secrets and commercial or financial information obtained from a person which is of a privileged or confidential nature." *See* 29 *Del. C.* § 10002(g)(2). The treatment protocols you have requested consist entirely of

---

[3] "The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order, Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of the Department of Correction shall be confidential, and not subject to disclosure except upon the written authority of the Commissioner."

Proprietary information held by the Department's contracted medical provider Correctional Medical Services, Inc. ("CMS").

Thank you for your interest in these issues. The Department looks forward to engendering a continued working relationship with the ACLU of Delaware.

Very truly yours,

Stanley W. Taylor
Commissioner of Correction

cc:    Dr. Robert M. Hooper

Enclosures

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NORTH EMERSON-WEST,                    )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )        C.A. No. 78-14
WALTER W. REDMAN, et al.,              )
                                       )
        Defendants.                    )

CONSENT ORDER

The parties, through their respective legal counsel, hereby stipulate and agree, subject to the approval of the Court, as follows:

1. Defendants shall implement the disciplinary procedures set forth in Exhibit "A" at Delaware Correctional Center ("DCC") commencing immediately.

2. By January 1, 1983, defendants shall commence training sessions explaining the disciplinary procedures to all correctional officials at DCC of the rank captain and below. Said training sessions shall be conducted no less frequently than twice each year. After attendance at four such sessions, a correctional official may be excused from further attendance.

3. Persons designated as hearing officers shall be provided with training by a Deputy Attorney General before presiding over hearings. At that time, the hearing officer shall be provided with an instructional pamphlet explaining his/her responsibilities.

4. Plaintiffs and defendants shall create an instructional pamphlet for correctional officers explaining the disciplinary procedures provided in Exhibit "A". The Department of Correction shall provide every present employee, and new employees as they are hired, with a copy of said pamphlet.

5. Upon receipt of a Disciplinary Report, the Hearing Officer will examine the report to determine if it is properly completed. If it is not properly completed, the Hearing Officer will direct the Report to the Unit Manager for the building where the complaining officer works. The Unit Manager will direct the complaining officer to correct the deficiencies in the Report and to return it to the Hearing Officer within seventy-two (72) working hours of the time when the Hearing Officer provided it to the Unit Manager.

If the complaining Officer does not submit the properly completed report within this time, the charges shall be dropped.

6. The Hearing officer shall note on each Disciplinary Report the times when it was delivered to the Building Superintendent and when it was returned to the Hearing Officer.

7. After the Disciplinary Hearing, if there is no appeal, the record of the hearing, together with relevant supporting documents, shall be forwarded to the Security Superintendent. He shall review them to determine whether the procedures in Exhibit "A" were properly followed.

8. If the procedures were not properly followed, the documents will be sent back to the Hearing Officer with appropriate instructions to correct the deficiencies and return the documents to the Security Superintendent.

9. Within thirty (30) days after the final review by the Security Superintendent, photocopies of the Record and supporting documents (defined as all documents relating to the incident which was the subject of the charge) shall be delivered to legal counsel for the plaintiffs.

10. If there is an appeal from the order of a Hearing Officer, within (30) days after action on the appeal, photocopies of the record and supporting documents shall be delivered to legal counsel for the plaintiffs.

11. The provisions in paragraphs 8 and 9 shall remain in effect for one year from the execution of this Order by the Magistrate or the Court, unless plaintiff's counsel requests an extension of time.


KATHLEEN C. LUCAS
Department of Correction
820 North French Street
Wilmington, DE  19801

Attorney for Defendants


DOUGLAS A. SHACHTMAN
1823 Lancaster Avenue
Wilmington, DE  19805

Attorney for Plaintiff


IT IS SO ORDERED this _____ day of _____, 1982.


_____
UNITED STATES DISTRICT JUDGE

October 11, 2006

James St.Louis, 446518
22
AU5

I will be preparing your classification this month.  Building 21 is maximum security.
Let's talk about that more at classification.  I will leave my recommendation blank until
we talk.

Per your request, here is your breakdown for classification.

6 – Severity of offense
0 – Open charges
0 – Escapes
0 – Age
0 – Prior convictions 10 years prior to the start date of this sentence
2 – Points for number of write-ups in the last 18 months
3 – Points for most severe write-up in the last 5 years
2 – Points for programming/not programming, working or being terminated from work
3 – Points for time remaining on your sentence.

The total points are 16 points with a review of 06/07.  However, I have approval to
review your classification this month.  Counselor McMahon and Lt. Porter were on the
MDT of that classification.
Thank you, and see you soon.

Cindy Atallian
Counselor – 22

| POLICY OF<br><br>STATE OF DELAWARE<br><br>DEPARTMENT OF CORRECTION | POLICY NUMBER<br>4.4 | PAGE NUMBER<br>1 OF 1 |
|---|---|---|
| | RELATED ACA STANDARDS:<br>36 | |
| CHAPTER:4-DECISION MAKING<br>RELATING TO OFFENDERS | SUBJECT: OFFENDER/DETEN-<br>TIONER GRIEVANCE PROCESS | |
| APPROVED BY COMMISSIONER: *Robert JW Watson* | | |
| EFFECTIVE DATE: July 1, 1992 | | |

I. **AUTHORITY:** 11 Del. C. 6535, 29 Del. C. 8903

II. **PURPOSE:** To establish offender/detentioner grievance process.

III. **APPLICABILITY:** All Department employees, volunteers, persons or organizations conducting business with the Department; all offenders or detentioners under the supervision or custody of the Department.

IV. **DEFINITIONS:** None

V. **POLICY:** It is the policy of the Department of Correction to afford all offenders/detentioners the right to file a grievance without fear of reprisal or adverse action.

Procedures should be developed by the Bureau Chiefs for Prisons and Community Custody and Supervision to establish a grievance process for their respective offender/detentioner populations. The procedures shall require short, enforceable time frames for the grievance to be transmitted without alteration, interference, or delay to an individual designated responsible for receiving and investigating grievances who has the power to act. In addition, the procedures must require a short enforceable time limit, a written report of the final disposition, and an appeal mechanism that identifies the available levels of appeal.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1 OF 7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: 36 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS _Carl W. Howard_ | | |
| EFFECTIVE DATE: _Revised_  5/15/98 | | |

I.   **AUTHORITY:**  DOC Policy 4.4

II.  **PURPOSE:**

To establish an Inmate Grievance Procedure designed to
reduce tension in correctional facilities and to effectively
resolve the vast majority of cases within our system.  Every
inmate will be provided a timely, effective means of having
issues brought to the attention of those who can offer
administrative remedies before court petitions can be filed.
NOTE:   Inmates are encouraged to seek their counselors'
advice on how to best pursue a response to concerns before
prematurely filing a grievance under the guidelines that
follow.

III. **APPLICABILITY:**

All BOP employees, volunteers, persons or organizations
conducting business with the BOP: all inmates under BOP
custody or supervision.

IV.  **DEFINITIONS:**

A.   Bureau Grievance Officer (BGO):  A BOP employee who
reviews and mediates appeal of the Warden's/Warden's
Designee decision.

B.   Emergency Grievance:  An issue that concerns matters
which under regular time limits would subject the
inmate to a substantial risk of personal, physical or
psychological harm.

C.   Grievance:  A written complaint concerning the
substance or application of a policy or practice; any
action toward an inmate by staff or other inmates; any
condition or incident within the institution that
affects an inmate.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 2  OF  7 |
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

D.  Inmate Grievance Chair (IGC): An institutional employee designated to handle inmate grievances.

E.  Inmate Grievance Procedure (IGP): The formal process provided to inmates to resolve disputes.

F.  Outside Reviewer: An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.  Resident Grievance Committee (RGC): A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.  Reprisal: Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.  Medical Grievance Committee (MGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

> Health Services Administrator
> Director of Nursing
> Charge Nurse
> Chief Medical Officer
> Medical Records Clerk
> Mental Health Counselor
> Chief Dental Officer
> Dental Assistant

## V.  PROCEDURE:

1.  Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.  All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP. Inmate complaints regarding policies and conditions must be within DOC jurisdiction. This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally. NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 3 OF 7 |
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3.   The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4.   The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5.   No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6.   All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7.   The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8.   Inmates are prohibited from submitting more than one grievance arising from a single incident.

9.   If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.4 | PAGE:<br>4 OF 7 |
|---|---|---|
| SUBJECT: INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.4 | PAGE:<br>5 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

### IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584.  The grievant must complete this form within 7 calendar days following the incident and forward to the IGC.  The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt.  Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance.  Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance.  Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants.  The RGC shall ask any question it feels relevant to the issue.  If the RGC determines that further investigation is required it may grant an additional five days, by majority vote and grievant consent, to complete its work.  All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation.  The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution.  If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance.  If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt.  Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance.  At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended.  The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary.  The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 6  OF  7 |
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

recommendation.  Decisions by the Bureau Chief of Prisons are
final and not open to grievant interpretation.  The Bureau Chief
of Prisons will return his final decision and the grievance file
to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or
psychological inmate injury shall be addressed immediately by the
Warden/Warden's Designee.   A copy of the grievance shall be sent
to the IGC upon receipt by the Warden/Warden's Designee.  And the
Warden/Warden's Designee shall respond within one calendar day.
Grievant appeals of the Warden/Warden's Designee decision will be
decided by the Bureau Chief of Prisons within one calendar day
upon receipt of the emergency appeal.  NOTE: If the
Warden/Warden's Designee should determine that the grievance does
not meet the emergency criteria, the grievance shall be returned
to the inmate for processing through the normal IGP process
steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance
Chairperson (IGC) at the respective institution on Form #585.
If, by chance, an inmate sends a grievance directly to the
medical services contractual staff, they are to forward it first
to the IGC who will log it in the institution's grievance log and
then return it to the medical services contractual staff for
action.

The appropriate medical staff will review the grievance and
denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal
resolution with the inmate, upon discussion over the treatment
defined on the Medical Log Form.  If the Medical Grievance is
resolved the inmate acknowledges this by his signature on Form
#585 Informal Resolution.  This signed form is forwarded to the
IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical
Grievance Committee hearing which will not include any medical
services contractual staff previously involved in the informal
resolution process.  The IGC and the inmate must be present at
this hearing.

Resolution closes the case; failure to resolve the case results
in the inmate completing the MGC Appeal Statement section of Form
#585.  Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|:---:|:---:|:---:|
| BUREAU OF PRISONS | 4.4 | 7   OF   7 |
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO). The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded. If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II. The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review. If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review. Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal. This form must be given to the IGC who is responsible for tracking the status of each grievance. The IGC will forward the appeal and grievance file to the BGO. Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level. NOTE: The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

## CORRECTION CODE OF PENAL DISCIPLINE

100    GENERAL PROVISIONS

PURPOSES AND OBJECTIVES

100.11    The purpose of this code is to establish a system of penal discipline which defines, and prescribes appropriate sanctions for, conduct that unjustifiably causes or threatens substantial harm to individual, institutional or state interests.

100.12    This Code will be construed according to the fair meaning of its terms, to promote justice and to accomplish the following general objectives:

(a)    To promote the safety and welfare of everyone within the institution.

(b)    To promote the efficient administration and operation of the institution.

(c)    To define what conduct is prohibited in the institution and state the sanctions that may be imposed to punish such conduct.

(d)    To prevent arbitrary or retaliatory treatment of inmates accused or convicted of offenses.

(e)    To prescribe penalties that are proportionate to the seriousness of the offenses.

(f)    Generally, to provide a climate of certainty within which both correctional staff members and inmates will have a clearer picture of the relationship of each to the other and each to the interests of the institution.

DEFINITIONS

100.31    "Willfully" - an inmate acts "willfully" with respect to his conduct or to a result thereof, when it is his conscious purpose

to engage in the conduct or cause the result.

100.32   "Bodily Injury" means physical pain, physical illness or the impairment of any physical condition.

100.33   "Contraband" means any article, substance or thing which is not authorized by The Department of Correction, obtainable through the institutional commissaries, specifically permitted by applicable prison regulations, or otherwise specifically authorized by the institutional Warden or his designee.

100.34   "Offense" means conduct that is prohibited by this Code.

100.35   "Deadly Weapon" means any firearm, weapon, or other device, instrument, material or substance which in the manner in which it is used or is intended to be used is capable of producing death or serious bodily injury.

100.36   "Privilege" means any benefit conferred upon the inmate population by institutional regulation.

ATTEMPT, CONSPIRACY, AND ACCESSORIES.

100.37   Attempt:  An inmate commits an attempt when he does an act which constitutes a substantial step in a course of conduct planned to result in the commission of a rule violation.

100.38   Conspiracy:  An inmate commits a conspiracy when he agrees with one or more persons to engage in a rule violation and then acts to carry out that agreement.

100.39   Accessory:  An inmate is an accessory if he knowingly provides assistance to an inmate committing a rule violation.

100.40   The offenses of conspiracy, attempt and accessory will be punishable in the same degree as the rule violation involved.

200.        RULES

200.10            MINOR OFFENSES

200.101      Unauthorized Use of Property of Another:  Taking, exercising
             control over or otherwise using the property of another person
             without the consent of the owner.

200.102      Off Limits

             (a)  Failing to report as prescribed to an appointed place of
                  duty or assignment or to any other place where directed by
                  the valid order of a correctional staff member.

             (b)  Leaving without permission from an appointed place of duty
                  or assignment to any other place where directed to remain
                  by the valid order of a correctional staff member.

             (c)  Entering or remaining in a prohibited area "Prohibited
                  area" as used herein means any area to which inmate has not
                  been authorized to be present.

200.103      Gambling:  Organizing or participating in, wagers or games for
             personal gain, money or anything of value.

200.104      Refusal to Work:  Refusing to perform work assignments.

200.105      Abuse of Privileges:  Willful violation of any institutional
             regulation dealing with a privilege.

200.106      Creating a Health, Safety, or Fire Hazard:  Activities which
             create a situation dangerous to the health or safety of persons
             within the institution, or create a danger of fire within the
             institution.

200.107      Damage or Destruction of Property (under $10.00):  Tampering
             with, damaging or destroying property belonging to the State of
             Delaware or to another person when the replacement value of such
             property is less than $10.00.

200.108     <u>Failing to Obey an Order</u>:    Willfully failing to obey any order
            issued by institutional staff.

200.109     <u>Refusal to cooperate in Drug-Abuse Testing</u>:    Willfully refusing
            to provide a wine sample, to breathe into a breathalyzer or to
            participate in other drug-abuse testing.

200.110     <u>Possession of Unauthorized Clothing</u>: Possessing any article of
            clothing which is not specifically authorized for inmate wear.

200.111     <u>Possession of Non-dangerous Contraband</u>:    Possession or control
            of any contraband which by its nature does not present
            substantial danger to the safety of persons within the
            institution.

200.112     <u>Abuse of Prescribed Medication</u>:    Willfully hoarding medication
            which the inmate is authorized to receive.

            <u>MAJOR OFFENSES</u>

200.201     <u>Assault</u>:  Willfully causing bodily injury to another person.

200.202     <u>Sexual Misconduct</u>:    Willfully engaging or soliciting or
            attempting to engage in sexual relations with another person
            within the institution.

200.203     <u>Disorderly or Threatening Behavior</u>:  (a) Fighting, or other
            violent, or threatening behavior.  (b) Insulting, taunting or
            challenging another person, in a manner likely to produce a
            violent or disorderly response.

200.204     <u>Restraint</u>:    Willfully restraining another person under
            circumstances which may expose the other person to a risk of
            bodily injury.

200.205     <u>Theft</u>:  Willfully taking or withholding property of another
            person intending to keep such property from its owner.

200.206    <u>Arson</u>:  Willfully starting a fire or causing an explosion within the institution.

200.207    <u>Receiving</u> <u>Stolen</u> <u>Property</u>:   Receiving or possessing property of another person knowing that it has been stolen or believing that it has probably been stolen,  unless a correctional officer  has been   notified   or other reasonable efforts are made to   restore the property to its owner.

200.208    <u>Forgery</u>:   Falsely making, completing or altering  a  written document with intent to defraud or deceive another person.

200.209    <u>Damage</u>  <u>or</u>  <u>Destruction of Property  (over $10.00)</u>:   Tampering with,  damaging or destroying property belonging to the State of Delaware or to another person when the replacement value of such property is equal to or exceeds $10.00.

200.210    <u>Influencing  a  Witness</u>:   While believing that an official proceeding  or an official investigation is pending or about  to be instituted:

           (a)   Attempting  to  cause  a witness to testify falsely  or  to withhold  any testimony or information or  other  evidence;  or

           (b)   Committing any act prohibited by these rules in retaliation for  anything  done by another person in his capacity as  a witness;  or

           (c)   Soliciting,  accepting or agreeing to accept any benefit in return  for  providing false testimony  or  information  or withholding any testimony or information or other evidence.

200.211 .   <u>Bribery</u>: . Giving, offering or promising anything of value to any correctional staff member with the intent:

(a)  To influence any act within the official responsibility of the officer;  or

(b)  To induce such correctional staff member to do or omit from doing any act in violation of his official duty.

200.212    Falsifying Physical Evidence:    While believing that an official proceeding  or an official investigation is pending or about  to be instituted:

(a)  Altering,  destroying, concealing or removing anything with intent  to impair its authenticity or availability in  such proceeding or investigation.

(b)  Presenting  or using anything knowing it to be false,  with intent to deceive a correctional staff member or anyone who is or will be a member of such proceeding or investigation.

200.213    Lying:    Willfully making a false statement to a Department of Correction staff person with intent to deceive such staff member.

200.214    Escape:    Leaving the confines of the institution  (or from official  custody while beyond the confines of the institution, or failing to return to official custody within the institution following temporary release from the institution) without proper authorization.

200.215    Inciting to Riot:

(a)  Inciting  or urging a group of two or more other inmates to engage in a current or pending riot;  or

(b)  Commanding, directing, instructing or signalling a group of two or more other inmates to cause,  continue or enlarge a riot.

(A "riot" is a disturbance involving an assemblage of three  or  more

persons  which by violent conduct creates a grave danger of damage  or
injury  to property or persons and substantially disrupts  the  normal
functioning  of  the institution through violence.   An inmate  may  be
found guilty of Inciting to Riot even where no riot actually occurs as
a direct or indirect result of his urging.)

200.216      Engaging in a Riot:  Participating in a  riot  which is  in
             existence at the time of his act.   However,  no inmate who  is
             merely  present at the scene of an ongoing riot is guilty of  an
             offense  under  this  section,   provided that he  moves  to  a
             designated area after being directed to by proper authority.

200.217      Giving a False Alarm:   Willfully communicating a false  report
             concerning a fire,  explosion, or other catastrophe or emergency
             where the report is likely to cause the evacuation of a building
             or to cause the correctional staff to respond in alarm.

200.218      Possession  of Dangerous Contraband:   Possession or control  of
             contraband  which by its  nature presents substantial danger  to
             the safety of persons within the institution, such as any deadly
             weapon or explosive device.

200.219      Possession   of   Intoxicant,   Non-Prescribed   Drugs,   or
             Paraphernalia:  Possession or control of intoxicating beverages,
             medication,   or  drugs  not  prescribed by  a  member of  the
             institutional  medical  staff.    Possession of  paraphernalia
             necessary  to administer such substances  shall  constitute  a
             violation of this section.

200.220      Possession of Money and Coin:  Possession of  money,  cash,
             currency or other forms of legal tender.

200.221      Using   Intoxicants or  Non-Prescribed  Drugs:   Use of  any
             intoxicating beverages, medication, or drugs not prescribed by a

member of the institutional medical staff.

200.222    Possession of Staff Clothing: Possession of any article of clothing which is identifiable as part of, or an accessory to, the Department of Correction staff uniform.

200.223    Extortion, Blackmail or Protection: Demanding of, or receiving from, another person money or anything of value in return for protecting that person from others, refraining from committing bodily injury or sexual assault on that person or refraining from reporting to authorities any activity, real or fictitious, of that person.

200.224    Indecent Exposure: Willfully exposing the genitals or buttocks to any person other than another inmate under circumstances in which the conduct is likely to cause affront or alarm.

200.225    o Inmate Demonstrations: (a) Inciting or urging two or more other inmates to engage in a disturbance involving non-violent conduct which substantially disrupts the normal functioning of the institution. (b) Participating in a disturbance involving non-violent conduct which substantially disrupts the normal functioning of the institution.

300    DISCIPLINARY PROCEDURES

300.001    Except as set forth under 300.160 and 300.250 herein, notice and hearing before a Hearing Officer, as set forth in this procedure, shall be provided prior to the imposition of any sanction as defined herein against an inmate for the violation of a rule of this institution.

Procedures following a Minor Offense.

300.110    A minor offense as defined at 200.101 - 200.112 is a rule violation in which the extent of the sanctions to be imposed

shall be restricted to:

(a)  Written reprimand;

(b)  Loss of one or more privileges for a period of time of more than 24 hours but less than 15 days.

300.120    Upon the reasonable belief of an institutional staff member that such an offense has been committed, he may file a written disciplinary report of the incident with the shift supervisor. Such report shall include:

(a)  The specific rule violated.

(b)  The facts surrounding the incident.

(c)  The names of witnesses to the incident, if any.

(d)  The disposition of any evidence involved.

(e)  Any immediate action taken.

(f)  The date and time of the offense.

(g)  The signature of the reporting officer.

300.130    Should a staff member believe an offense may be properly responded to by a verbal reprimand, warning and/or counseling, he may so respond, in which case no disciplinary report need be prepared. A counseling report of this action will be made by the staff member, a copy placed in the inmate's file and a copy given to the inmate. The inmate may prepare a response to counseling reports, which shall be placed with the report in the inmate's file.

300.140    Upon the filing of the disciplinary report alleging commission of a minor offense, the following steps will be undertaken.

Notice

300.141    A copy of the disciplinary report, as a notification of the charges, shall be given to the inmate at least 24 hours prior to

the hearing.

300.142  The notice shall advise the inmate of his rights in the disciplinary process.

Hearing

300.143  All hearings for minor offenses shall be conducted by an impartial hearing officer, who shall not have had a direct involvement with the alleged incident nor shall have had supervisory responsibility over the accused inmate during the six month period immediately preceding the hearing. The hearing officer shall be of a rank no lower than Lieutenant.

300.144  The inmate shall be present at all phases of the hearing, unless his behavior becomes disruptive to the proceedings. Reasons for such exclusion shall be stated in writing.

300.145  The inmate shall be allowed to make a statement and present any reasonable evidence, including written statements from others, in his behalf.

300.146  Unless the Hearing Officer feels additional oral testimony is necessary, his decision may be based on the disciplinary report, the statements of the inmate, and any other relevant written information presented at the hearing.

Record of Findings

300.147  Following the hearing, the Hearing Officer shall state in writing, his findings, the evidence relied on and the sanctions imposed, if any. No sanction shall be executed during the period referred to in 300.150 unless the inmate indicates in writing that he does not intend to appeal. (See explanatory note following 300.245).

Cumulative consecutive sanctions shall not be imposed for a

single act. (See e.g. 300.240.)

300.148    Copy of this report shall be given to the inmate.

Appeal

300.149    The inmate shall be advised of his right to appeal the decision to the Commissioner, Bureau Chief or their designee and shall be provided with an appeal form.

300.150    The appeal form must be completed and given to a shift commander or his assistant within 72 hours of the inmate's receipt of the record of the hearing. FAILURE TO COMPLY WITH THIS TIME LIMIT MAY CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL. The time limit shall run only while the inmate is incarcerated at the institution.

300.151    Upon the filing of the appeal form the Hearing Officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. (See explanatory note following 300.245.)

300.152    All appeals shall be heard by the Commissioner, Bureau Chief or their designee. The appeal decision shall be in writing and should be rendered within 10 days of receipt of the appeal. A copy of the decision shall go to the inmate.

300.153    The official hearing of the appeal may affirm the decision, reverse the decision, or remand the decision back to the Hearing Officer for further proceedings. Sanctions may be reduced, but not increased.

300.160    Notwithstanding any other provision of 300.130 and 300.140 to the contrary, should a shift supervisor, upon reviewing the disciplinary report, determine that an offense may be properly responded to by an immediate revocation of one or more

privileges for a period of time not to exceed twenty-four hours, he may so respond.

300.161    As used in this subsection, the term "privilege" shall not include attendance at educational classes, vocational training sessions, counseling sessions, alcohol/drug rehabilitation programs, regular job assignments or religious services, nor shall it include any right which is secured to an inmate by the Constitution or any law of the United States or the State of Delaware.

## Procedures Following a Major Offense

300.210    A major offense as defined in 200.201 - 200.225 is a rule violation in which a more severe sanction may be imposed than permitted for a minor offense. Sanctions which may be imposed for a major offense shall be restricted to:

(a) Written reprimand.

(b) Loss of one or more privileges for a period of time of more than 24 hours but less than 60 days.

(c) Confinement to assigned quarters for a period of time not to exceed 30 days.

(d) Isolated confinement for a period of time not to exceed 15 days.

(e) Loss of good time for a period of time not to exceed 30 days.

300.211    Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.

300.220    Upon the reasonable belief of an institutional staff member that such an offense has been committed, he shall file a written disciplinary report of the incident with the shift supervisor.

Such report shall include:

(a)  The specific rule violated.

(b)  The facts surrounding the incident.

(c)  The names of the witnesses to the incident, if any.

(d)  The disposition of any evidence involved.

(e)  Any immediate action taken.

(f)  The date and time of the offense.

(g)  The signature of the reporting officer.

300.230   Upon  the reporting of the alleged major offense,  the following steps will be undertaken.

Notice

300.231   A  copy  of the disciplinary report,  as a notification  of  the charges, shall be given to the inmate at least 24 hours prior to a hearing.

300.232   The  notice  shall  advise  the inmate  of  his  rights  in  the disciplinary process.

Pre-hearing detention

300.233   Until  the  hearing,  the  inmate is entitled to remain  in  his existing status,  unless he becomes a sufficient threat to other inmates,  staff  members,  or  himself  to  warrant  pre-hearing detention.

300.234   If pre-hearing detention is ordered by the shift supervisor such order  must be reviewed by the superintendent  or  his  designee within 24 hours.  Failure to do so will return the inmate to his previous status.

300.235   Any  time  spent  in  pre-hearing detention  shall  be  credited against any subsequent sanction imposed.

Hearing

300.236    All hearings for major offenses shall be conducted by an
impartial Hearing Officer, who shall not have had supervisory
responsibility over the accused inmate during the six month
period immediately preceding the hearing. A hearing officer
shall be disqualified to preside over hearings in which he
witnessed the incident in question, was involved in preparation
of the charge, or is otherwise biased against the inmate who is
the subject of the hearing. The hearing officer shall be of a
rank no lower than Lieutenant.

300.237    At the hearing, the inmate shall be entitled to the following:

(a)    An opportunity to be present during all phases of the
hearing, except that he may be excluded during the Hearing
Officer's deliberations and at any time the inmate's
behavior becomes disruptive to the proceedings. Reasons
for such exclusion shall be stated in writing.

(b)    The accused inmate may consult with counsel or counsel
substitute prior to the hearing. At the hearing, an inmate
may be accompanied by a counsel substitute who may be
either a staff member or an approved inmate. The extent to
which counsel substitutes may present an inmate's case at a
disciplinary hearing shall be within the discretion of the
Hearing Officer, taking into consideration such factors as
illiteracy and intelligence of the inmate, the complexity
of the issues under consideration, and any other factors
which may prevent the inmate from making a complete
presentation on his own behalf.

(c)    Copies of any written information which the Hearing Officer

may consider except where disclosure of such information would be unduly hazardous to institutional safety or would endanger the physical safety of an individual; reasons for non-disclosure to be stated in writing. In all other cases where written information is not disclosed, its contents will be summarized for the inmate to the extent this may be done without creating a substantial risk to institutional or personal safety.

(d) An opportunity to make a statement and present documentary evidence.

(e) An opportunity to call witnesses on his behalf unless doing so would be irrelevant, redundant, unduly hazardous to institutional safety or would endanger the physical safety of any individual; such reasons for denial to be stated in writing.

(f) An opportunity to confront and cross-examine his accuser and all adverse witnesses, unless doing so would be unduly hazardous to institutional safety or would endanger the physical safety of the witness; such reasons for denial stated in writing.

300.238   At any time during the hearing, the Hearing Officer may exclude evidence, although relevant, if its evidential value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; such reasons to be stated in writing.

300.239   At any time during the hearing, the Hearing Officer on his own motion, may order an investigation into the incident and continue the hearing at a future time.

## Decision and Record of Finding

300.240    At the conclusion of the hearing the Hearing Officer shall announce the decision and sanction if any. The decision shall be put in writing, and a copy shall be given to the inmate. The imposition of any of the sanctions enumerated in 300.210 above may be suspended and, in lieu thereof, the inmate may be placed upon probation for a period of time not to exceed 90 days. No sanction shall be executed during the period referred to in 300.244 unless the inmate indicates in writing that he does not intend to appeal. (See explanatory note following 300.245.) Cumulative consecutive sanctions shall not be imposed.

(a) Permissible   e.g.:   Inmate swears at and strikes a correctional officer. He may be sanctioned for "Disrespect to a correctional officer" and "Assault on a correctional officer".

(b) Impermissible  e.g.:   Inmate uses profane language to a correctional officer. He may not be given cumulative consecutive sentences for "Abusive language" and "Disrespect to a correctional officer".

300.241    In addition to the written decision and sanction notice, the Hearing Officer shall prepare a written record of the hearing. Such record should be completed within five working days of the hearing and shall contain:

(a) The Hearing Officer's decision.

(b) The sanction imposed.

(c) A summary of the evidence upon which the decision and sanction were based.

(d) A list of all witnesses and a summary of their testimony.

(e)   A statement as to whether the sanction is stayed during an appeal and the reasons for that decision.

(f)   The date and time of the hearing.

(g)   The signature of the Hearing Officer.

300.242   A copy of the written record shall be given to the inmate.

Appeal

300.243   The inmate shall be advised of his right to appeal the decision to the Commissioner, Bureau Chief or their designee and shall be provided with an appeal form.

300.244   The appeal form must be completed and given to a Shift Commander or his assistant within 72 hours of the inmate's receipt of the record of the hearing. FAILURE TO COMPLY WITH THIS TIME LIMIT MAY CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL. The time limit shall run only while the inmate is incarcerated at the institution.

300.245   Upon the filing of the appeal form, the Hearing Officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. EXPLANATORY NOTE:  For both major and minor offenses, the execution of the sanction is automatically stayed for 72 hours immediately following the inmate's receipt of the record unless the inmate indicates, in writing, that he does not intend to appeal. The purpose of the automatic stay is to afford an inmate time to decide if he wishes to appeal. If the inmate files a timely appeal form, 300.147 and 300.240 provide that the hearing officer must stay the execution of the sanction until an appeal decision is rendered. If no appeal form is filed within the stated time period or, if during the stated time period, the inmate

indicates in writing that he does not intend to appeal, the sanction shall be executed.

300.246   All appeals shall be heard by the Commissioner, Bureau Chief, or their designee. The appeal decision shall be in writing and should be rendered within ten days of receipt of the appeal. A copy of the decision shall go to the inmate.

300.247   The official hearing of the appeal may affirm the decision, reverse the decision, or remand the decision back to the Hearing Officer for further proceedings. Sanctions may be reduced, but not increased.

300.250   Notwithstanding any other provision of 300.230 to the contrary, should a Shift Supervisor, upon reviewing the disciplinary report, determine that an offense may be properly responded to by an immediate revocation of one or more privileges for a period of time not to exceed 24 hours, he may so respond.

300.251   As used in 300.250, the term "privilege" shall not include attendance at educational classes, vocational training sessions, counseling sessions, alcohol/drug rehabilitation programs, regular job assignments or religious services. Nor shall it include any right which is secured to an inmate by the Constitution or any law of the United States or the State of Delaware.

Expungement

300.300   If an inmate is found not guilty of an offense, major or minor, all reference to that offense shall be removed from his file, if reasonably possible. Otherwise, the finding of not guilty shall be clearly indicated in his file.

## Procedures Following Criminal Misconduct

300.410      Upon the determination of the shift supervisor or the Hearing Officer that an inmate has committed a criminal offense, the Warden or his designee will be notified without delay. The proper law enforcement authority shall then be notified.

300.420      Any disciplinary hearing for this alleged offense shall be conducted in accordance with 300.236 - 300.237 and the inmate shall be advised that he has the right to remain silent in the hearing and that his silence will not be construed adversely against him at the hearing.

## Procedures Following an Emergency

300.510      In the event of a widespread institutional disruption which requires emergency action, any or all portions of these regulations may be temporarily suspended.

300.520      Any inmate involved in the emergency may be detained without a hearing throughout the course of the emergency.

300.530      Upon the restoration of order, all inmates who were detained shall be accorded all disciplinary procedures as provided by this regulation.



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**MEDIUM-HIGH COUNSELOR'S OFFICE**
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977
TELEPHONE: (302) 653-9261

TO:      New Transfers to Building 22

FROM:    Cindy Atallian
         Counselor – 22

DATE:    July 6, 2006

RE:      Information for Building 22

If you are receiving this memo, you have recently transferred to Building 22. I will be your counselor while you are in this building. I have tried to outline a few areas of which you may have questions or concerns at this time.

- Contacts: You can write to me at any time. When doing so, please include your name, SBI number and cell location. I will respond within two weeks. It is not necessary to write more than once, as I will always respond or see you. If you have questions or concerns that need research, please give me as much information as possible, and I will try to find an answer for you. If you need to be seen, I will schedule time, but I do my contacts right on the tier. If you are not comfortable talking about an issue, feel free to write.

- Phone Sheets: You can mail a phone sheet in to me at any time. However, I will not submit the phone sheet until I have come and seen you personally to be sure that the sheet is legitimately from you. This stops abuse from anyone that might be trying to use another person's numbers. Also, any attorney number listed will be personally contacted by me to confirm that it is an attorney number. At this time, I am able to submit sheets throughout the month, although that could change to the 5th of the month.

- Classifications: Since you just moved to 22, you should have been classified (unless you are coming from building 23). Many people are moved to 22 while waiting for space for another area. If you are a newly sentenced individual, and you just had your initial classification, you should have a yellow sheet showing what security level you are approved for at this time. If it does not say medium high, you are only here waiting for space for another area. If you are classified from some other building, your sending counselor will have prepared a classification. The IBCC will establish when your next review will occur. I cannot arbitrarily reclassify someone when they come to my building, unless one of the following applies:

Information for Building 22
Page Two

- o  You had open charges that have been processed.
- o  You have gone before your Judge, and your sentence has changed to some type of court ordered program (this does not mean that you were already sentenced and just came out of building 21 and now want to go to the program). I could not do that until the review date established by the IBCC.
- o  You were moved for disciplinary reasons and were found not guilty of EVERY charge.
- o  My supervisor approves a classification and advises me of such.

- • Programming:  Currently, I have Peer Relations running in Building 22 and Relationships beginning. If you are interested, check off the box on the attached sheet.
- • Release Planning:  If you have a release in the near future, I will send you a release-planning package prior to your release.

Also attached, you will find a form with certain categories of interest to individuals when they first arrive in 22. Check off as many boxes that apply to you and I will process your requests.

If you have any questions, feel free to write at any time.

TO: _JAMES ST. LOUIS_          SBI: _446578_

DATE: _10 APR 06_

**FROM:**      **MDT Classification Review**

**Re:**         **Routine Classification**

This is to inform you that the Multi-Disciplinary Team (MDT) has classified you
to _MEDIUM N/C_   Security Level.  You will be required to complete your
treatment plan and follow institutional rules.  Negative behavior, excessive write-
ups, or failure to complete your treatment plan will result in a higher security level.
Your individual treatment plan is listed below and your assigned counselor will
monitor your progress.  Direct any questions to your primary counselor.

**NOTE:  This classification is subject to higher review.**

**TREATMENT PLAN**

_MEDIUM HIGH CUSTODY_
_MHU PROGRAMS_

Inmate Signature: _James St. Louis_
Date: _4/10/2006_

Next Review: _4/07_
RA Score: _16_

# LETTER OF APPRECIATION

*is hereby granted to:*

## St Louis, James SBI # 446518

*for outstanding performance and lasting contribution on*

The extra effort and team work that you have shown for the completion of the Thanksgiving Holiday Meal

Granted: November 28, 2003

*Food Service Supervisor*
Harry M. Legates / Robin White

#0014



I.M. James Str. Laws
SBI# 446518 UNIT D/E
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Legal Mail

Legal Mail

Legal Mail

$ 04.60⁰
0004608975    JUL 23 2007
MAILED FROM ZIP CODE 19977

Office of the Clerk
United States District Court
844 N. King Street Lockbox 18
Wilmington Delaware
19801