IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-236-SLR |
| | ) | |
| LT. CHERYL MORRIS, et al, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO**
**PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF**

Defendants hereby oppose Plaintiff's Motion for Injunctive Relief [D.I. 56], and in support thereof, state as follows:

1.  In this prisoner civil rights action, Plaintiff James St. Louis ("Plaintiff") claims that he was terminated from his employment in the kitchen at Delaware Correctional Center ("DCC") in retaliation for complaining about constitutional violations occurring in the kitchen. The Amended Complaint was filed on October 13, 2006. [D.I. 13].

2.  Plaintiff filed a Motion for Injunctive Relief on August 13, 2007. [D.I. 56]. The allegations are not entirely clear, but it seems that Plaintiff is claiming that constitutional violations in the kitchen continue to the present time. Plaintiff appears to assert that, currently, inmate kitchen workers supervise, direct, threaten, verbally abuse, suspend and terminate other inmate kitchen workers.[1] He claims that these practices

---

[1] Plaintiff also references sexual assaults, coercion, extortion and abuse which occurred *prior* to the filing of this lawsuit. As explained herein, the prior alleged incidents do not support a motion for injunctive relief. That is, Plaintiff cannot show that denial of his Motion will result in irreparable harm in connection with incidents that happened in the past.

occur in all areas of prison employment, and in all prisons in the State of Delaware. Plaintiff concludes: "Before an inmate or prison guard is injured or killed or there is a mass riot because of this abuse, which is being talked about, Plaintiff inploys [sic] this court to stop thes [sic] illegal action with an injunction and make our prison system accountable for their actions."

3. Plaintiff has not worked in the kitchen since November 9, 2005. *See* Excerpt from St. Louis transcript attached hereto as Exhibit A.

4. "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989) (*quoting Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir. 1988)). The grant or denial of a motion for injunctive relief is within the sound discretion of the district court. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 (3d Cir.), *cert. denied*, 449 U.S. 1014 (1980).

5. A plaintiff moving for injunctive relief must demonstrate that: 1) he is likely to succeed on the merits; 2) denial will result in irreparable harm; 3) granting the injunction will not result in irreparable harm to the defendant; and 4) granting the injunction is in the public's interest. *Maldonado v . Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998), *cert. denied,* 526 U.S. 1130 (1999). An injunction should issue only where all four factors favor relief. *S&R Corp. v. Jiffy Lube International, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

6. In this case, because Plaintiff cannot satisfy the first two factors, it is not necessary to even reach the third and fourth factors, and his Motion must be denied.

7.     In his Motion for Injunctive Relief, Plaintiff seeks to bring to the Court's attention his allegations of constitutional violations in the kitchen at DCC. However, he fails to mention that he has not worked in the kitchen since November 9, 2005. *See* Exhibit A. Because Plaintiff is not being subjected to the conditions he complains of, he cannot possibly show that he will suffer irreparable harm if his Motion is denied.

8.     Further, Plaintiff cannot succeed on the merits because he is asserting claims on behalf of other inmates.

9.     The courts have consistently held that a prisoner acting *pro se* may not seek relief on behalf of his fellow inmates. *Maldonado v. Terhune,* 28 F. Supp. 2d 284, 288 (D.N.J. 1998) (*citing Caputo v. Fauver,* 800 F. Supp. 168, 170 (D.N.J. 1992)). *See also Jordan v. Delaware,* 433 F. Supp. 2d 433, 439-440 (D. Del. 2006) (plaintiff was precluded from asserting claims on behalf of all other inmates infected with Hepatitis C).

10.    Further, Plaintiff lacks standing to bring claims on behalf of inmates currently working in the DCC kitchen. "The 'core component'" of the requirement that a litigant have standing to invoke the authority of a federal court "is an essential and unchanging part of the case-or-controversy requirement of Article III." *DaimlerChrysler Corp. v. Cuno,* -- U.S. --, 126 S. Ct. 1854, 1861 (2006) (citations omitted). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 750-751 (1984). Because Plaintiff has not, and cannot, claim that he has sustained injury due to current unlawful conduct, he has no standing to pursue his request for injunctive relief.

11.    In addition, Plaintiff has no third party standing in this matter. The Third Circuit has adopted a three part test for determining third party standing. "To

3

successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Nasir v. Morgan,* 350 F.3d 366, 376 (3d Cir. 2003). In this case, Plaintiff has not alleged that he has sustained any injury as the result of the alleged current conditions in the kitchen: he is not working in the kitchen. He has not asserted a "close relationship" with those individuals presently working in the kitchen. Finally, he has not set forth any obstacles that would prevent the inmates working in the kitchen from pursuing their own claims. Thus, Plaintiff lacks third-party standing in this matter and cannot pursue claims on behalf of other inmates. *See Wilson v. Taylor,* 466 F. Supp. 2d 567, 573-574 (D. Del. 2006) (plaintiffs lacked standing to pursue excessive force and failure to protect claim on behalf of another inmate).

   12. In short, Plaintiff could not succeed on the merits of the claims set forth in his Motion for Injunctive Relief because he is barred from pursuing claims on behalf of other inmates. Thus, Plaintiff is not entitled to injunctive relief, and his Motion must be denied.

   WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion for Injunctive Relief.

                                            **STATE OF DELAWARE**
                                            **DEPARTMENT OF JUSTICE**

                                            /s/ Eileen Kelly
                                            Eileen Kelly, I.D. No. 2884
                                            Deputy Attorney General
                                            Carvel State Office Building
                                            820 North French Street, 6th fl.
                                            Wilmington, DE  19801
                                            (302) 577-8400
                                            eileen.kelly@state.de.us
                                            Attorney for Defendants

Date:  August 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2007, I electronically filed *Defendants' Response to Plaintiff's Motion for Injunctive Relief* with the Clerk of Court using CM/ECF. I hereby certify that on August 21, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: James St. Louis.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us

# EXHIBIT A

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES ST. LOUIS,                )
                                )
        Plaintiff,              )
                                )   Civil Action No.
v.                              )   06-236-SLR
                                )
LT. CHERYL MORRIS, et al,       )
                                )
        Defendants.             )

     Deposition of JAMES ST. LOUIS taken pursuant to notice at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware, beginning at 10:00 a.m. on Wednesday, August 10, 2007, before Robert Wayne Wilcox, Jr., Registered Professional Reporter and Notary Public.

APPEARANCES:

    JAMES ST. LOUIS (pro se)
    SBI# 446518
      Delaware Correctional Center
      1181 Paddock Road
      Smyrna, Delaware  19977
      for himself,

    EILEEN KELLY, ESQ.
    STATE OF DELAWARE DEPARTMENT OF JUSTICE
      820 North French Street - 6th Floor
      Wilmington, Delaware  19801
      for the Defendants.

CORBETT & WILCOX
230 North Market Street - Wilmington, Delaware 19801
(302) 571-0510

Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

## Page 6

1   A. 6/13/51.
2   Q. Where were you born?
3   A. Carthage, New York.
4   Q. Prior to your incarceration where were you
5   living?
6   A. Laurel, Delaware.
7   Q. How long did you live there?
8   A. Almost six years. Maybe seven years.
9   Q. What's your highest level of education?
10  A. Second year of college.
11  Q. What college was that?
12  A. University of Dubuque, Iowa.
13  Q. So you lived in Iowa, in Delaware.
14      Any other states?
15  A. I grew up and lived in New York and went to
16  college in Iowa.
17  Q. Okay. Any other states that you've lived in?
18  A. No.
19  Q. Are you currently married?
20  A. No.
21  Q. What was your last employment prior to your
22  incarceration?
23  A. New Rivers Construction Company.
24  Q. What were you doing for them?

## Page 7

1   A. I was one of four maintenance. I was
2   classified as maintenance, but we were doing construction
3   work upgrading power plants in the State of Delaware.
4   Q. How long did you have that job?
5   A. Not quite a year, I guess.
6   Q. Since you left college, what other kinds of
7   jobs have you had?
8   A. Since I left college?
9   Q. Mm-hmm.
10  A. I sold furniture, I think, for about 12 years,
11  and then I worked for my father, who owned a monument
12  company, for close to 14 years.
13  Q. Anything else?
14  A. I was self-employed. I ran a donut shop and
15  an arcade.
16  Q. Now, this case concerns or addresses
17  employment that you had in the prison kitchen. Is that
18  right?
19  A. Yes, ma'am.
20  Q. When did you start working in the kitchen?
21  A. I believe it was in 2001, I think. It was
22  either 2001 or 2002.
23  Q. When you started working in the kitchen, what
24  was your job title, if you had one?

## Page 8

1   A. I started in the tray room, t-r-a-y room.
2   Q. What's that?
3   A. What did you say?
4   Q. Oh, I'm sorry.
5       What's the tray room?
6   A. Tray room is where the inmates, after they're
7   done their meals -- they return the trays and we run them
8   through the cleaning machines.
9   Q. How long did you do that?
10  A. I don't know. Five, maybe six months.
11  Q. Then after that you continued to work in the
12  kitchen?
13  A. Yes.
14  Q. What did you do next?
15  A. I went to sanitation department.
16  Q. What did that involve?
17  A. Cleaning and trying to keep everything to
18  code.
19  Q. Cold?
20  A. Code, c-o-d-e.
21  Q. Oh, code.
22      C-o-d-e?
23  A. (The witness indicated.)
24  Q. Okay. Sorry.

## Page 9

1       About how long did you do that?
2   A. Not quite a year, I guess.
3   Q. What did you do next in the kitchen?
4   A. I went to be a line server, serving food to
5   the inmates. And I only did that for a couple months. I
6   was promoted to third cook.
7   Q. Do you remember when you became third cook?
8   A. I'd have to look it up exactly.
9   Q. Okay.
10  A. It's in my discovery papers, though.
11  Q. Okay. What does a third cook do?
12  A. Third cook prepares the meals.
13  Q. At some point were you promoted from third
14  cook to something else?
15  A. Second cook. Yes.
16  Q. Do you remember about when that happened?
17  A. I'm not sure the exact date. Again, it's in
18  the discovery package.
19  Q. When did your employment in the kitchen end?
20  A. November 9th, 2005.
21  Q. Since you stopped working in the kitchen, have
22  you had any other employment here?
23  A. No, ma'am.
24  Q. Why is that?