IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES ST. LOUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-236-SLR |
| | ) | |
| LT. CHERYL MORRIS, et al, | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO SEVER**

Defendants hereby oppose Plaintiff's Motion to Sever [D.I. 57], and in support thereof, state as follows:

1. In this prisoner civil rights action, Plaintiff James St. Louis ("Plaintiff") claims that he was terminated from his employment in the kitchen at Delaware Correctional Center ("DCC") in retaliation for complaining about constitutional violations occurring in the kitchen. The Amended Complaint was filed on October 13, 2006. [D.I. 13].

2. On August 1, 2007, Defendants moved to stay this action as to Defendant Andre Johnson ("Johnson") on the basis that Johnson has been deployed to active military service in Iraq. [D.I. 45]. Defendants sought to stay discovery as to Johnson and requested that the trial not be scheduled until Johnson returns to the United States from Iraq. It is anticipated that Johnson will be in active military service for at least year from his date of deployment, June 15, 2007.

3. Plaintiff responded to Defendants' Motion to Stay by filing a Motion to Sever Johnson from the case. [D.I. 57]. In short, Plaintiff requests that the Court proceed to trial of this matter without Johnson and then hold a separate trial with Johnson when he returns to the United States.

4. Rule 21 of the Federal Rules of Civil Procedure addresses the issue of severance of parties:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

A motion to sever pursuant to Rule 21 necessarily requires the court to consider whether the party is indispensable to the litigation. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 119 (1968). *See also Dental Benefits Management, Inc. v. Capri,* 153 B.R. 26, 28 (E.D. Pa. 1992) (severing bankrupt defendant was proper if bankrupt defendant was not an indispensable party).

5. Courts further consider the following factors when deciding whether a claim should be severed: 1) whether the claims arise out of the same transaction or occurrence; 2) whether the claims present some common questions of law or fact; 3) whether settlement of the claims or judicial economy would be facilitated; 4) whether prejudice would be avoided if severance were granted; and 5) whether different witnesses and documentary proof are required for separate claims. *See Thompson v. Ingalls Shipbuilding,* 2006 WL 2385324 (S.D. Miss. Aug. 17, 2006) (attached hereto as Exhibit A); *Cestone v. General Cigar Holdings, Inc.,* 2002 WL 424654, at *2 (S.D.N.Y. March 18, 2002) (attached hereto as Exhibit B).

6. In this case, all relevant factors compel the conclusion that Plaintiff's Motion to Sever must be denied.

7. This case concerns a series of inter-related incidents which took place in the kitchen at DCC. Plaintiff and the Defendants all worked in or around the kitchen. Plaintiff alleges that he informed the Defendants of various constitutional violations and they either ignored him or retaliated against him. With respect to Johnson, Plaintiff claims that he brought certain improper activities by another inmate to Johnson's attention. D.I. 13 at page 2. He also claims that Johnson has information pertaining to the circumstances of his termination from his employment in the kitchen. *See* Excerpt from St. Louis Transcript attached hereto as Exhibit C at 53.

8. Plaintiff's claims against Johnson are inextricably intertwined with his claims against the other Defendants. That is, the claims against Johnson, and the claims against the other Defendants, all arise from the same transaction. Thus, Johnson is an indispensable party in the trial of this matter. In addition, the claims present common questions of law and fact: Did Defendants' conduct constitute retaliation? A trial involving Johnson, and a trial involving the other Defendants, would involve the same witnesses and evidence. Defendants would be prejudiced if they were forced to try the same case twice in terms of the duplication of effort and the waste of time and resources. There would also be the risk of inconsistent outcomes. Further, trying the same case twice would not advance the interests of judicial economy.

9. In these circumstances, Plaintiff's claims against Johnson should not be severed from his claims against the other Defendants. As requested in Defendants'

3

Motion to Stay, the trial of this matter should go forward as to all Defendants upon Johnson's return to the United States from Iraq.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's Motion to Sever.

                                          **STATE OF DELAWARE**
                                          **DEPARTMENT OF JUSTICE**

                                          /s/ Eileen Kelly
                                          Eileen Kelly, I.D. No. 2884
                                          Deputy Attorney General
                                          Carvel State Office Building
                                          820 North French Street, 6th fl.
                                          Wilmington, DE  19801
                                          (302) 577-8400
                                          eileen.kelly@state.de.us
                                          Attorney for Defendants

Date:  August 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2007, I electronically filed *Defendants' Response to Plaintiff's Motion to Sever* with the Clerk of Court using CM/ECF. I hereby certify that on August 21, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: James St. Louis.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us

# EXHIBIT A

Westlaw.

Slip Copy                                                                                                          Page 1

Slip Copy, 2006 WL 2385324 (S.D.Miss.)
(Cite as: Slip Copy)

**H**
Thompson v. Ingalls Shipbuilding
S.D.Miss.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D.
Mississippi,Southern Division.
Brian THOMPSON, et al., Plaintiffs
v.
INGALLS SHIPBUILDING, et al., Defendants.
**Civil Action No. 1:01CV111-LG-RHW.**

Aug. 17, 2006.

Denise Hulett, Elizabeth Kristen, Lewis L. Bossing, Patricia A. Shiu, The Legal Aid Society, San Francisco, CA, L. Nicole Clinkscales, Abbott, Simses & Kuchler, Ranie T. Thompson, ACLU of Mississippi, Jackson, MS, Mildred Juanita Lesure, North Mississippi Rural Legal Services, Holly Springs, MS, for Plaintiffs.

***ORDER REQUIRING SEPARATE COMPLAINTS***
ROBERT H. WALKER, Magistrate Judge.
*1 Before the Court is Plaintiffs' complaint filed on March 21, 2001. There are 81 individual Plaintiffs who remain joined in this cause of action, some of whom are proceeding pro se. The Plaintiffs allege that the Defendant, their employer, discriminated against them based upon race and maintained a racially hostile work environment. Plaintiffs' initial efforts to certify a class action were denied both by this Court and by the Fifth Circuit.

On May 22, 2006, the Court conducted a status conference to discuss pending discovery matters. At the conference, the Court announced its intention to sever the Plaintiffs' claims into individual causes of action. On June 30, 2006, the Court entered a[330] Show Cause Order inviting the parties to raise any objections to severance. Plaintiffs object to the severance arguing that their due process rights were denied by the Court's actions. Plaintiffs further argue that severance should not be done sua sponte but only pursuant to a motion to sever. Plaintiffs also assert that under Fed.R.Civ.P. 20 and 21, their claims should not be severed because Plaintiffs have alleged a pattern or practice of racial discrimination and maintenance of hostile work environment throughout the place of employment.

Plaintiffs argument that they have been denied notice and an opportunity to be heard on the issue of severance is frivolous. Out of concern for Plaintiffs' due process rights, the Court entered the Show Cause Order precisely to afford Plaintiffs notice and an opportunity to be heard. Moreover, the Court does not agree with Plaintiffs' assertion that an order of severance may be entered only pursuant to a motion to sever. Nevertheless, Defendant has remedied this alleged technical deficiency by filing a motion to sever in conjunction with its response to Plaintiffs' objections to severance.

Turning now to the substance of Rule 20 and 21 analysis, the Court finds that the Plaintiffs' claims should be severed. Generally, permissive joinder of plaintiffs under Fed.R.Civ.P. 20 is at the option of the plaintiffs, assuming that they meet the requirements set forth in Rule 20. *Applewhite v. Reichhold Chemicals,* 67 F.3d 571, 574 (5th Cir.1995). Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice. *Id.* The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Alexander v. Fulton County,* 207 F.3d 1303, 1322 (11th Cir.2000)(en banc). The Supreme Court has instructed lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2
Slip Copy, 2006 WL 2385324 (S.D.Miss.)
(Cite as: Slip Copy)

A party seeking joinder of claimants under Rule 20 must establish (1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined. *See* Fed.R.Civ.P. 20(a). The Court may consider the following factors when deciding whether claims should be severed pursuant to Rule 21:(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims. *See Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (S.D.N.Y.1999).

*2 In the context of employment discrimination, courts generally have shown a favorable disposition to permissive joinder of plaintiffs' claims. *See Alexander*, 207 F.3d at 1322; *Mosley v. Gen'l Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir.1974). In *Mosley*, for example, the Eighth Circuit held that the district court abused its discretion when it severed the joined actions of ten plaintiffs alleging race-based employment discrimination. 497 F.2d 1330. On the other hand, joinder has been denied in cases where the prejudicial effects of other witnesses' alleged discriminatory experiences outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, involves different supervisors making the challenged decisions, or the alleged discrimination happens at geographically removed places. *See Alexander*, 207 F.3d at 1324 (citing cases where joinder has been denied).

On February 28, 2002, this Court found that individual questions predominated over common questions and denied Plaintiffs' attempt to certify class. As stated by the Fifth Circuit in *Allison v. Citgo Petroleum Corp.*, "[t]he recovery of compensatory and punitive damages in Title VII cases requires individualized and independent proof of injury to, and a means by which discrimination was inflicted upon, each class member." 151 F.3d 402, 419 (5th Cir.1998). Although Plaintiffs argue that there is an overall pattern and practice of discrimination at the shipyard, allegations of pattern and practice do not state an independent cause of action. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir.2001). At the heart of each Plaintiff's claims, are individualized allegations of discrimination in the workplace, such as denied promotions or less desirable work assignments. *See Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324-25 (D.C.Ohio 2002) (finding joinder improper where plaintiffs alleged race-based discrimination when denied promotions); *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 516 (N.D.Ill.2000); *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 522-23 (N.D.Okla.1970) (finding joinder improper despite plaintiffs' allegations of company-wide discriminatory practices).

Defendant has presented evidence to demonstrate that the shipyard is a vast facility, occupying 789 acres, and spanning several different locations. The Plaintiffs in this lawsuit work in more than 20 different departments, sought promotions or challenge promotion decisions in different physical locations in the shipyard, and challenge promotion decisions made by numerous different decision-makers. Furthermore, the Plaintiffs' experiences of discrimination and/or a hostile work environment, as recounted in their discovery responses and depositions, vary greatly from individual to individual. The very determination of whether an individual was subjected to a hostile work environment contains a subjective, as well as an objective, element. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

*3 The Court has been involved in numerous discovery disputes that have erupted periodically during this litigation. These discovery disputes often have centered on the particularized proof that will be necessary for individual Plaintiffs to prove their allegations of discrimination. The Court finds that each Plaintiff has a highly individualized claim of race-based discrimination, certainly with respect to matters such as denied promotions, and that each Plaintiff's claims for damages will be highly individualized as well. Given the separate and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 3

Slip Copy, 2006 WL 2385324 (S.D.Miss.)
**(Cite as: Slip Copy)**

distinct claims of discrimination and the individualized proof necessary to support each claim, the Court finds that joining the Plaintiffs is more likely to confuse the jury and that severance would avoid undue prejudice. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296-97 (9th Cir.2000); *Delce v. Amtrak and Resco Holdings, Inc.,* 180 F.R.D. 316, 319 (E.D.Tex.1998); *Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1062 (S.D.Tex.1996). Most, if not all, of the central claims of discrimination will require different witnesses and documentary proof. Although severing the claims will result in a greater number of trials, severance will allow the Court to better manage and resolve the individual claims of Plaintiffs.

In order to manage these cases in an effective and economical manner, the Court finds that the claims of the individual Plaintiffs should be severed into separate causes of action, each requiring a separate complaint. The Court will direct the clerk of the court to assign a separate case number for each of the Plaintiffs still remaining in the lawsuit and will require each Plaintiff to file a separate complaint setting forth specific factual allegations in support of his or her claim.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion to Sever is GRANTED:
(1) All Plaintiffs' claims in civil action no. 1:01cv 111-LG-RHW shall be severed into individual actions, one for each named Plaintiff.
(2) The Clerk shall copy the pleadings and exhibits from 1:01cv 111-LG-RHW, which shall then be included as part of the record for each severed case. Exhibits to filings are part of the record but may not be accessible electronically. All pleadings and exhibits filed prior to the entry of this Order of severance shall be maintained in the closed court file for the case of *Thompson, et al v. Ingalls Shipbuilding, et al,* 1:01cv111. Each of the previous filings will be deemed filed in the new cases as of the dates shown on the docket sheet for civil action no. 1:01cv111.
(3) The Clerk shall assign individual civil action numbers to each of the severed cases.
(4) Pending motions in the captioned cause are terminated by this order and shall be resubmitted as necessary, in each new case.
(5) Within thirty (30) days of this Order, each Plaintiff shall file a separate complaint setting forth specific factual allegations regarding his or her claims of discrimination; however, the Plaintiffs will not be required to pay any additional filing fees.
*4 (6) The current case shall be closed upon the individual cases being severed and replaced by the new filings.
(7) All pre-discovery disclosure of case information or other cooperative discovery devices provided for by the Uniform Local Rules of the United States District Courts of Mississippi 26.1(A) and Federal Rules of Civil Procedure 26(a)(1) which have not been previously furnished by the parties shall be disclosed pursuant to said rules. The newly-assigned case number shall be placed upon the present complaint and other documents, and they shall serve as the original documents in each severed action. In the event that the court finds that common questions of law or fact exist in separate cases, the court may then order that those cases be consolidated as provided in Fed.R.Civ.P. 42(a).
(8) All scheduling order deadlines in effect in civil action no. 1:01cv111-LG-RHW shall carry over to the severed cases and remain in effect.
(9) All severed cases shall remain assigned to United States District Judge Louis Guirola, Jr. and United States Magistrate Judge Robert H. Walker.

SO ORDERED, this the 17th day of August, 2006.

S.D.Miss.,2006.
Thompson v. Ingalls Shipbuilding
Slip Copy, 2006 WL 2385324 (S.D.Miss.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B



Not Reported in F.Supp.2d                                                                                                                                Page 1

Not Reported in F.Supp.2d, 2002 WL 424654 (S.D.N.Y.), 88 Fair Empl.Prac.Cas. (BNA) 1155
**(Cite as: Not Reported in F.Supp.2d)**

C
Cestone v. General Cigar Holdings, Inc.
S.D.N.Y.,2002.

United States District Court, S.D. New York.
Lorraine CESTONE and Alecia Hansen, Plaintiffs,
v.
GENERAL CIGAR HOLDINGS, INC., John Rano and Stephen C. Rexford, Defendants.
**No. 00CIV3686RCCDF.**

March 18, 2002.

Memorandum Order
CASEY, D.J.
*1 Plaintiffs Lorraine Cestone ("Cestone") and Alecia Hansen ("Hansen") bring this action against Defendants General Cigar Holdings, Inc. ("General Cigar"), John Rano ("Rano") and Stephen Rexford ("Rexford") (collectively "Defendants") alleging hostile work environment sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, 8-502. Defendants Rano and Rexford now move the Court for an order severing Plaintiffs' claims, or in the alternative, separating their trials. For the reasons explained below, Defendants' motion is granted and the Plaintiffs' claims will be severed.

I. Background

Defendant General Cigar has Executive Offices in Manhattan, its Corporate Headquarters are in Connecticut and it operates a cigar bar, Club Macanudo, in Manhattan. Plaintiffs Cestone and Hansen and Defendants Rano and Rexford were all employed by Defendant General Cigar at the time the alleged events occurred. The two Plaintiffs did not work at the same location and did not know each other or of each other's claims while they were employed by General Cigar. Defendants submit that Plaintiffs' claims are unrelated, do not arise from the same transaction or occurrence, do not involve the same questions of law and fact and that Defendants will be prejudiced if they are tried together.

A. Plaintiff Cestone

Cestone began working as a hostess at Club Macanudo in September 1997. She earned promotions throughout her tenure and was the General Manager at the time she was terminated in May 2000. Cestone claims that on approximately twenty separate occasions, from June 1998 until July 1999, Defendant Rano, the Senior Vice President of Sales, who was based in the Connecticut office, subjected her to sexually inappropriate remarks and conduct at Club Macanudo. Second Amended Complaint ¶ 11. Specifically she alleges that on numerous occasions Rano tried to force his tongue into her mouth, made comments about her underwear and body, asked her if she liked to be spanked during sex and asked if he could spank her. *Id.* General Cigar terminated Rano on or about July 2, 1999 as of result of unrelated sexual harassment allegations. The Chief Executive Officer of General Cigar came to see Cestone in July 1999 to apologize for Rano's behavior and to assure her such conduct would not happen again. *Id.* at ¶ 15.

Additionally, Cestone claims that Defendant Rexford, the Senior Vice President for Human Resources, who worked at both the Connecticut and Manhattan offices, subjected her to sexually inappropriate conduct at Club Macanudo on August 25, 1999. Rexford allegedly went to see Cestone to discuss the Rano situation. *Id.* at ¶ 17. He suggested that Cestone had done the right thing by not reporting the Rano harassment and claimed Rano could not be blamed because Cestone was a " beautiful girl" with a "hot body." *Id.* ¶¶ 17-20;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2

Not Reported in F.Supp.2d, 2002 WL 424654 (S.D.N.Y.), 88 Fair Empl.Prac.Cas. (BNA) 1155
**(Cite as: Not Reported in F.Supp.2d)**

Jan. 30, 2001 Cestone Dep. at 163-176, Gnudi Cert. Ex. C. Rexford stopped working for General Cigar on or about October 16, 1999.

*2 With respect to Defendant General Cigar, Cestone claims that she never received an employee manual, was not aware of a sexual harassment policy at General Cigar and was afraid of complaining about unwelcome conduct. Feb 14, 2001 Cestone Dep. at 664, Gnudi Cert. Ex. B. Further, she claims that General Cigar tolerated the individual Defendants' unwelcome conduct towards female employees. Second Amended Complaint ¶ 13, 21. Finally, Cestone claims that after she filed an EEOC charge, General Cigar retaliated against her and terminated her for "poor performance" and alleged national origin discrimination.

### B. Plaintiff Hansen

Hansen served as an Executive Legal Assistant at General Cigar's Executive Offices in Manhattan from June 1977 until February 2000. She claims that Rexford subjected her to several instances of sexually inappropriate conduct at General Cigar's Executive Offices from March 1998 until October 1999. Second Amended Complaint ¶ 29. For example, when she passed him in the office hallways he would stare at her breasts and legs and touch his genitals, he made several sexual innuendos and asked her out for lunch and drinks. *Id.* Hansen reported Rexford's behavior to General Cigar's highest ranking female executive, Janet Krajewski. Ms. Krajewski allegedly told Hansen that she had been subjected to similar unwanted conduct by Rexford. *Id.* at ¶ 31. Management of General Cigar eventually spoke to Rexford, but Hansen's boss, former General Counsel A. Ross Wollen, allegedly told her that the company had not conducted an investigation into her claims. *Id.* at ¶ 35. Hansen claims she was retaliated against when she was temporarily assigned to work as a receptionist after she filed an EEOC complaint. *Id.* at ¶ 36.

### II. Discussion

Rule 21 of the Federal Rules of Civil Procedure states, in part: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." Rule 42(b) states: "The Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ...." Severance and separation of trials must be distinguished in that " [s]eparate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." *Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d 556, 580 (E.D.N.Y.1999) (quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2387).

The trial court has broad discretion in deciding whether to sever claims or grant separate trials and it is to contemplate the same factors under either inquiry. *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1082 (2d Cir.1988); *Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d at 580; *Fong v. Rego Park Nursing Home,* 1996 WL 468660, at *2 (E.D.N.Y. Aug. 7, 1996); *German v. Fed. Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1400 (S.D.N.Y.1995). The Court considers: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact, (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d at 580; *Lewis v. Triborough Bridge & Tunnel Auth.,* No. 97 Civ. 0607(PKL), 2000 WL 423517, at * 2 (S.D.N.Y. April 19, 2000). "Severance requires the presence of only one of these conditions." *Lewis,* 2000 WL 423517 at *2 (citing *Ricciuti v. New York City Transit,* 796 F.Supp. 84, 86 (S.D.N.Y.1992)).

*3 The Court finds that all the factors outlined above weigh in favor of severing the claims. Plaintiffs both bring claims alleging they were subjected to sexual harassment by employees of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00236-SLR   Document 62-3   Filed 08/21/2007   Page 4 of 4   Page 4 of 4

Not Reported in F.Supp.2d                                                         Page 3

Not Reported in F.Supp.2d, 2002 WL 424654 (S.D.N.Y.), 88 Fair Empl.Prac.Cas. (BNA) 1155
(Cite as: Not Reported in F.Supp.2d)

Defendant General Cigar. However, Plaintiffs did not work at the same location or with the same people, they were employed in entirely different capacities, they did not know each other prior to meeting at their depositions and they did not know of each other's claims prior to a newspaper article describing Cestone's complaints. *Morris v. Northrop Grumman Corp,* 37 F.Supp.2d at 581 (granting separate trials where plaintiffs worked in separate departments under separate supervisors); *cf. Lewis,* 2000 WL 423517 at *3 (declining to order separate trials where plaintiffs worked at same location, in same capacity and alleged that same supervisor "aided and abetted" unlawful discrimination). Their claims arise out of separate incidents by separate actors. *Morris v. Northrop Grumman Corp,* 37 F.Supp.2d at 581 (granting separate trials and noting "there is no evidence that the [plainitffs'] claims are related in any respect other than the fact that they both worked for the same company and they are both based on race discrimination").

Moreover, because Plaintiff Cestone has claims against both Rano and Rexford and Hansen has a separate and distinct claim against Rexford only, "[t]he potential inferences or conclusions that the jury may draw from the different claims and the strength of the respective cases could unfairly prejudice the defendants, and perhaps one of the plaintiffs." *Morris v. Northrop Grumman Corp.,* 37 F.Supp.2d at 581; *see also M. Ropfogel v. Wise,* 112 F.R.D. 414, 416 (S.D.N.Y.1986) (explaining separate trials are warranted where there is a real danger of admitting evidence that is admissible against one of the parties but not against the other and that could unfairly influence the jury's conclusions). Plaintiffs could not use evidence of each other's alleged claims in support of their own since hearsay or harassment of which they were unaware cannot support a hostile work environment claim. *Leibowitz v. New York City Transit Authority,* 252 F.3d 179, 182 (2d Cir.2001); *cf. Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997) (noting remarks made outside plaintiff's presence, of which plaintiff is aware, may be relevant to hostile work environment claim). Further, separate trials will serve the interests of judicial efficiency. Two shorter trials will be more efficient and less expensive than one long, combined trial in which the Court must constantly caution the jury to not consider evidence that is irrelevant or inadmissable against a particular Defendant.

Finally, Plaintiffs will need separate documentary evidence and witnesses to prove their claims. For example, Cestone would have to call her colleagues at Club Macanudo and the Chief Executive Officer to substantiate her claims. Hansen has no need for these witnesses and instead would have to call colleagues at the Executive Offices, who have no knowledge of Cestone's distinct claims. Accordingly, Defendants' motion to sever the Plaintiffs' claims is granted. Discovery will remain consolidated for Magistrate Judge Freeman's supervision. The parties are directed to inform the Court of the status of the cases within 30 days of this order.

### III. Conclusion

*4 For the reasons explained above, the Defendants' motion is granted and Cestone's and Hansen's claims are severed.

So ordered.

S.D.N.Y.,2002.
Cestone v. General Cigar Holdings, Inc.
Not Reported in F.Supp.2d, 2002 WL 424654 (S.D.N.Y.), 88 Fair Empl.Prac.Cas. (BNA) 1155

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES ST. LOUIS,            )
                            )
        Plaintiff,          )
                            )  Civil Action No.
v.                          )  06-236-SLR
                            )
LT. CHERYL MORRIS, et al,   )
                            )
        Defendants.         )

     Deposition of JAMES ST. LOUIS taken pursuant to notice at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware, beginning at 10:00 a.m. on Wednesday, August 10, 2007, before Robert Wayne Wilcox, Jr., Registered Professional Reporter and Notary Public.

APPEARANCES:

     JAMES ST. LOUIS (pro se)
     SBI# 446518
       Delaware Correctional Center
       1181 Paddock Road
       Smyrna, Delaware  19977
       for himself,

     EILEEN KELLY, ESQ.
     STATE OF DELAWARE DEPARTMENT OF JUSTICE
       820 North French Street - 6th Floor
       Wilmington, Delaware  19801
       for the Defendants.

CORBETT & WILCOX
230 North Market Street - Wilmington, Delaware 19801
(302) 571-0510

Corbett & Wilcox is not affiliated
with Wilcox & Fetzer, Court Reporters

14 (Pages 50 to 53)

### Page 50

1. hey, look, if you need someone to spout with or to talk
2. to or relieve the pressure, whatever, my door is always
3. open. Come in and talk to me. And I did. I kept
4. telling him everything that was going on and I kept
5. asking him, "Can you please do something? Can you take
6. care of this? Can you go over her head? Can you get
7. this taken care of? You know it's illegal. I know it's
8. illegal."
9.     He said he didn't want to get involved
10. in it. But what he would advise me: As soon as I got my
11. case overturned, to go to the highest person in the
12. Department of Corrections and spill the beans on
13. Lieutenant Morris and tell them every single thing that's
14. going on, because he would back it all up then.
15.     As far as him going to somebody, he said
16. he has to work there. And he wasn't going to get in the
17. middle and be an officer dubbed an insider, you know,
18. turning on another officer. He says he couldn't do that.
19.   Q. And you had multiple conversations along those
20. lines with Legates?
21.   A. Oh, we talked -- every couple of days we would
22. talk about problems that were going on and how to address
23. them and what to do, hoping that he would step up and go
24. to somebody in authority to get it taken care of. But he

### Page 51

1. never did.
2.   Q. All right. Let's talk about the incident that
3. led to you being fired from the kitchen. Just tell me
4. what happened.
5.   A. Okay. I was -- I had a day off -- okay.
6. Let's -- I'm going to step back. Thanksgiving meal is a
7. special meal for everybody. We break out turkey, even
8. though it's not real turkey. It's compressed turkey.
9. But it's a big meal. And the institution -- the guys
10. really enjoy it. We put a lot of work into it.
11.     Prior to that we've always gotten on
12. special meals a special bonus meal for the cooks and the
13. kitchen for doing such a good job. The institution, as
14. far as the kitchen institution part of it, would reward
15. us with a special meal.
16.     We had asked, because we had such a --
17. I'm not going to say "we." Mr. Govan and Mr. Greenwell,
18. the two cooks, the first cook and the second cook, both
19. had gone to, I believe, Mr. Klein and had asked him,
20. because we had such an abundance of bread crumbs, that
21. could we have some bread pudding as our -- in our special
22. meal, because the guys really like it. And he, I guess,
23. had acknowledged to them, which Mr. Greenwell
24. acknowledged to me, that he had said, yes, we could,

### Page 52

1. along with this special meal that we could have.
2.     Through talking with Ms. Boring, I had
3. told her about the special meal that we were going to
4. have along with bread pudding. And she said, oh, that
5. bread pudding my grandmother used to make, but the way
6. she used to make it was she used to always put raisins in
7. it. She said, you know, could we put raisins in it?
8.     I said -- I told her -- I said, look,
9. raisins are something that would have to be okayed by the
10. institution, because it's not something we get ordered
11. in. It's contraband. Okay. It's considered contraband.
12. So it would have to be approved. Okay. And personally,
13. I don't like raisins. I'm allergic to them. But she
14. says, well, you can make some without raisins. I said,
15. yes, I could. If it's all okay, we can do that.
16.     So that was a couple weeks prior to
17. Thanksgiving. After we got done Thanksgiving, they were
18. talking about having our special meal. We had extra
19. spaghetti sauce that was left over from a meal. We
20. freeze it. We had 200 extra chicken patties left over
21. from a meal. We freeze it. They can stay frozen for a
22. certain amount of days. Then we have to throw them away.
23.     I had asked the Zone I officer,
24. Mr. Johnson, if it would be all right, because it had to

### Page 53

1. be thrown away within a couple days, if we could have
2. these chicken patties with sauce poured over them and
3. some cheese for a meal before I threw them away. And I
4. got an okay; that it was all right, because they were
5. going to be tossed away. I also asked if it was all
6. right to do the bread pudding, and he said, "Fine."
7.     Now, Ms. Boring wanted the raisins in
8. it, and I told her -- now, I went to her after I had
9. talked to Mr. Johnson, because he was the Zone I officer
10. that okayed this. And I never said anything to
11. Mr. Johnson about raisins. But what I did was I came
12. back to Ms. Boring, because she had already said, no,
13. matter what happens, she was going to e-mail Chris Klein
14. and get his approval for the raisins. So I went to
15. Ms. Boring and told her that the meal has been all
16. okayed; go ahead and e-mail Chris Klein.
17.     The next day was my day off. I get
18. called in saying that there's a problem; that I had told
19. Ms. Boring that the raisins had been okayed by Chris
20. Klein, which I never did. I told her the whole meal had
21. been okayed, which it was, and that she had to e-mail
22. Klein to get the approval on the raisins.
23.     The next day -- two days later was my
24. first day to come back to work. I came back to work.