## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

JAMES ST.LOUIS,

      PLAINTIFF,

      V

LT. CHERYL MORRIS et, al.,

      DEFENDANTS

C.A.06-236-SLR

JURY TRIAL REQUESTED.

*******************************************************************************

# ANSWER BRIEF IN OPPOSITION TO DEFENDANTS MOTION
# FOR SUMMARY JUDGEMENT

*******************************************************************************

    Plaintiff hereby opposes Defendant's Motion for Summary Judgment dated October 12, 2007; and in support of, states the following:

### BACKGROUND

    Plaintiff is a person of average intelligence. He has made a lot of mistakes and offers an apology to this Court and thanks it for it's' patience and understanding of his lack of legal knowledge. The initial complaint was dismissed as 'frivolous' and petitioner did move the court to grant Plaintiff leave to amend and reconsider Plaintiff's complaint. The Court did realize his effort and accepted his claim as an act of retaliation. Plaintiff's Amended Complaint is against these seven(7) Defendants:

1. **CHERYL MORRIS**
2. **CHRIS KLEIN**
3. **MICHAEL KNIGHT**
4. **LT. LEGATES ( NOW SGT. LEGATES)**
5. **LT. LEHMAN**
6. **SGT. JOHNSON**
7. **SGT. BORING**



FILED

NOV -6 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**FACTS:**    Plaintiff wishes to draw attention to the fact that SGT. Boring did **not** do an Incident Report as documented by Defendant's counsel but did a DISCIPLINARY REPORT see per filed exhibits. The Plaintiff filed an Incident Report through Officer Bradley in complaint of illegal action taken against him. Note that the report had to be pulled from the computer because the kitchen did not forward Disciplinary Report to anyone per the procedures. On 2/23/2006 a hearing was had that was a direct result of Plaintiff's action not Defendants and was to be an appeal, **however,** Plaintiff was denied due process and was punished for the second time for the same offense which all defendants participated. Through Plaintiff's incident report he has shown an improper conduct in the kitchen backed up by the letters revealing such conduct involving other inmates. Plaintiff has also shown in states own job description has violated the Federal, State and Prison rules. As to Defendant Klein and the other Defendants the Plaintiff has been miss-quoted as to their actions. On page 72 Plaintiff specifically says **'YES HE'S PART OF THE RETALIATION'—AND—'I KNOW EVERYTHING THAT SUPPOSEDLY GOES THROUGH THOSE OFFICES ARE SUPPOSE TO GO THROUGH HIM. I KNOW THAT WHEN I GOT TERMINATED I WROTE HIM A LETTER EXPLAINING EVERYTHING TO HIM YET THERE WAS NO HEARING OR ANYTHING. HE NEVER CALLED ME INTO THE OFFICE TO TALK ABOUT IT. THERE WAS NO DISCUSSION, NO INVESTIGATION, ON HIS PART WHATSOEVER'. Plaintiff believes that the information that was incorporated into the fact-finding report and discussed with the officers involved and the correspondence between them that was solicitated via the discovery but not supplied to Plaintiff supports his allegations of retaliation involving all the defendants. Plaintiff also wishes to  bring to the Courts' attention the fact that there is an investigation into the allegations of SGT. Johnson's actions of solicitating inmates to change Plaintiffs mind and drop his suit.**

**Plaintiff wishes to bring forth one last fact that the procedures for the termination of his employment were not adhered to via statute 6535 and Department of Corrections own policies as described in exhibits enclosed, AND PLAINTIFF WAS NOT GIVE DUE PROCESS WITH SAID RULES ACORDING TO THOSE SAME PRISON PROCEDURES IN HIS KITCHEN DISCIPLINARY ACTIONS BY LT MORRIS AND COMPANY.**

Plaintiff hopes that this Court will remember that these defendants are the scholars of the law and put into place to discipline those who have broken those laws. However there are rules for them to follow also to protect the rights of the disciplined. Plaintiff can only hope that we will not gaze on the innocent in silence will these individuals do what is illegal for legal means.

2

**THE VERY MISSION OF THE SUMMARY JUDGEMENT IS TO PIECE THE PLEADING AND TO ASSESS THE PROOF TO SEE WHETHER THERE IS A GENIUNE NEED FOR TRIAL.**

**PLAINTIFF REQUEST AT THIS POINT FOR THE MOTION FOR SUMMARY JUDGEMENT BE DENIED:**

- **RULE 56 (f) FED.RULES CIVIL PRO. Says :** 'If there is some reason why you cannot submit the necessary affidavits or other evidence to oppose a summary motion; you should submit an affidavit asking the court to deny the motion, or at least stay it, until you have obtained the necessary information.'

********************

In submitted letters from other inmates it has been shown there is a huge difference in facts between the plaintiff and the defendants. The defendants in there interrogatories said that they had no knowledge or that the existence of violations especially retaliation and extortion was unknown or unreported to them; which is in definite contradiction to plaintiff and the letters submitted.(see exhibit A & B #5) Rule 56 also says that where a party moves for a summary judgment on the grounds that nonmovant bears the burden of proof and will be able to prove essential elements of his case, nonmovant must be given adequate time for discovery and compliance has been done. In **ANDERSON v. LIBERTY LOBBY INC.** 106 S.CT.. 2505 THE Court said 'all facts **must** be viewed in the light most favorable to the nonmoving party, and the nonmoving party **must** be given the benefit of all reasonable inference'. In regards to this ruling the plaintiff is asking for the court to deny the defendants the motion for summary judgment for defendants non compliance to plaintiffs request in writing to them to respond and supply plaintiff with his request for fact-finding documents guaranteed him via the Supreme Court ruling in **WOLF v. McDONNELL** 94 S,CT. 2963 along with the right to present witnesses, to present documentation and to confront his accuser before punishing him for a violation.(see exhibit B #3). The

3

procedure results in a lost of good time and plaintiff was never given written notice of the charges before being called to the fact-finding meeting. The 14th Amendment guarantees those minimal requirements for due process. These documents along with the communication of e-mail and letters to each of the defendants, which was asked for and not supplied, shows who and what was discussed and what their input was to plaintiffs' employment. 'Absolute Immunities flow not from ranks or title or location within the government, **BUTZ v. ECONONOU** 438 US 511,but from the nature of the responsibility of the individual officials.' In **CLEAVINGER v. SAXNER** 106 S.CT. 496 says 'they are not professional hearing officers as are administration law judges. They are instead prison officials albeit no longer of the rank and file, temporarily diverted from their own usual duties. They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decisions. They work with the fellow employee who lodges the complaint and charges against the inmate upon whom they set in judgment. The credibility determination they make often is one between a co-worker and an inmate. They thus are under obvious pressure to resolve, or ignore as case at hand, a disciplinary dispute in favor of the institution and their fellow employees.'(see **PONTE v. REAL** 105 S.CT. 2192)The court thus related the members as that of a school board service as considered under **WOOD v. STRICKLAND** 95 S.CT.992. If qualified immunity is sufficient for the schoolroom it should be more than sufficient for the jailhouse where the door is closed not open and where is little, if any, protection by way of command observation.(see **SAMPLE v. DIECKS** 885 F2d 1099 [3rd cir.]Plaintiff believes that these documents that are being deprived him and shows that all the defendant were involved in the process of disciplination which show that the defendants are hiding this fact.

**CLEAVINGER COURT SAID NO ABSOLUTE IMMUNITY FOR DISCIPLINARY COMMITTEE MEMBERS, WHICH PLAINTIFF BELIEVES ALL DEFENDANTS WERE MEMBERS EVEN THOUGH THEY WERE NOT PRESENT.**

- **LOGAN v. ZIMMERMANBRUSH CO.** 102 S.CT. 1148 says that when policy

  making officials establish a constitutional inadequate state procedure for depriving

  people of a protected interest and someone is thereby deprived of such an interest that

  official has subjected that person to due process violation and those officials must be

  held liable. The court has also said that an official who does not fix a violation of

  constitutional magnitude can and must be held responsible.

*******************

As shown in the grievance hearing forms, on the back, the institution has directed rules that are

to be adhered to that will insure justice for all. They are give rights protected by the

constitution. The Plaintiff has shown   where the defendants have not followed their own

disciplinary procedures by not giving him the fact-finding information; now they are again

denying him his due process by not adhering to the rules of discovery. The plaintiff did write to

the supervisors of Lt.Morris and ask them for these report but never received an answer. He

explained this problem to the defendants' attorney with the violation involved and again

*(see exhibit C)*

requested it in discovery but again no response."The plaintiff also has shown that the

defendants, who have been involved in prison policy for years, did and are through their policy

making or policy following are violating inmates rights. It is because of these violation and the

fact that they were being addressed that the plaintiff has suffered the retaliation by all

defendants. Plaintiff would like to bring to the courts' attention the fact that the defendants'

own list of inmate job descriptions violates the policies of the prison, state and Federal

government due to the supervising of other inmates.(see exhibit D) Since the execution of this

suit the defendants have changed those duties not to show the supervisory condition ever

though it still exist per the inmates who have written testimony and still work in the kitchen.

Again documentation not supplied to plaintiff but does have significant impact on this case

showing defendants knew they violated the rights of individuals. **RAUSEN v.HORN** 241 F3d

330 (3rd cir 2001) say must show action which lead to retaliation was a constitutional violation.

- **DELAWARE STATUTE 6535** says 'that **no** inmate shall be punished for any infraction without notice of the violations and the punishment to be handed out for breaking those violations'. The Supreme Court has also ruled in the instance of punishing inmates without **first** notifying him of those rules that he is expected to follow and with out those procedures it becomes a constitutional violation. Plaintiff also brings to this court that the Department of Correction has rules to guide its officers in the same aspects. Rule 404 and 402 are procedural rules and punishments for breaking those rules.(see attached rules and letter from Stan Taylor especially footnotes 1 &2 on page 1)The plaintiff also wishes to inform the court that he was not punished per those rules (see page 12 of 19) ,he should have received a write up and not termination. The prison system also has a procedure that must be followed to insure individual's rights and those procedures were not followed.

  o **Right to fact-finder report**

  o **Right to witnesses**

  o **Right to face his accuser before punishment**

  o **Notice of 24 hours of the charges against him**

  o **Right to present evidence**

  o **Right to appeal decision**

  o **Right to cross examine accuser**

All these rights were denied Plaintiff prior to Lt. Morris termination of Plaintiff, which violates prison, state and federal statute and laws, only showing one thing that Plaintiff was singled out and terminated for his persistence in defending not only his rights but others he was placed to advise and work with to accomplish the designated

tasks. When Plaintiff complained of the violations committed by follow inmates and the institution its self they retaliated against him to silence his voice. In **MARTIN v. WHITE** 742 F2d 469 the Court said that supervisors that failed to correct unconstitutional conditions can and must be held responsible. That is what happened in this case not only did the Plaintiff bring to their attention but all the Defendants have worked in the kitchen and have worked under those same conditions and heard complaints of violations. As a matter of fact Defendants immediately changed the list of job descriptions upon plaintiff bringing forth those illegal descriptions in his discovery showing Defendants knew they were illegal. The plaintiff did not argue violations as per say violations in his grievance **but** explained those procedures that were taken and exactly what and how they were done which are the violations themselves showing improper conduct.

In ending Plaintiff would like to address the the judicial aspects of this case. If there is a dispute, which there is, over the facts of the case that makes a difference in the case, the court **must** deny summary judgment. The case will then proceed to trial to determine the facts. The court is not supposed to decide the disputed facts or assess credibility on a summary judgment motion.

1. **Wilson v. Williams**      **997 F2d 348**

2. **Gray v. Spillman**      **925 F2d 90**

3. **Tetran v. Ackman**      **893 F2d 145**

First the Plaintiff and the Defendants disagree on these facts:

- **Plaintiff's lying and manipulation for self gratification**

- **All defendants' involvement in the retaliation to plaintiff. Plaintiff has explained in a number of instances that he**

7

believes all the defendants are involved in his termination but does not know to what extent with out the fact-finders report and other communication requested but not supplied to plaintiff.

- **Prior knowledge of violations imposed by defendants**
- **Procedures defendants used to insure plaintiff's rights**
- **The existence of procedures (11 Del 6535) that protect an inmates rights to know what the rules are and the punishment for breaking those rules(see Defendants answer to facts submitted by Plaintiff)**
- **Defendants' knowledge of and sanctioning of inmate supervising other inmates**
- **Defendant's knowledge of inmate's abuse as reported to them via Plaintiff and other inmates.**

In most of the Plaintiffs' discovery and interrogatories the Defendants answered most and especially those questions of grave importance with "I DO NOT REMEMBER" OR "I DO NOT RECALL THAT CONVERSATION". These are plainly acts of individuals who got caught doing illegal procedures and were even told by the prison officials that inmates supervising other inmates was a prison, state and federal violation. So to protect their jobs it's easier to not 'remember' those facts than to admit them and be terminated themselves.

THE 3RD CIRCUIT SAID IN <u>MEYERS v. ALLRIDGE</u> 492 F2d 296 THAT "PRISONERS MUST BE GIVEN ADEQUATE NOTICE OF THE RULES BEFORE DISCIPLINARY ACTION CAN BE TAKEN AGAINST THEM FOR VIOLATING THOSE RULES. The Plaintiff never received those rules prior to termination a direct example of retaliation on the part of the defendants.

Tuesday, October 30, 2007

*James St. Louis*

JAMES ST.LOUIS
1181 PADDOCK ROAD
SMYRNA DELAWARE 19977

8

# Certificate of Service

I, JAMES ST.LOUIS hereby certify that I have served a true and correct copy(ies) of the attached ANSWER TO DEFENDANTS SUMMARY MOTION upon the following parties/persons:

To: DEPARTMENT OF JUSTICE

    820 N. FRENCH ST

    WILMINGTON DELAWARE

    19801

To: OFFICE OF THE CLERK

    UNITED STATES DISTRICT COURT

    844 N. KING ST. LOCKBOX 18

    WILMINGTON DELAWARE 19801-3570

To:

To:

To:

To:

BY PLACING IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correction Center, Smyrna, DE 19977.

On this 2ND day of NOVEMBER , 2007

_James St. Louis_

JAMES ST.LOUIS

SBI # 446518



I/M James A. Louis
SBI# 446518  UNIT D/E (F-17)
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

legal mail

legal mail

The Clerk of Courts
United States District Court
844 N. King Street Lockbox 18
Wilmington Delaware
19801-3570

# Appendix

# A

From: Clyde F. Evans
House: 1181 Paddock Road
   Smyrna, DE 19977

Dated: 4-16-07

   Re: To How The Main Kitchen is being ran at D.C.C.
      (Smyrna Jail)

To: Whom it May concern,

   I Clyde F. Evans would like to inform you on the things
that has been done to me and other inmate; by the C/o's and
the First Cook in the kitchen.
   I would like to inform you on a few different things that
are going on in the Main Kitchen and MHU's Kitchen.
      • You have inmate's as first cooks' and second cooks'.
      • They are telling other inmates to do two or three
different job.
      • If you do not leasen to the (inmate) First or second
cook they will threat you; by demoteing you or havaing you fired.
      • They keep trak of you attendance;
         (If you miss days for sick call or a visit they arenot)
         (suppose to hold it against you; But they do.)
      • When you miss like six or seven day in a month on
to the First cook (inmate) will tell you if you miss other
day you'll be demote."
      • C/o well demote a person for something and
give them 90 days in a different position.
      • C/o's and 4/7's will they demote and then when you try
to get your job (position) back them might not.
         (they will tell you that you have 90 working day;)
         (when it first start off as 90 reaglry day)
      • 4/7's have also gave same people a raise and same
did not receive a raise.
         (People that work for 8 manthy recieve a raise where a)
         (Person that work there for a year and get demote)
         (did did not recieve one)

• 4/T Morris has told me that I would not get a position back that I was demote From for a 90 day period.

These is just some of the thing I have seen and have heard.

I would like to thank you for your time in this matter. I would appreicate it if you would let me know you decide.

Respectfully thankyou.

3-31-07

I worked in the kicthew Bock in
04 And the Nead cook told me whot
I hed To do, Back in the maid kicthew

Jerry Payne
#415280  CBLB

We certify that we worked in the kitchen at DCC in Smyrna, and the officers there appointed inmates to be supervisors and through their authority had power of punishment and assigning jobs. We believe that because of this authority to inmates the atmosphere there was hostile and played a major role in our performance because of the physical and emotional stress and the constant fear of retaliation. We also have never received any rules or what action will be taken for breaking those rules from the person.

Eddie D Kline Sr.

Hugh P McCafferty

David Muzzi

Wynne Collyer

Warren Chapman

DIRRICK PIERCE

Kenneth Thomas

# Appendix
# B

JAMES ST.LOUIS

1181 PADDOCK RD.

SMYRNA DE. 19977

September 17, 2007

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

JAMES ST.LOUIS

    PLAINTIFF

       Vs.                            C.A.NO. 06-236-SLR

LT.CHERYL MORRIS et, al,                JURY TRIAL REQUESTED

    DEFENDANTS.

## NOTICE FOR ADMISSION OF FACTS

Each of the following fact is true and is admitted as truthful by the plaintiff:

1. Delaware 11 § 6535 say that all inmates in the state of Delaware are to receive a copy of the procedures for punishment and what those punishments are for breaking those procedures.

2. Ross v. Dept. of Corr. 722 A2d 815 (1998) mandates this statute and says no inmate can be punished without being informed of those rights via a personal copy of these rules.

3. Plaintiff has as this time **not** received a copy of those rules and they are not included in the housing rules supplied to each building or to the law library.

4. Plaintiff did receive a copy of these rules after this civil suit was started via the ACLU and was told by the law library that it was illegal to have this when he put in papers to be copied.

(5) Per federal laws it is illegal for an inmate to supervise, schedule work and elicit food or gifts for favors in the work force.

6. It is against an inmates rights for an officer to order his right up, to do the fact-finding and then to order the termination of that inmate.

7. It is a violation of federal state and prison policy to have an inmate in charge or supervise other inmates.

(8) A list of witnesses have been supplied to the defense and from that list as of today 3 have been fired and 1 has been demoted and many that had been fired were told as long as Lt. Morris is in the kitchen they will never work there again.

9. As of today there are a number of grievances and a number of new law suits filled against the defendants separately if not jointly.

10. Plaintiff has filed papers with internal affairs to investigate Johnson involvement with solicitation of inmates to "discuss" dropping the civil suit against the defendants.

September 17, 2007

JAMES ST.LOUIS
1181 PADDOCK RD.
SMYRNA DE.19977

# Appendix
# C

MY COPY

1/24/06

Dear Lt. Morris,

Being my immediate superior in the kitchen I am letting you know what is going on with my proceedings. Upon being told I was suspended pending termination of a hearing by Lt. Lehman and to file a grievance I immediately asked my building C/o for the on duty C/o to log a complaint and set up my due process hearing. That was Friday December 9 2005. After requesting 3 different times and being promised I'd be here A.S.A.P. I wrote up a grievance and submitted it to the building C/o who placed it in the proper box for processing. The Lt. who promised to see me still hasn't shown up, and as of January 23 2006 I haven't heard about my grievance hearing. I also asked for Mr. Kline, Lt. Lehman, Sg. Johnson, I/m Gwron, I/m Greenwell, Sg. Booring and yourself to be present as Gratson & Baughman and Green & Nelson allows me to do.

I do have a few request that I was told I can ask for.

First: You had a "fact finding" meeting with myself and Lt. Lehman on December 8 2005. I would like a copy of that meeting and all evidence collected in that process from everyone involved.

Second: I'd like to request the procedures for disciplinary actions for the kitchen. I have already requested it from



# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

**JAMES ST. LOUIS,**
    **PLAINTIFF,**

**CIV. ACT.NO.:06-236-SLR**

**V.**

**LT. CHERYL MORRIS, ET. AL.,**
    **DEFENDANTS.**

### PLAINTIFF'S FIRST REQUEST FOR DISCOVERY MATERIALS.
(Pursuant to Rule 34 Fed. R. of Civ. Proc.)

Plaintiff requests that the defendants Lt. Cheryl Morris, Director Chris Klein, Administrator Michael Knight, Lt. Legates, Lt. Lehman, Sgt. Johnson, and Sgt. Boring disclose all initial information and documents the defendants will use to support their defenses, and serve them upon plaintiff within 30 days pursuant to Fed. R. Civ. P. 26(a) (1):

**REQUEST NO. 1:**

    1.  Request notice of any deals, promises, promotions, reassignments or inducements made to witnesses or defendants in exchange for testimony.

**REQUEST NO. 2:**

    2.  Requesting notice of any immunity given to any defendant for supplying contraband in the form of doughnuts, pizza, fried chicken, lasagna, or any type of food brought in and given to inmates along with income tax forms to fill out and charge inmates for doing their taxes in exchange for testimony.

**REQUEST NO. 3:**

    3.  Request notice of any immunity given to defendants or witnesses involved in soliciting individuals to 'encourage' plaintiff to drop the case at hand.

**REQUEST NO. 4:**

4. Listing job descriptions and duties of kitchen inmate personnel and who does job assignments and duties at the relevant times of this litigation.

### REQUEST NO. 5:

5. Names, addresses, and phone numbers of each individual likely to have discovery information that the disclosing party may use to support its claims or defenses, unless solely for impeachment identifying the subjects and information.

### REQUEST NO. 6:

6. Copy of or description by category and location of all documents electronically stored information and tangible things that are in the possession, custody or content of the party and that the disclosing party may use to support its claims or defenses unless solely for impeachment.

### REQUEST NO. 7:

7. Disclosure of any identities of any person who may be used at trial to present evidence under Rules 702, 703, and/or 705 of the F.R.E.

### REQUEST NO. 8:

8. Expert witnesses with a complete statement of all opinions to be expressed and the basis and reason therefore; data or other information considered by the witness in forming the opinion; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness(es) including a list of all publications authored by the witness within the preceding 10 years compensation to be paid for the study and testimony.

### REQUEST NO. 9:

9. Deals, immunity, and promises given anyone during the D.O.C. investigation and report of the solicitation from Sgt. Johnson to inmates to coerce plaintiff to end this subject matter; along with the record filed on these charges by Lt. DeJesus and his investigation/report to the prison.

### REQUEST NO. 10:

- 2 -

10. List of insurance company and any relevant policy numbers; also a

copy of the policy.

**REQUEST NO. 11:**

11. List of any and all civil suits in the past 10 years involving any and/or all defendants including the name and location of the court(s), caption(s), outcome(s), disposition of the case(s), and a certified docket sheet for any and all case(s).

**REQUEST NO. 12:**

12. All grievances, complaints, or other correspondence relating to, regarding or arising out of the incidents alleged in Plaintiff's Complaint, including, but not limited to, all grievances or complaints submitted by Plaintiff to Department of Correction personnel, responses thereto, and any related correspondence between Plaintiff and Department of Correction personnel.

**REQUEST NO. 13:**

13. All correspondence relating to, regarding or arising out of the incidents alleged in Plaintiff's Complaint, including, but not limited to, any correspondence between friends or family members of Defendants or other inmates, and Department of Correction personnel.

**REQUEST NO. 14:**

14. Any statements, declarations, petitions, or affidavits relating to, regarding or arising out of the incidents alleged in Plaintiff's Complaint and any statements, declarations, or affidavits of Plaintiff, other inmates, or witnesses to the allegations in the Complaint.

**REQUEST NO. 15:**

15. All criminal history records for all defendants in any State and/or Foreign Country including the State of Delaware.

**REQUEST NO. 16:**

- 3 -

16. Any and all grievances filed against any of the defendants and/or disciplinary actions by internal investigations, including the type of filing (grievance, write-up from another officer, an internal investigation, etc...), case number(s), outcome(s), disposition(s), and certified documentation as to authenticity.

**REQUEST NO. 17:**

17. All medical and/or mental health records for all defendants for the past 20 years, including any that were possibly performed while being at a D.O.C. facility unofficially and/or personally.

**REQUEST NO. 18:**

18. Any and all documents directly or indirectly involved with this litigation that the defendants may have in their possession which would be deemed evidence.

**REQUEST NO. 19:**

19. Any and all document(s) referenced or identified in Plaintiff's Responses to Interrogatories served that may contain different and/or the same information, signatures, personal notes written on them, any investigations performed in connection with this litigation and any and all write-ups filed against plaintiff in connection with this litigation.

**REQUEST NO. 20:**

20. A complete institutional file including classifications, write-ups, and any information used to make any determinations including presentence reports that the Delaware Department of Corrections has in their possession or had in their possession.

Submitted this 5 day of July, 2007.

James St. Louis #446518
D/E F17B1181 Paddock Road
Smyrna, DE    19977

- 4 -

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JAMES ST.LOUIS,

    PLAINTIFF,

    v.

LT. CHEYRL MORRIS, et al,

    DEFENDANTS.

C.A. 06-236-SLR

JURY TRIAL REQUEST

### PLAINTIFF MOTION TO COMPEL

The petitioner asks this court for a motion to compel LT. MORRIS to present to plaintiff all the records asked for **but** were not submitted to plaintiff after discovery request for the following reasons:

1. Under Court ruling in <u>Dierks v. Durham</u> 959 F2d 710 the court said that a prison supervisor who sat in judgment of her own complaint against an inmate violated that inmates rights by not producing the fact-finding information used to discipline him, as in case at hand.(also see <u>Tyler v. Black</u> 811 F2d 424 and 3rd circuit case <u>Griffin V. Spratt</u> 969 F2d 16 {1992} )

2. Information requested has been requested more than once and has been ignored by the defendant.

3. Information requested is in direct interest of this case and offers immense knowledge as to other information by other witnesses that can help litigate this case.

4. Evidence contained or lack of evidence could show that no evidence existed and firing was retaliation making this report a prime piece of evidence not supplied plaintiff.

5.Plaintiff not only wishes to receive his fact-finding report **but** also employment

records as they hold his evaluations from not only Lt. Morris but Boring along

with the other officers involved.

6.Withholding this information would deprive the plaintiff of evidence needed to

show the jury his reliability according to all the officers.

7.Withholding the fact-finding information is not only a constitutional violation but

also a prison violation.

8. Failure of prison authorities to follow their own procedures is a due process

violation, (see Giampetruzzi v. Maliolm 406 F. Supp. 836 (1975) ).

October 2, 2007

JAMES ST.LOUIS
# 446518
1181 PADDOCK ROAD
SMYRNA DELAWARE 19977

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date:** 08/27/2007

| GRIEVANCE REPORT |
|---|

| OFFENDER GRIEVANCE INFORMATION |
|---|

| | | |
|---|---|---|
| **Offender Name :** EVANS, CLYDE F | **SBI#** : 00205823 | **Institution** : DCC |
| **Grievance #** : 139756 | **Grievance Date** : 08/16/2007 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date** : |
| **Grievance Type:** Job Issues | **Incident Date** : 08/12/2007 | **Incident Time :** 04:00 |
| **IGC** : McCreanor, Michael | **Housing Location :** Bldg T1, Cell 1, Bed 16 | |

| OFFENDER GRIEVANCE DETAILS |
|---|

**Description of Complaint:** Last year I had a problem counti*.g and as a 3rd Cook was demoted to Line Server for 90 days as punishment. Since then I have become a witness in a civil suit against Lt. Morris and 6 defendents. I was to return to work as 3rd Cook but on Sunday, August 12, 2007 I was told by Mr. Hughes and Lt. Morris that I wasn't going back to 3rd Cook or to help the cooks or Diet Cooks. I already served my punishment and believe this is a retaliation for being a witness in this civil suit, which is a constitutional issue.

**Remedy Requested** : I want some one to look into this action, siing as how I am not the only one this is happening to, and take the correct action necessary.

| INDIVIDUALS INVOLVED | | |
|---|---|---|
| **Type** | **SBI #** | **Name** |

| ADDITIONAL GRIEVANCE INFORMATION |
|---|

| | |
|---|---|
| **Medical Grievance :** NO | **Date Received by Medical Unit :** |
| **Investigation Sent :** | **Investigation Sent To** : Klein, Christopher |
| **Grievance Amount :** | |

*Sent to one of defendants that cuvil suit is filed against for dissolving. (intimidation)*

*exhibit 2*

**FORM #584**

**GRIEVANCE FORM**

FACILITY:_____    DATE: 8/29/07

GRIEVANT'S NAME: James St. Louis    SBI#: 446518

CASE#: 141548    TIME OF INCIDENT: present

HOUSING UNIT: D/E

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

In June 2006 I was housed in E building and it was brought to my attention that an officer from the Kitchen had selected inmates to "discuss" with me about dropping my civil suit against him and (6 other defendants) I immediately informed the building officer from E building who wrote in a report with me and called the Lt. on duty (Lt. De Jesus) to submit the report for investigation. He came to the building and took his own report and said it would be given to the watch commander and investigated. Since I have asked him for a copy of

ACTION REQUESTED BY GRIEVANT: This report 2 times and once in writing

see attached

GRIEVANT'S SIGNATURE: James St. Louis    DATE: 8/29/07

WAS AN INFORMAL RESOLUTION ACCEPTED?    ____(YES)    ____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

RECEIVED

SEP 04 2007

Inmate Grievance Office

April '97 REV

The one in writing explained that it was needed and required to be submitted to District Court and Department of Justice before August 24 2007.

I was told twice by Lt. DeJesus that once he found it he would give it to me. And the 3rd time I asked him he would only say he talked to Mr. Little when I asked if he was going to give it to me he again said he talked to Mr. Little.

This past week one of the 3 inmates solicited came to me and asked when they were going to start the investigation.

Now I know why I didn't receive it. Failure to investigate a security matter is a grievous matter especially when the report is to be used in a civil matter as evidence.

I need to know who the watch commander was that night, and who squashed this investigation. I have already talked to the Dept of Justice Eileen Kelly and asked before she got involved could I handle it. She said OK but expects to see a copy of this report and Lt. De Jesus' report. I'm asking you to send a copy of this grievance and letter to internal affairs through you and hope it will be addressed properly

Jim Sr. Law

RECEIVED
SEP 04 2007

Dear Mr. Richardson                    10/31/07
        (internal affairs)

        My name is James H. Louis, SBI #446518
and I reside at D/E (F-17)
        On August 29, 2007 I wrote a grievance
and sent it along with a letter involving
Lt. De Jesus and an investigation he was
suppose to have done involving Sgt Johnson
from the Kitchen. The complaint was about
Johnson soliciting inmates to "change" my
mind and drop a civil suit against the
Kitchen and 7 Defendants.
        This issue is being addressed in
Federal Court and I have asked the Judge
to compel this record seeing it has great
bearing on this case.
        My problem is I thought you would
atleast acknowledge my letter and grievance
with my concerns for my safety and can
only wonder if you had just disregarded
this issue as not important?
        I have checked with the individuals
who I told De Jesus had informed me of
Johnson's "request" and they say he has
never talked to them. Again it seems
like my safety is not an important factor.
        Please contact me to atleast let me
know this is being investigated.

# Appendix
# D

Job Title: 2nd Cook

Classification:

Pay Rate:

State of Delaware
Department of Corrections

Date: 9/20/2000

JOB DUTIES:

- Report to work promptly with clean uniform and hairnet intact.
- Wash hands for 20 seconds with hot soapy water
- Direct supervision of food preparation for specialized areas (salad prep. Vegetable prep and baking)
- Monitor portion control and timely food distribution
- Monitor, set-up and maintain all equipment
- Monitor master menu and ensure food items are available
- Complying with all food preparation policies, practices and regulations
- Monitor proper usage and handling of knifes
- Ensure that all required paperwork and reports are submitted daily
- Inspect the cleaning and sanitizing of work areas
- Serve as the head cook in his/her absence
- Ensure that proper food items are requisitioned for meal preparation
- All other duties as required

KNOWLEDGE:

- Large scale kitchen operations and machinery
- Master menu, portion control and recipes
- Cleaning and sanitizing practices and regulations
- Large scale food preparation policies and practices
- H.A.A.C.P and Serv Safe requirement/practices

SKILLS:

- Math and measurement
- Basic English
- Menu and ingredient modifications
- Preparation, leadership, and organizational skills

ABILITIES:

- Delegate duties and supervise large scale kitchen operations
- Communicate effectively both in writing and orally
- Work as a team player
- Maintain large equipment

# Appendix
# E

Westlaw.

**C**

*WEST'S* DELAWARE CODE ANNOTATED
TITLE 11. CRIMES AND CRIMINAL PROCEDURE
PART IV. PRISONS AND PRISONERS
CHAPTER 65. DEPARTMENT OF CORRECTION
SUBCHAPTER VII. DISCIPLINE, MEDICAL CARE AND DISCHARGE.
→**§ 6535. Discipline**

The Department shall promulgate rules and regulations for the maintenance of good
order and discipline in the facilities and institutions of the Department, includ-
ing procedures for dealing with violations. Prisoners of the Department shall
have access to those portions of the disciplinary rules that apply to them, at
places and times deemed reasonable and appropriate by the Commissioner. There
shall be a record of charges of infractions by inmates, any punishments imposed
and of medical inspections made.

Current through 76 Laws 2007, ch. 181. Revisions to Acts made by
the Delaware Code Revisors were unavailable at time of publication.

Copr. © 2007 Thomson/West.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# Appendix
# F

American Civil Liberties Union Foundation of Delaware
100 West 10th Street, Suite 309,
Wilmington Delaware 19801
(302) 654-5326 Fax (302) 654-3689
acludelaware@acludelaware org www aclu-de org

AMERICAN CIVIL LIBERTIES UNION of DELAWARE

Sidney Balick
*President ACLU Delaware*
Nancy D Dean
*Vice President*
Jeanne M Hanson
*Second Vice President*
Max S Bell, Jr
*Secretary*
Grace E Messner
*Treasurer*
Gilbert J Sloan
*President ACLF Delaware*
Joan D Kandler
*Treasurer ACLF*

*Board of Directors*
Timothy P Brooks
Joan DelFattore
Alice E Eakin
Anne M Farley
Helen K Foss
Judith D Govatos
Lawrence A. Hamermesh
Patricia A. Hampton
Selma Hayman
Bangalore I Lakshman
Phyllis Levitt
Elizabeth M McGeever
Judith E Mellen
Norman M Monhait
Joy Mulholland
Joseph S Naylor
Darryl A Parson
Jeffrey A. Raffel
Scott Reid
Joan L. Rosenthal
Carl Schnee
Warren A. Scott
Sonia S. Sloan
Peggy E Strine
Randy Tiffany
Leland B Ware
James C Welch
Serena M. Williams
Cecil C. Wilson

*Advisory Board*
Gary W. Aber
Mashoor I Awad
Victor F. Battaglia Sr
Sam Beard
Henry H Beckler
Richard G Elliott, Jr.
Herbert Graves, Jr
Shirley C Horowitz
Kathi A. Karsnitz
Penny Marshall
John E. Osborn
B Wilson Redfearn
Joseph A. Rosenthal
Carolyn Walker
Paul P. Welsh

Drewry Nash Fennell, Esq
*Executive Director*

June 12, 2006

Mr. Stanley W. Taylor, Jr
Commissioner
Delaware Department of Correction
245 McKee Road
Dover, DE 19904

### Re: FOIA REQUEST

Dear Commissioner Taylor:

This is a request under the Freedom of Information Act, 29 Del
Code § 10001 et seq

I respectfully request a copy of the following:

1 · The disciplinary rules whose violation would result in action
against an inmate;

2. and the policies and procedures controlling disciplinary
infractions, including Department of Correction policies and
procedures and the Bureau of Prisons policies and procedures;

2 The prison grievance procedures for medical grievances as well
as non-medical grievances;

3. Treatment protocols for the following illnesses or conditions:

    a. HIV/AIDS;
    b. Hepatitis;
    c. Diabetes;
    d Heart Disease;
    e. Cancer;
    f. Sexually Transmitted Diseases;
    g. Pregnancy and Gynecological Care;
    h. High Blood Pressure;
    i. High Cholesterol;
    j Dental Care;
    k Chronic pain; and

4 Operating procedures with respect to wellness visits, including
routine gynecological care

*Protecting the Civil Liberties of Delawareans Since 1961*

    To permit me to reach an intelligent and informed decision about whether to file an administrative appeal of any denied material, please describe any with held records (or portions thereof) and explain the basis for your exemption claims.

    I also request a waiver of all fees for this request. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government and is not primarily in my commercial interest

    To help to determine my status for the purpose of assessing fees, please note that I am requesting such information on behalf of the American Civil Liberties Union of Delaware, a public interest organization that seeks the information for public use, and not for private or commercial use

    If you have any questions regarding the scope of the request or any other matters, please call me at (302) 654-5326, ext. 102. I look forward to receiving your response by June 27, 2006 [1]

Sincerely,

Julia M. Graff
Staff Attorney
ACLU of Delaware

---

[1] *See* Letter from Attorney General (June 3, 2004): "This Office has determined that 'reasonable access means that a public body 'should, within 10 days of receipt of a definitive request, issue a written determination to the requestor stating which of the requested records will, and will not be released and the reasons for any denial of a request. Att'y Gen. Op. 91-IO03 (Feb. 1, 1991),'" *available* at http://www.state.de.us/attgen/main_page/opinions/2003/03-ib13.htm *See also* Letter from Attorney General (June 2, 2003): "Statutes in a number of other states exclude Saturdays, Sundays and holidays in calculating the required response time for public records See e.g., D C Code S 1-522(c); La Rev Stat. S 41:31; S.C. Code Ann. S 30-4-40. We think it appropriate to exclude weekends and holidays in Delaware as well. In addition, just as the courts do not count the day of filing, the time-line for a FOIA response to a public records request begins the next business day after the public body received the request," *available* at http://www.state de.us/attgen/main_page/opinions/2003/03-ib13.htm.

2

STATE OF DELAWARE
DEPARTMENT OF CORRECTION
245 McKee Road
Dover, Delaware 19904

Stan Taylor
Commissioner

(302) 739-5601
Fax: (302) 739-8221
E-Mail: sttaylor@state.de.us

June 27, 2006

*VIA Hand Delivery and U.S. Mail*

Julia M. Graff, Esquire
Staff Attorney
ACLU of Delaware
100 W. 10ᵗʰ Street, Suite 309
Wilmington, DE 19801

    Re:    The ACLU's FOIA request to DOC dated June 12, 2006

Dear Ms. Graff:

Please accept this letter as a response to your written FOIA request dated June 12, 2006. Your recent request for information was made under the State of Delaware's Freedom of Information Act (FOIA), 29 *Del. C.* § 10001, *et seq.* Therein, you requested the following information:

    1.    The disciplinary rules whose violation would result in action against an inmate;[1]

    2.    The policies and procedures controlling disciplinary infractions[2], including Department of

---

[1] Presumably, the phrase "action against an inmate" refers to disciplinary sanctions short of criminal prosecution for disciplinary infractions committed by inmates. Please advise if you intended a different meaning.

[2] Presumably, the term "policies and procedures controlling disciplinary infractions" refers to the notice, hearing, and appeal provisions associated with the inmate disciplinary process. Please advise if you intended a different meaning.

Julia M. Graff, Esquire
June 27, 2006
Page 2

Correction policies and procedures and the Bureau of
Prisons policies and procedures;

3.     The prison grievance procedures for medical
grievances as well as non medical grievances;

4.     Treatment Protocols for the following illnesses or
conditions:
       a. HIV/AIDS
       b. Hepatitis
       c. Diabetes
       d. Heart Disease
       e. Cancer
       f. Sexually Transmitted Diseases
       g. Pregnancy and Gynecological Care
       h. High Blood Pressure
       i. High Cholesterol
       j. Dental Care
       k. Chronic Pain

5.     Operating Procedures with respect to wellness
visits, including routine gynecological care.

As you may be aware, the FOIA statute contains a number of exceptions to the
definition of "public record". *See* 29 *Del. C.* § 10002(g).   Legally speaking, the records
requested in paragraphs 1 – 3 are exempted from the definition of public records because
they are subject to statutory privilege. *See* 11 *Del. C.* § 4322(d)[3] in conjunction with 29
*Del. C.* § 10002(g)(6). Nonetheless, pursuant to my authority under 11 *Del. C.* § 4322(d),
I authorize the disclosure of these policies in response to your request. They are enclosed
herein.

With respect to the remainder of your requests, these records do not fit the
definition of "public record" because they are "trade secrets and commercial or financial
information obtained from a person which is of a privileged or confidential nature." *See*
29 *Del. C.* § 10002(g)(2).  The treatment protocols you have requested consist entirely of

---

[3] "The Department of Correction Policies and Procedures, including any Policy, Procedure, Post Order,
Facility Operational Procedure or Administrative Regulation adopted by a Bureau, facility or department of
the Department of Correction shall be confidential, and not subject to disclosure except upon the written
authority of the Commissioner."

Judith M. Graff, Esquire
June 27, 2006
Page 3

Proprietary information held by the Department's contracted medical provider
Correctional Medical Services, Inc. ("CMS").

Thank you for your interest in these issues.  The Department looks forward to
engendering a continued working relationship with the ACLU of Delaware.

Very truly yours,

Stanley W. Taylor
Commissioner of Correction

cc:     Dr. Robert M. Hooper

Enclosures

**DEPARTMENT OF CORRECTION**
**Bureau of Prisons**
**245 McKee Road**
**Dover, Delaware 19904**

March 16, 2007

D/E, F-17

Inmate STLOUIS JAMES J
SBI # 00446518
DCC  Delaware Correctional Center
SMYRNA DE, 19977

Dear JAMES STLOUIS:

We have reviewed your Grievance Case # 93223 dated 01/03/2007.

Based upon the documentation presented for our review, we uphold your appeal request.

Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by
BOP Procedure 4.4 entitled "Inmate Grievance Procedure", Level III appeals.

Sincerely,

Richard Kearney
Bureau Chief

*prison procedures per Bureau chief*

FORM #: 127 (P&B)                    NOTICE OF DISCIPLINARY HEARING
(2-part NCR)                         FOR MINOR/MAJOR OFFENSE                 To be completed by
Revised: 5/95                                                               Hearing Office
                                                                            DR _____

TO:    Inmate: _JAMES  STLOUIS_____    SBI#: _446518_    HOUSING UNIT: _FCHC/D-45_

1.    You will be scheduled to appear before the <u>Hearing Office</u> to answer charges pending
      against you. (Staff are to explain the charges as listed on the 122.)

2.    At that time, a hearing will be held to determine whether you violated Institutional
      Rule(s) as alleged in the attached Disciplinary Report.
      How do you plead?    [√] Guilty        [ ] Not Guilty

3.    A "Minor Offense" is a rule violation in which the extent of the sanction to be imposed
      shall be restricted to:
      a. Written Reprimand
      b. Loss of one or more privileges for a period of time <u>of more than 24 hours but less</u>
         <u>than 15 days.</u>

4.    A "Major Offense" is a rule violation in which the extent of the sanction to be imposed
      shall be restricted to:
      a. Loss of one or more privileges for a period <u>of more than (15 days) but less than</u>
         <u>60 days.</u>
      b. Confinement to assigned quarters for a period of time not to exceed 30 days.
      c. Isolation confinement for a period of time not to exceed 15 days.
      d. Loss of good time for a period of time not to exceed 30 days.
         (Forfeiture of accumulated good time shall be subject to the approval of the
         Commissioner or his designee.)

5.    You have the right in the disciplinary process as stated on the lower and back of this
      page. These have been fully explained to you at the time of this notification.

6.    Counsel requested?  [ ] Yes      [√] No      Name of Counsel: /

7.    Witness requested?  [ ] Yes      [√] No      Name(s) of Witness: _____

8.    Confront accuser?   [ ] Yes      [√] No      _____

I certify that on _01 26 07_ at _2100_ , I served
              (date)        (time)

upon the above inmate this notice of Disciplinary      I have received copies of 122 & 127 and
Hearing for Minor/Major Offense and (2) the            understand my rights as Form # 127 has
Disciplinary Report is attached hereto.                been read to me.

_____                        _____
(Employee's Signature & Title)                         (Inmate's Signature)
********************************************************************************************

## INMATE RIGHTS IN THE DISCIPLINARY PROCESS

**MINOR OFFENSE**
<u>Right to Remain Silent:</u> If you are charged criminally based upon the same facts giving rise
to the disciplinary process, you have the right to remain silent at the Disciplinary Hearing.
If you choose to remain silent, your silence will not be considered against you at the
Disciplinary Hearing. In all other circumstances, silence at the Disciplinary Hearing may be
considered against you.

<u>Presence:</u> You have the right to be present at all phases of the hearing, except that you may
be excluded during the Hearing Officer's deliberations and at any time your behavior becomes
disruptive to the proceedings. Reason for such exclusions shall be stated in writing.

WHITE - Shift Commander W/Form 122      YELLOW - Inmate

**Impartial Hearing Officer:** You have the right to be heard by an Impartial Hearing Officer, who shall not have witnessed the incident in question, been involved in preparation of the charge, or otherwise biased against you. Such Hearing Officer shall not have had supervisory responsibility over you during the six months immediatelt proceeding the hearing and shall be of a rank no lower than Lieutenant.

**Make Statement and Present Evidence:** You have the right to make a statement and present any reasonable evidence, including written statements from others in your behalf.

**Record of Findings:** You have the right to receive a written record of the Disciplinary Hearing. Such record shall state the findings of the Hearing Officer, summarize the evidence relied upon, and will state the sanctions imposed, if any.

**Appeal:** You have the right to appeal the decision of the Hearing Officer to the Commissioner of the Department of Correction or his designee. At the Disciplinary Hearing you will be provided with an appeal form. Execution of any sanction imposed by the Hearing Officer shall be automatically stayed for seventy-two (72) hours immediately following the hearing UNLESS YOU INDICATE ON THE APPEAL FORM THAT YOU DO NOT INTEND TO APPEAL. The purpose of the automatic stay is to afford you time to decide if you want to appeal. If you file an appeal within seventy-two (72) hours immediately following the hearing, the Hearing Officer MUST stay the execution of the sanction until an appeal decision is rendered. If you do not file an appeal within seventy-two (72) hours immediately following the hearing OR if you indicate on the appeal form that you do not want to appeal, the sanction shall be executed. The 72-hour time limit will run only while you are incarcerated at the institution.

**MAJOR OFFENSE**                          (All of the above plus the following)
**Counsel:** You have the right to cousult with counsel substitute prior to the hearing. At the hearing, you may be accompanied by a counsel substitute who may be either a staff member or an approved inmate. The extent to which counsel substitute may present your case at a Disciplinary Hearing shall be within the discretion of the Hearing Officer, taking into consideration such factors as your literacy, intelligence, the complexity of the issues under consideration, and other factors which may prevent you from making a complete presentation on your own behalf.

**Pre-Hearing Detention:** You have the right to remain in your existing status until the hearing unless you become sufficient threat to other inmates, staff members, or yourself to warrant pre-hearing detention. If pre-hearing detention is ordered by the Shift Supervisor of your unit, that order must be reviewed by the Warden or his designee every 24 hours. Failure to do so will cause you to return to your previous status. Any time spent in pre-hearing detention will be credited against any subsequent sanction imposed.

**Copies of Written Information:** You have the right to receive copies of any written information which the Hearing Officer may consider except where disclosure of such information would be unduly hazardous to institutional safety or would endanger the physical safety of an individual reasons for non-disclosure to be stated in writing. In all other cases where written informatio is not disclosed, the contents will be summarized for you to the extent this may be done withou creating a substantial risk to institutional or personal safety.

**Call Witness:** You have the right to call witnesses on your behalf unless doing so would be irrelevant, redundant, unduly hazardous to institutional safety, or would endanger the physical safety of any individual; such reasons will be stated in writing by the Hearing Officer.

**Confront and Cross-examine Accuser:** You have the right to confront and cross-examine your accuser (the author of the Disciplinary Report) and all witnesses who testify against you unless doing so would be unduly hazardous to institutional safety or would endanger the physical safety of the witness; such reasons for denial will be stated in writing by the Hearing Officer.

FORM #: 127 (F&B)
(2-part NCR)

NOTE: This packet sent with letters from Stanley Taylor
and Julie Graff dated 6/27/2006 & 6/12/2006
as up to date procedures
during St. Louis
incident

| STATE OF DELAWARE | PROCEDURE NUMBER: 4.2 | PAGE: 1 OF 18 |
|---|---|---|
| BUREAU OF PRISONS | RELATED ACA STANDARDS: 29 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION MAKING RELATING TO OFFENDERS | SUBJECT:   RULES OF CONDUCT | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: | | |
| EFFECTIVE DATE:   Revised October 1, 2004 | | |

I.   **AUTHORITY:**  DOC Policy 4.2

II.  **PURPOSE:**  To establish reasonable rules of conduct and a
     system of penal discipline for inmates under the
     jurisdiction of the BOP. The purpose of discipline
     is to correct behavior. The least serious sanction
     needed to correct the inmate's behavior should be
     used.

III. **APPLICABILITY:**  All BOP employees, volunteers, persons or
     organizations conducting business with the BOP, all inmates
     under the supervision or custody of the BOP.  This procedure
     will not be used at Delaware Correctional Center.  The
     Corrections Code of Penal Discipline will be used at DCC.

IV.  **DEFINITIONS:**

     A.   ATTEMPT:  An act which constitutes a substantial step
          in a course of conduct planned to result in the
          commission of a rule violation and/or criminal offense.

     B.   CLASS I OFFENSE:  Violations, which are termed a major
          misconduct and are considered serious.

     C.   CLASS II OFFENSE:  Violations, which are termed a minor
          misconduct and are considered less serious.

     D.   CONTRABAND:  Article, substance or thing which is not
          authorized by the Department of Correction, obtainable
          through the institutional commissaries, specifically
          permitted by applicable prison regulations, or otherwise
          specifically authorized by the Warden, and the
          accumulation of authorized items beyond the established
          limit.

     E.   INTOXICATION:  Condition in which a person's powers of
          self-control have been impaired because of the
          consumption of alcohol and/or drugs.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 2  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

**F.** LEAD WORKER:  An employee who continuously works in a limited supervisory capacity as a function of the employee's normal duty assignment.

**G.** PRIVILEGES:  Benefits conferred upon the inmate population by institutional regulation including commissary, recreation (including tier recreation), telephone calls, and visits, which may be temporarily revoked for violation(s) of the Rules of Conduct.

**H.** PROHIBITED AREA:  Any area to which an inmate is not authorized to be present.

**I.** RESTITUTION:  Repayment for property taken, damaged or destroyed by an inmate.

**J.** RIGHT:  Anything guaranteed by law, which may not be revoked as a disciplinary sanction.

**K.** SUMMARY ACTION:  Action taken by an authorized person without benefit of a disciplinary hearing.  The sanction for Summary Action shall be from the time it is imposed, not the time of the incident.

**L.** UNIT SUPERVISOR:  An employee of the rank of Lieutenant or higher with supervisory responsibilities over a unit or sub-unit within a facility.

**M.** WATCH COMMANDER:  An employee of the rank of Lieutenant or higher with supervisory responsibilities over an entire facility during the employee's shift and/or tour of duty.  (May be a Sergeant in smaller institutions)?

**N.** WILLFULLY:  Conscious purpose to engage in the conduct or cause the result.

**V. PROCEDURE:**  This procedure will be construed according to the fair meaning of its terms; to correct behavior, not punish; to utilize the least restrictive sanction that achieves desired behavior; to promote justice; and to accomplish the following general objectives:

**A.** Promote the safety and welfare of everyone within the institution.

**B.** Promote the efficient administration and operation of the institution.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: | | |
|---|---|---|---|---|
| BUREAU OF PRISONS | 4.2 | 3 | OF | 18 |
| SUBJECT: RULES OF CONDUCT | | | | |

C. Define what conduct is prohibited in the institution and state the Sanctions that may be imposed to punish such conduct. Prisoners of the Department shall have access to those portions of the disciplinary rules which would result in a disciplinary action or loss of privileges. This access may take form as posted bulletin boards, law library file copies, housing unit postings, or other general notice formats approved in advance by the Commissioner. Individual copies of specific disciplinary rules will be made available at the inmate's written request and expense, in similar manner to other law library document requests.

D. Prevent arbitrary or retaliatory treatment of inmates accused or convicted of offenses.

E. Prescribe penalties that are proportionate to the seriousness of the offenses.

F. Provide a climate of certainty within which both correctional staff and inmates will have a clear picture of the relationship of each to the other and each to the interests of the institution.

Upon the reasonable belief of an institutional staff member that an offense has been committed, he/she should consider if a Summary Action, Class I disciplinary report or Class II disciplinary report is required. If the determination is made that the action requires Summary Action it shall be completed as outlined in this procedure. If a disciplinary report is required, the report shall include:

A. The specific rule (s) violated.

B. The facts surrounding the incident. Conjecture or conclusion shall not be made by reporting staff.

C. The names of the witnesses to the incident, if any.

D. The disposition of any evidence involved.

E. Any immediate action taken.

F. The date and time of the offense.

G. The signature of the reporting staff member.

The disciplinary report should be submitted before the end of the shift, and must be submitted within 24 hours. All staff members listed as witnesses on the disciplinary report should submit an Incident Report (Form 404). These reports will be turned in to the Watch Commander.

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.2 | PAGE:<br>4  OF  18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

The Watch Commander reviews the disciplinary report to determine if the report is complete.    The Watch Commander or designee determines if the violation is a Class I or Class II offense. If the violation is one designated as requiring pre-hearing detention, the Watch Commander or designee (Lieutenant or higher) reviews the report with the inmate and records the inmate's statement about the charges on the form. This should be done at the time of or soon after the inmate is moved to pre-hearing detention.

For other Class I or II the Watch Commander or designee Lead Worker Class II, Lieutenant or higher Class I will review the report with the charged inmate, record the inmate's statement about the charges and provide the inmate with a copy of the disciplinary report.    This will normally be done on the shift the report is written or within 24 hours if circumstances do not permit it.    In all cases the report will be provided to the inmate at least 24 hours before the hearing.

Inmates assigned to pre-hearing detention will have their Class I hearing not less than 24 hours nor more than 72 hours (excluding weekends and holidays) after placement in pre-hearing detention.

**PRE-HEARING DETENTION:** The following offenses are considered serious and should require automatic pre-hearing detention:

A.    Arson

B.    Assault

C.    Engaging in a Riot

D.    Escape and Attempt to Escape

E.    Felony

F.    Fighting

G.    Homicide

H.    Inciting to Riot

I.    Restraint

J.    Sexual Assault

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: | |
|---|---|---|---|
| BUREAU OF PRISONS | 4.2 | 5   OF   18 | |
| SUBJECT: RULES OF CONDUCT | | | |

Watch Commanders may, at their discretion waive automatic pre-hearing detention.  They may impose pre-hearing detention for any Class I Offense when deemed necessary.

For any other offense not listed, the inmate may remain in his existing status unless the inmate is considered a threat to other inmates, staff, or himself sufficient to warrant pre-hearing detention.  When pre-hearing detention is ordered by the Watch Commander for offenses not listed as requiring pre-hearing detention, the Warden must review such order within 24 hours.  Failure to review pre-hearing detention may return the inmate to his previous status.  Any time spent in pre-hearing detention should be credited against any subsequent sanction imposed.  All inmates on pre-hearing detention will have their status reviewed every 24 hours.

The inmate will be given the reasons for pre-hearing detention in writing, and the inmate will have the opportunity to respond to the charges and the pre-hearing detention order.

**CLASS I HEARINGS:**

All Class I hearings will be conducted by an impartial Hearing Officer, who should not have had direct supervisory responsibility over the accused inmate during the six month period immediately preceding the hearing.  A hearing officer will be disqualified to preside over hearings in which he witnessed the incident in question, was involved in preparation of the charge, or is otherwise biased against the inmate who is the subject of the hearing.  The hearing officer will be of rank no lower than lieutenant and may be a supervisor from the nonuniformed staff.

The stipulation requiring six months of no direct supervisory contact may be waived for small facilities with inmate populations of less than 250 that lack sufficient staff of the rank of lieutenant or higher to comply with this requirement.

At the Class I Hearing, the inmate is entitled to the following:

**A.**   An opportunity to be present during the hearing, except that he may be excluded during the

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 6  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

Hearing Officer's deliberations and at any time the inmate's
behavior becomes disruptive to the proceedings.
Reasons for such exclusion will be recorded in writing.

**B.** The accused inmate may consult with counsel or counsel
substitute prior to the hearing. At the hearing, an
inmate may be accompanied by a counsel substitute who
may be either a staff member or an inmate approved by
the Hearing Officer. The extent to which counsel
substitutes may present an inmate's case at a
disciplinary hearing is within the discretion of the
Hearing Officer taking into consideration such factors
as illiteracy and intelligence of the inmate, the
complexity of the issues under consideration, and any
other factors which may prevent the inmate from making
a reasonable presentation on his own behalf.

**C.** Copies of any written information which the Hearing
Officer may consider will be provided to the inmate
except where disclosure of such information would be
hazardous to institutional safety or could endanger the
physical safety of an individual. Reasons for
non-disclosure will be stated in writing.

**D.** An opportunity to make a statement and present
documentary evidence on his behalf including written
witness testimony.

**E.** An opportunity to call witnesses and/or present written
statements on his behalf unless doing so would be
irrelevant, redundant, or hazardous to institutional
safety and security, or could endanger the physical
safety of any individual. Such reasons for denial will
be stated in writing. The Hearing Officer may also deny
witnesses if the Hearing Officer stipulates to or will
agree to the testimony that would have been given. Such
stipulation or agreement will be made in writing.

**F.** An opportunity to confront and cross-examine his
accuser and all adverse witnesses, unless doing so
could be hazardous to institutional safety, order and
security or could endanger the physical safety of the
witness. Such reasons for denial will be stated in
writing.

At any time during the hearing, the Hearing Officer may
exclude evidence, although relevant, if its evidential value
is outweighed by considerations of undue delay, waste of

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 7   OF   18 |
| SUBJECT: RULES OF CONDUCT | | |

time, or needless presentation of cumulative evidence; such reasons shall be stated in writing.

At any time during the hearing, the Hearing Officer on his own motion, may order an investigation into the incident and continue the hearing at a future time.   If the hearing officer finds the facts do not support the charge but do support a different charge, he/she may change the charge and proceed with the hearing.

### DECISION AND RECORD OF FINDING:

At the conclusion of the hearing the Hearing Officer shall announce the decision and sanction.   The decision and the evidence used to reach that decision will be put in writing and a copy will be given to the inmate.   The imposition of any of the sanctions may be suspended and the inmate may be placed upon probation for a period of time not to exceed 90 days.   No sanction shall be implemented during the period of time that a decision is under appeal.

The Hearing Officer's written record of the hearing should be completed at the hearing and include:

**A.**   The Hearing Officer's decision.

**B.**   The sanction imposed.

**C.**   A summary of the rationale upon which the decision and sanction were based.

**D.**   A list of all witnesses and a summary of their testimony.

**E.**   A statement as to whether the sanction is stayed during an appeal and the reasons for that decision.

**F.**   The date and time of the hearing.

**G.**   The signature of the Hearing Officer.

All hearing reports of Class I write ups resulting in a finding of guilt will be retained in the inmate's permanent record in the Records Section of the facility.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 14  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

** **1.29 Refusal to Participate in Classified Treatment Program**
Willfully refusing to participate in Bureau sanctioned treatment programs

** **1.30 Refusal to comply with Sex Offender Registration Procedures**
Willfully refusing to comply with registering as a sex offender.

**1.31 Conspiracy to Commit a Class I Offense**

**CLASS II OFFENSES:**

**2.01 Abuse of Privileges:**  Willful violation of any institutional regulation dealing with a privilege.

**2.02 Bartering:** Unauthorized buying, selling, trading, lending, or giving of gifts. Taking, exercising control over or otherwise using the property of another person with or without the consent of the owner. Lending of property or anything of value with or without the expectation of anything in return.

**2.03 Creating a Health, Safety, or Fire Hazard:**  Activities which create a situation dangerous to the health or safety of persons within the institution or create a danger of fire within the institution, including but not limited to dirty cell, lack of personal hygiene, smoking in an unauthorized area, and excessive accumulation of personal property.

**2.04 Damage or Destruction of Property Under $10:**  Tampering with, damaging or destroying property belonging to the state of Delaware or to another person when the replacement value of such property is less than $10.

**2.05 Disrespect:**  Words, actions, or other behavior, which is intended to harass employees, volunteers, or visitors including cursing, abusive language, writing, or gestures directed at the person.

**2.06 Failing to Obey an  Order:**  Disobeying any verbal or written order that does not constitute a Class I violation. Including but not limited to refusal to work and/or violation of posted rules in the housing unit or work area where there is no threat to institution security.

**2.07 Gambling:**  Organizing or participating in wagers or games for personal gain, money or anything of value.

**2.08 Horseplay:**  Any physical contact or attempted physical contact between two or more persons done in a jesting or playful manner, without anger or intent to injure or intimidate.  This includes but is not limited to towel snapping at others, body punching, or attempted physical wrestling, etc.

**2.09 Late for Appointments/Assignments:**  Late for any work assignment, program assignment, medical appointments, etc.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 15  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

**2.10 Lying:** Making a false statement to a Department of Correction staff person with intent to deceive such staff member.  This includes false information for personal gain from good time earnings or compensation.

**2.11 Off Limits:**

A.   Failing to report as prescribed to an appointed place of duty or assignment or to any other place when directed by the valid order of a staff member.

B.   Leaving without permission from an appointed place of duty or assignment or any other place.

C.   Entering or remaining in a prohibited area.

D.   Being in area for the purpose of committing a Class I violation would make Off Limits a Class I Offense.

**2.12 Possession of Money and Coin Under $1:**  Possession of money, coin, currency or other forms of legal tender under $1.

**2.13 Possession of Non-dangerous Contraband:** Possession or control of any contraband, which by its nature does not present a substantial threat to the safety of persons within the institution.  This also includes, but is not limited to, any article of clothing that is not specifically authorized to be worn and excessive accumulation of authorized items, and after January 1, 1993, cigarettes and other smoking materials.

**2.14 Unauthorized Communication:**  Any contact by letter, gesture, or verbally, with an unauthorized person or in an unauthorized manner, including but not limited to passing property on a visit either directly or through a third person, communication with a visitor through any channel other than visiting room, or unauthorized use of telephone.

**2.15 Conspiracy to Commit a Class II Offense**

**SANCTIONS:**

**CLASS I OFFENSES:**

A Class I Offense, as defined in the Definitions Section, is a rule violation in which a more severe sanction may be imposed than permitted for a Class II offense.  Sanctions which may be imposed for a Class I offense include:

A.   Loss of one or more privileges for a period of time of not more than 90 days.  The following are not considered privileges and cannot be revoked:

1.   Education

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 16  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

3. Counseling Services

4. Drug/Alcohol Rehabilitation Programs

5. Regular Work Assignments

6. Religious Services

7. Legal Access (Law Library)

B. Confinement to assigned quarters for a period of time of not more than 15 days.

C. Isolated confinement for a period of time not more than 90 days.

D. Loss of good time up to and including all good time earned.

E. Restitution.


**CLASS II OFFENSES**

A Class II Offenses, as defined in the Definitions Section, is a rule violation in which the extent of the sanctions to be imposed shall be restricted to:

A. Written reprimand.

B. Loss of one or more privileges for a period of time of not less than 24 hours but not more than 5 days. The same list of programs that cannot be revoked as listed on page 15 under sect A of Sanctions for Class I Offenses apply for this section.

C. Confinement to assigned quarters for a period of time not to exceed 5 days.

D. Summary Action.

E. By mutual agreement the inmate may be assigned extra work assignments in lieu of any other sanction for a Class II offense.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 17  OF  18 |
| SUBJECT: RULES OF CONDUCT | | |

### IMPOSITION OF SANCTIONS:

A.   Where an offense constitutes both a rule violation and a criminal offense under state or federal statute, the inmate may receive internal disciplinary action and receive up to the maximum sanction.  In addition the inmate may be referred for criminal prosecution and receive whatever sanction a court may impose.

B.   Any combination of authorized sanctions for a specific class violation may be imposed for a single violation. Such combination of sanctions must be imposed concurrently; i.e., 5 days isolation and 15 days cell confinement, the inmate would serve 5 days in isolation and 10 days on cell confinement for a total of 15 days.

C.   Consecutive sanctions may not be imposed except for separate violations. When a single incident contains more than one separate violation, the inmate may be disciplined for each.   Sanctions may be imposed for each violation to run concurrently.

D.   When imposing sanctions, the Hearing Officers should consider the full range of penalties in each case and make the penalty fit the particular offense.  The least sanction necessary to obtain compliance with the rules is intended.

E.   Forfeiture of accumulated good time is subject to the approval of the Warden.

F.   A finding of guilt on a Class I offense can be grounds for reclassification to more secure confinement.

G.   The Hearing Officer will place a check mark in the "Offender Present" block of the DACS Disciplinary Hearing screen to confirm that the offender was present during all phases of the Disciplinary Process and the offender was notified of the sanction imposed upon him, and his right to appeal. The inmate's signature is not required on any form during the Disciplinary Process.

### RESTITUTION:

A.   The Hearing Officer may order restitution for the cost of property that has been taken, damaged, destroyed by an inmate where such property is not recovered in the same condition as existed prior to the taking.

B. Where the Hearing Officer has found the existence of such a rule violation and ordered that restitution be made, and such order has not been reversed on appeal, the administrative officer of the institution shall enforce the order by attaching the inmate's account for the amount of restitution ordered. Where the account has no funds, it will be attached for 1/2 all income until the judgment is paid.

C. The amount of restitution ordered shall be the replacement value of the item taken, damaged or destroyed.

**SUMMARY ACTION:**

A. Upon observing inmate misconduct staff may determine that it is a minor offense properly responded to by an immediate revocation of one or more privileges or confinement to assigned quarters for a period of time not to exceed twenty-four hours. The employee will notify the Unit Supervisor when placing Summary Action on an inmate. Summary Actions will be entered into DACS; however, they will not be considered in future Classification or Disciplinary Processes.

B. When an inmate commits a rule infraction that is a Class II Offense, the staff requesting Summary Action will write a Form A25. The inmate will be called into the office and informed of the sanction which shall be up to 24-hour loss of all privileges, 24-hour cell confinement or up to 24 hours extra work. The inmate will sign the A25 indicating that he/she accepts the sanction. If he/she refuses to sign, a Class II disciplinary report will be written in lieu of summary action.

All Wardens should develop facility SOPs to implement this procedure. These SOPs may not deviate from the general format of this procedure, but may allow for the unique differences between facilities.

Inmates may be administratively transferred pending classification or reclassified to more restrictive security levels for violations of the Rules of Conduct. This may occur through an accumulation of a combination of Class I and/or Class II offenses or a single serious offense.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 8   OF   18 |
| SUBJECT: RULES OF CONDUCT | | |

**CLASS II HEARINGS:**

Class II hearings shall be held by the Unit Supervisor/Lead Worker on the shift that the Class II violation occurred.

At the Class II Hearing, the inmate is entitled to the following:

**A.** An opportunity to be present during the hearing.

**B.** An opportunity to make a statement and present documentary evidence.

Unless the Unit Supervisor/Lead Worker feels additional testimony is necessary, his decision may be based on the disciplinary report, the statement of the inmate, and any other relevant information presented at the hearing.

The Unit Supervisor/Lead Worker will state in writing, utilizing the Disciplinary Hearing Report Form; his findings, the rationale, and the sanctions imposed. The inmate will receive a copy of the written decision and will be advised of his right of appeal. All hearing reports of Class II write ups resulting in a guilty finding will be placed in to the housing unit's working file. An inmate working file shall be forwarded to any facility/unit that an inmate is transferred to.

Three guilty findings for the same Class II offense in a six-month time period will automatically convert the fourth same offense to a Class I hearing.

**APPEALS:**

The inmate will be advised of his/her right to appeal the decision of the Class I Hearing Officer to the Warden or Warden's Designee and will be provided with an appeal form presented from the DACS Disciplinary Module. The inmate will be advised of his right to appeal the decision of the Class II Hearing to a Class I Hearing Officer.

All appeal forms must be completed and forwarded to the Hearing Officer within 72 hours of the inmate receipt of the written record of the hearing.  FAILURE TO COMPLY WITH THIS TIME   LIMIT WILL CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL.

Upon filing of the appeal form, the Hearing Officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. If no appeal form is filed within the stated time period or the inmate indicates in writing that he does not intend to appeal, the sanction shall be implemented.

All appeals of Class I offenses will be heard by the Warden or Warden's Designee. All appeals of Class II offenses will be heard by a Class I Hearing Officer. The appeal decision will be in writing and should be rendered within ten (10) working days of receipt of the appeal. A copy of the appeal decision goes to the inmate.

The official hearing the appeal may affirm the decision, reverse the decision, or remand the decision back to the Hearing Officer for further proceedings. Sanctions may be reduced but not increased.

If for any reason an inmate is found not guilty of an offense, Class I or Class II, it shall be so noted in DACS.

## PROCEDURES FOLLOWING CRIMINAL MISCONDUCT:

Upon the determination of the Watch Commander or the Hearing Officer that an inmate has committed a state or federal criminal offense, the Warden or his designee will be notified. The proper law enforcement authority will then be notified. Administrative disciplinary proceedings may be pursued in addition to possible criminal prosecution. Any disciplinary hearing for this alleged offense will be conducted in accordance with this procedure, and the inmate will be advised that he may choose right to remain silent in the hearing and that his silence will not be construed adversely against him at the hearing.

## PROCEDURES FOLLOWING AN EMERGENCY:

In the event of an institutional disruption, which requires emergency action, any or all portions of these regulations may be temporarily suspended by the Warden in writing. Any inmate involved in the emergency may be detained without a hearing throughout the course of the emergency. Upon the restoration of order, all inmates who were detained will be disciplined in accordance with this procedure.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.2 | 10 OF 18 |
| SUBJECT: RULES OF CONDUCT | | |

**CLASS I OFFENSES:**

**1.01 Arson:**  Intentionally or recklessly starting a fire or causing an explosion. Inmate may also be referred for criminal prosecution.

**1.02 Assault:**  Physical attack on or intentional contact of another person by one or more persons, done either in anger, or with the purpose of abusing or injuring another; striking with feces, urine, or other physical objects; physical resistance of or interference with an employee.  Injury is not necessary but contact is.  Inmate may also be referred for criminal prosecution.

**1.03 Bribery:**  Giving, offering or promising anything of value to any employee, volunteer, visitor, or person or organization conducting business with the BOP:

**A.**  To influence any act within the realm of responsibility of said person.

**B.**  To induce said person or persons to do or omit from doing any act in violation of their responsibility.

**1.04 Damage or Destruction of Property (over $10):**  Any destruction, removal, alteration, tampering, or other misuse of property belonging to the state of Delaware or to another person when the replacement value of such property exceeds $10.  This includes but is not limited to tampering with or blocking any security or locking device, breaking windows, destroying blankets, clothing, or mattresses.

**1.05 Demonstrations (Strike):**  Inciting or urging two or more inmates to engage in a disturbance involving non-violent conduct which substantially disrupts the normal functioning and operation of the institution.  Participating in a disturbance involving nonviolent conduct, which substantially disrupts the normal functioning and operation of the institution.

**1.06 Disorderly or Threatening Behavior:**  Words, actions, or other behavior expressing any intent to injure, which intends to place another in fear of being assaulted.  This includes, but is not limited to attempted assault, threats of

| STATE OF DELAWARE<br>BUREAU OF PRISONS | PROCEDURE NUMBER:<br>4.2 | PAGE:<br>11 OF 18 |
|---|---|---|
| SUBJECT: RULES OF CONDUCT | | |

sexual assault made by one inmate to another, or writing threatening letters to another person.

**1.07 Engaging in a Riot:** Participating in a riot, which is in existence at the time of this act. However, an inmate who is merely present at the scene of an ongoing riot is not guilty of an offense under this section, provided that he moves to a designated area after being directed to by proper authority. Inmate may also be referred for criminal prosecution.

**1.08 Escape and Attempt to Escape:** Leaving or attempting to leave the confines of an institution or from official custody while beyond the confines of the institution, or failing to return to official custody within an institution following temporary release from an institution. Inmate may also be referred for criminal prosecution.

**1.09 Extortion, Blackmail or Protection:** Demanding of or receiving from another person, anything of value in return for protecting that person from others or refraining from committing bodily injury or sexual assault on that person.

**1.10 Failure to Abide by Sanctions or Conditions of a Class I or II Disciplinary Disposition:** Breaking a condition of restitution or other sanction.

**1.11 Falsifying Physical Evidence and/or Influencing a Witness:** While believing that an official proceeding or an official investigation is pending or about to be instituted:

A. Altering, destroying, concealing or removing anything with intent to impair its authenticity or availability in such proceeding or investigation.

B. Presenting or using anything knowing it to be false, with intent to deceive staff or anyone who is or will be a member of such proceeding or investigation.

C. Attempting to cause a witness to testify falsely or to withhold any testimony or information or other evidence.

D. Committing any act prohibited by these rules in retaliation for anything done by another p person in his capacity as a witness.

Case 1:06-cv-00236-SLR    Document 87-2    Filed 11/06/2007    Page 50 of 77

E.  Soliciting, accepting or agreeing to accept any benefit
in return for providing false testimony or information
or withholding any testimony or information or other
evidence.

**1.12 Felony:**  Any act that would be a felony under state or
federal law is also a major misconduct. Inmate may also be
referred for criminal prosecution.

**1.13 Fighting:**  Physical confrontation between two or more
persons, including a swing and miss, done with anger or
intent to injure.  This includes fights between
inmates, whether with fists, broom handles, weapons, or other
physical objects.

**1.14 Forgery, Counterfeiting:**  Unauthorized reproduction of
any signature, document, article of identification, money,
security, or official papers; knowingly possessing a
falsified or altered document; altering or falsifying
document with the intent to deceive or defraud.

**1.15 Giving a False Alarm:**  Willfully communicating a false
report concerning a fire, explosion, or other catastrophe or
emergency where the report is likely to cause the evacuation
of a building or to cause the staff to respond in alarm.

**1.16 Homicide:**  Causing the death of another person by any
means. Inmate may also be referred for criminal prosecution.

**1.17 Inciting to Riot:**  Inciting or urging a group of two or
more inmates to engage in a current or pending riot or
commanding, directing, instructing, or signaling a group of
two or more inmates to cause, continue or enlarge a riot.  A
"riot" is a disturbance involving an assemblage of three or
more persons whose conduct creates a threat of damage or
injury to property or persons and disrupts the normal
functioning of the institution.  An inmate may be found
guilty of Inciting to Riot even where no riot actually
occurs as a direct or indirect result of his urging.
Inmates may also be referred for criminal prosecution.

**1.18 Possession of Dangerous Contraband:**  Unauthorized
possession of weapons, physical objects that could be used
as weapons, explosives, acids, caustics, materials for
incendiary devices or escape materials; possession of
"critical" tools and material or dangerous tools and

materials. This includes but is not limited to gasoline, sulfuric acid, lye, prison-made knives, and pipe bombs. After 1/1/93, matches and lighters are added to this list.

**1.19 Possession of Money and Coin Over $1:** Possession of money, coin, currency or other forms of legal tender such as certificates of deposit, stocks, or bonds.

**1.20 Possession of Staff Clothing:** Possession of any article of clothing which is identifiable as part of or an accessory to the Department of Correction staff uniform.

**1.21 Receiving Stolen Property:** Receiving or possessing property of another person knowing that it has been stolen or believing that it has probably been stolen.

**1.22 Refusal to Cooperate in Drug-Abuse Testing:** Willfully refusing to provide a urine sample, to breathe into a breathalyzer or to participate in other drug-abuse testing.

**1.23 Restraint:** Willfully restraining another person under circumstances, which may expose the other person to a risk of bodily injury. This includes, but is not limited to kidnapping or the taking of a hostage. Inmate may also be referred for criminal prosecution.

**1.24 Sexual Assault:** Sexual contact with another person without that person's consent, including but not limited to rape, intentional touching of sexual areas (buttocks, breasts, genitals) without consent, kissing or embracing without consent of one who is kissed or embraced. Inmate may also be referred for criminal prosecution.

**1.25 Sexual Misconduct:** Sexual contact with another person with that person's consent; indecent exposure; excessive kissing, hugging or unauthorized touching of visitors; and possession of wearing apparel designed for the opposite sex.

**1.26 Substance Abuse:** Possession, use, selling, introduction, or under the influence of any intoxicant, inhalant, controlled substance or imitation, or any other substance which may be used to cause a condition of intoxication; possession of excessive amounts of ingredients used for the manufacture of alcoholic beverages, possession of drug paraphernalia including but not limited to such items as needles, syringes, roach clips, pipes, etc.

**1.27 Theft:** Any unauthorized taking of property.

**1.28 Refusal to Cooperate in DNA Testing:** Willfully refusing to provide a blood sample as required to comply with Federal or State Court sanctioned testing.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| | 4.4 | 1 OF 7 |
| BUREAU OF PRISONS | RELATED ACA STANDARDS: 36 | |
| PROCEDURE MANUAL | | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | SUBJECT: INMATE GRIEVANCE PROCEDURE | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS: _Carl W. Howell_ | | |
| EFFECTIVE DATE: _Revised_ 5/15/98 | | |

I.    **AUTHORITY:**  DOC Policy 4.4

II.   **PURPOSE:**

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.  Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.  NOTE:   Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III.  **APPLICABILITY:**

All BOP employees, volunteers, persons or organizations conducting business with the BOP: all inmates under BOP custody or supervision.

IV.   **DEFINITIONS:**

A.    Bureau Grievance Officer (BGO):  A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.    Emergency Grievance:  An issue that concerns matters which under regular time limits would subject the inmate to a substantial risk of personal, physical or psychological harm.

C.    Grievance:  A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates; any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 2 OF 7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

D.   Inmate Grievance Chair (IGC):  An institutional
     employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process
     provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with
     DOC who hears inmate grievance appeals referred by the
     BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee
     comprised of institutional staff and inmates that hears
     inmate grievances and makes a recommendation to the
     Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against
     inmates or staff based solely on their participation or
     use of the IGP.

J.   Medical Grievance Committee (MGC): An institution's
     specific medical review authority comprised of a
     minimum of three medical services contractual staff
     from the following list:

          Health Services Administrator
          Director of Nursing
          Charge Nurse
          Chief Medical Officer
          Medical Records Clerk
          Mental Health Counselor
          Chief Dental Officer
          Dental Assistant

## V.  PROCEDURE:

1.   Copies of the IGP shall be available in each
     institutional housing unit, in each library, in each
     counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security
     status/administrative status, shall be entitled to use
     the IGP.  Inmate complaints regarding policies and
     conditions must be within DOC jurisdiction.  This
     includes actions by employees, inmates, and incidents
     occurring within the institution that affect them
     personally.  NOTE: Policies that have their own formal
     appeal mechanisms are not grievable through the IGP.
     Specifically excluded from the IGP are issues
     concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 3 OF 7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 4 OF 7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee. Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit. Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months. Staff RGC members serve at the discretion of the Warden/Warden's Designee. One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps. The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

## IGP RESOLUTION LEVELS

### Level I (Informal Resolution):

The IGP process begins when an inmate files Form #584.  The grievant must complete this form within 7 calendar days following the incident and forward to the IGC.  The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt.  Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance.  Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance.  Unresolved grievances are referred to Level II administration.

### Level II (RGC Recommendation/Warden's Decision):

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants.  The RGC shall ask any question it feels relevant to the issue.  If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work.  All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation.  The IGC forwards the RGC recommendation to the Warden/Warden's Designee.  The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution.  If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance.  If there is no concurrence, the case is referred to Level III administration.

### Level III (The Final Decision):

The BGO will review the grievance file upon receipt.  Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance.  At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended.  The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary.  The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 6  OF 7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

recommendation.  Decisions by the Bureau Chief of Prisons are
final and not open to grievant interpretation.   The Bureau Chief
of Prisons will return his final decision and the grievance file
to the IGC for closure and monitoring for issues of compliance.

**Emergency Grievance:**

Issues that concern substantial risk of personal, physical or
psychological inmate injury shall be addressed immediately by the
Warden/Warden's Designee.   A copy of the grievance shall be sent
to the IGC upon receipt by the Warden/Warden's Designee.   And the
Warden/Warden's Designee shall respond within one calendar day.
Grievant appeals of the Warden/Warden's Designee decision will be
decided by the Bureau Chief of Prisons within one calendar day
upon receipt of the emergency appeal.   NOTE: If the
Warden/Warden's Designee should determine that the grievance does
not meet the emergency criteria, the grievance shall be returned
to the inmate for processing through the normal IGP process
steps.

**Medical Grievance:**

All medical grievances must be submitted to the Inmate Grievance
Chairperson (IGC) at the respective institution on Form #585.
If, by chance, an inmate sends a grievance directly to the
medical services contractual staff, they are to forward it first
to the IGC who will log it in the institution's grievance log and
then return it to the medical services contractual staff for
action.

The appropriate medical staff will review the grievance and
denote actions taken on the Medical Log Form #586

The medical services contractual staff will attempt an informal
resolution with the inmate, upon discussion over the treatment
defined on the Medical Log Form.   If the Medical Grievance is
resolved the inmate acknowledges this by his signature on Form
#585 Informal Resolution.   This signed form is forwarded to the
IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical
Grievance Committee hearing which will not include any medical
services contractual staff previously involved in the informal
resolution process.   The IGC and the inmate must be present at
this hearing.

Resolution closes the case; failure to resolve the case results
in the inmate completing the MGC Appeal Statement section of Form
#585.   Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 7 OF 7 |
| SUBJECT:    INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO).  The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded.  If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II.  The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review.  If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review.  Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal.  This form must be given to the IGC who is responsible for tracking the status of each grievance.  The IGC will forward the appeal and grievance file to the BGO.  Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level.  NOTE:  The Bureau Chief of Prisons decisions are final and not appealable.

Attachments

## CORRECTION CODE OF PENAL DISCIPLINE

100    GENERAL PROVISIONS

### PURPOSES AND OBJECTIVES

100.11    The purpose of this code is to establish a system of penal discipline which defines, and prescribes appropriate sanctions for, conduct that unjustifiably causes or threatens substantial harm to individual, institutional or state interests.

100.12    This Code will be construed according to the fair meaning of its terms, to promote justice and to accomplish the following general objectives:

(a) To promote the safety and welfare of everyone within the institution.

(b) To promote the efficient administration and operation of the institution.

(c) To define what conduct is prohibited in the institution and state the sanctions that may be imposed to punish such conduct.

(d) To prevent arbitrary or retaliatory treatment of inmates accused or convicted of offenses.

(e) To prescribe penalties that are proportionate to the seriousness of the offenses.

(f) Generally, to provide a climate of certainty within which both correctional staff members and inmates will have a clearer picture of the relationship of each to the other and each to the interests of the institution.

### DEFINITIONS

100.31    "Willfully" - an inmate acts "willfully" with respect to his conduct or to a result thereof, when it is his conscious purpose

to engage in the conduct or cause the result.

100.32    "Bodily Injury" means physical pain, physical illness or the impairment of any physical condition.

100.33    "Contraband" means any article, substance or thing which is not authorized by The Department of Correction, obtainable through the institutional commissaries, specifically permitted by applicable prison regulations, or otherwise specifically authorized by the institutional Warden or his designee.

100.34    "Offense" means conduct that is prohibited by this Code.

100.35    "Deadly Weapon" means any firearm, weapon, or other device, instrument, material or substance which in the manner in which it is used or is intended to be used is capable of producing death or serious bodily injury.

100.36    "Privilege" means any benefit conferred upon the inmate population by institutional regulation.

ATTEMPT, CONSPIRACY, AND ACCESSORIES.

100.37    Attempt: An inmate commits an attempt when he does an act which constitutes a substantial step in a course of conduct planned to result in the commission of a rule violation.

100.38    Conspiracy: An inmate commits a conspiracy when he agrees with one or more persons to engage in a rule violation and then acts to carry out that agreement.

100.39    Accessory: An inmate is an accessory if he knowingly provides assistance to an inmate committing a rule violation.

100.40    The offenses of conspiracy, attempt and accessory will be punishable in the same degree as the rule violation involved.

200.        RULES

200.10            MINOR OFFENSES

200.101     Unauthorized Use of Property of Another:   Taking, exercising
            control over or otherwise using the property of another  person
            without the consent of the owner.

200.102     Off Limits

            (a)  Failing  to  report as prescribed to an appointed place  of
                 duty or assignment or to any other place where directed  by
                 the valid order of a correctional staff member.

            (b)  Leaving without permission from an appointed place of  duty
                 or  assignment to any other place where directed to  remain
                 by the valid order of a correctional staff member.

            (c)  Entering  or  remaining  in a prohibited  area  "Prohibited
                 area" as used herein means any area to which inmate has not
                 been authorized to be present.

200.103     Gambling:   Organizing or participating in,  wagers or games for
            personal gain, money or anything of value.

200.104     Refusal to Work:  Refusing to perform work assignments.

200.105     Abuse  of  Privileges:   Willful violation of any  institutional
            regulation dealing with a privilege.

200.106     Creating  a Health,  Safety,  or Fire Hazard:   Activities which
            create a situation dangerous to the health or safety of  persons
            within  the institution,  or create a danger of fire within  the
            institution.

200.107     Damage  or Destruction of Property  (under  $10.00):   Tampering
            with,  damaging or destroying property belonging to the State of
            Delaware or to another person when the replacement value of such
            property is less than $10.00.

200.108        <u>Failing to Obey an Order</u>:   Willfully failing to obey any order issued by institutional staff.

200.109        <u>Refusal to cooperate in Drug-Abuse Testing</u>:   Willfully refusing to provide a wine sample,  to breathe into a breathalyzer or to participate in other drug-abuse testing.

200.110        <u>Possession of Unauthorized Clothing</u>: Possessing  any article of clothing which is not specifically authorized for inmate wear.

200.111        <u>Possession of Non-dangerous Contraband</u>:   Possession or control of  any  contraband  which  by  its  nature  does  not  present substantial  danger  to  the  safety  of  persons  within  the institution.

200.112        <u>Abuse of Prescribed Medication</u>:   Willfully hoarding medication which the inmate is authorized to receive.

<u>MAJOR OFFENSES</u>

200.201        <u>Assault</u>:  Willfully causing bodily injury to another person.

200.202        <u>Sexual Misconduct</u>:    Willfully  engaging  or  soliciting   or attempting  to  engage in sexual relations with  another  person within the institution.

200.203        <u>Disorderly or Threatening Behavior</u>:   (a)  Fighting,  or  other violent,  or threatening behavior.   (b)  Insulting, taunting or challenging  another  person,  in a manner likely to  produce  a violent or disorderly response.

200.204        <u>Restraint</u>:   Willfully  restraining  another  person  under circumstances  which  may expose the other person to a  risk  of bodily injury.

200.205        <u>Theft</u>:   Willfully  taking   or withholding property of  another person intending to keep such property from its owner.

200.206     <u>Arson</u>: Willfully starting a fire or causing an explosion within the institution.

200.207     <u>Receiving Stolen Property</u>: Receiving or possessing property of another person knowing that it has been stolen or believing that it has probably been stolen, unless a correctional officer has been notified or other reasonable efforts are made to restore the property to its owner.

200.208     <u>Forgery</u>: Falsely making, completing or altering a written document with intent to defraud or deceive another person.

200.209     <u>Damage or Destruction of Property (over $10.00)</u>: Tampering with, damaging or destroying property belonging to the State of Delaware or to another person when the replacement value of such property is equal to or exceeds $10.00.

200.210     <u>Influencing a Witness</u>: While believing that an official proceeding or an official investigation is pending or about to be instituted:

(a) Attempting to cause a witness to testify falsely or to withhold any testimony or information or other evidence; or

(b) Committing any act prohibited by these rules in retaliation for anything done by another person in his capacity as a witness; or

(c) Soliciting, accepting or agreeing to accept any benefit in return for providing false testimony or information or withholding any testimony or information or other evidence.

200.211     <u>Bribery</u>: Giving, offering or promising anything of value to any correctional staff member with the intent:

(a)  To  influence any act within the official responsibility of
the officer;  or

(b)  To induce such correctional staff member to do or omit from
doing any act in violation of his official duty.

200.212      Falsifying Physical Evidence:   While believing that an official
proceeding  or an official investigation is pending or about  to
be instituted:

(a)  Altering,  destroying, concealing or removing anything with
intent  to impair its authenticity or availability in  such
proceeding or investigation.

(b)  Presenting  or using anything knowing it to be false,  with
intent to deceive a correctional staff member or anyone who
is or will be a member of such proceeding or investigation.

200.213      Lying:   Willfully  making a false statement to a Department  of
Correction  staff  person  with intent  to  deceive  such  staff
member.

200.214      Escape:   Leaving the  confines  of the  institution   (or  from
official  custody while beyond the confines of the  institution,
or  failing to return to official custody within the institution
following temporary release from the institution) without proper
authorization.

200.215      Inciting to Riot:

(a)  Inciting  or urging a group of two or more other inmates to
engage in a current or pending riot;  or

(b)  Commanding, directing, instructing or signalling a group of
two or more other inmates to cause,  continue or enlarge  a
riot.

(A  "riot" is a disturbance involving an assemblage of three  or  more

persons which by violent conduct creates a grave danger of damage or injury to property or persons and substantially disrupts the normal functioning of the institution through violence. An inmate may be found guilty of Inciting to Riot even where no riot actually occurs as a direct or indirect result of his urging.)

200.216    Engaging in a Riot: Participating in a riot which is in existence at the time of his act. However, no inmate who is merely present at the scene of an ongoing riot is guilty of an offense under this section, provided that he moves to a designated area after being directed to by proper authority.

200.217    Giving a False Alarm: Willfully communicating a false report concerning a fire, explosion, or other catastrophe or emergency where the report is likely to cause the evacuation of a building or to cause the correctional staff to respond in alarm.

200.218    Possession of Dangerous Contraband: Possession or control of contraband which by its nature presents substantial danger to the safety of persons within the institution, such as any deadly weapon or explosive device.

200.219    Possession of Intoxicant, Non-Prescribed Drugs, or Paraphernalia: Possession or control of intoxicating beverages, medication, or drugs not prescribed by a member of the institutional medical staff. Possession of paraphernalia necessary to administer such substances shall constitute a violation of this section.

200.220    Possession of Money and Coin: Possession of money, cash, currency or other forms of legal tender.

200.221    Using Intoxicants or Non-Prescribed Drugs: Use of any intoxicating beverages, medication, or drugs not prescribed by a

member of the institutional medical staff.

200.222    Possession of Staff Clothing:    Possession of any article of clothing which is identifiable as part of, or an accessory to, the Department of Correction staff uniform.

200.223    Extortion, Blackmail or Protection:    Demanding of, or receiving from, another person money or anything of value in return for protecting that person from others, refraining from committing bodily injury or sexual assault on that person or refraining from reporting to authorities any activity, real or fictitious, of that person.

200.224    Indecent Exposure:    Willfully exposing the genitals or buttocks to any person other than another inmate under circumstances in which the conduct is likely to cause affront or alarm.

200.225    ⊙ Inmate Demonstrations:    (a) Inciting or urging two or more other inmates to engage in a disturbance involving non-violent conduct which substantially disrupts the normal functioning of the institution.    (b) Participating in a disturbance involving non-violent conduct which substantially disrupts the normal functioning of the institution.

300        DISCIPLINARY PROCEDURES

300.001    Except as set forth under 300.160 and 300.250 herein, notice and hearing before a Hearing Officer, as set forth in this procedure, shall be provided prior to the imposition of any sanction as defined herein against an inmate for the violation of a rule of this institution.

Procedures following a Minor Offense.

300.110    A minor offense as defined at 200.101 - 200.112 is a rule violation in which the extent of the sanctions to be imposed

shall be restricted to:

(a)   Written reprimand;

(b)   Loss of one or more privileges for a period of time of more than 24 hours but less than 15 days.

300.120   Upon the reasonable belief of an institutional staff member that such an offense has been committed, he may file a written disciplinary report of the incident with the shift supervisor. Such report shall include:

(a)   The specific rule violated.

(b)   The facts surrounding the incident.

(c)   The names of witnesses to the incident, if any.

(d)   The disposition of any evidence involved.

(e)   Any immediate action taken.

(f)   The date and time of the offense.

(g)   The signature of the reporting officer.

300.130   Should a staff member believe an offense may be properly responded to by a verbal reprimand, warning and/or counseling, he may so respond, in which case no disciplinary report need be prepared. A counseling report of this action will be made by the staff member, a copy placed in the inmate's file and a copy given to the inmate. The inmate may prepare a response to counseling reports, which shall be placed with the report in the inmate's file.

300.140   Upon the filing of the disciplinary report alleging commission of a minor offense, the following steps will be undertaken.

Notice

300.141   A copy of the disciplinary report, as a notification of the charges, shall be given to the inmate at least 24 hours prior to

the hearing.

300.142    The notice shall advise the inmate of his rights in the disciplinary process.

Hearing

300.143    All hearings for minor offenses shall be conducted by an impartial hearing officer, who shall not have had a direct involvement with the alleged incident nor shall have had supervisory responsibility over the accused inmate during the six month period immediately preceding the hearing. The hearing officer shall be of a rank no lower than Lieutenant.

300.144    The inmate shall be present at all phases of the hearing, unless his behavior becomes disruptive to the proceedings. Reasons for such exclusion shall be stated in writing.

300.145    The inmate shall be allowed to make a statement and present any reasonable evidence, including written statements from others, in his behalf.          -

300.146    Unless the Hearing Officer feels additional oral testimony is necessary, his decision may be based on the disciplinary report, the statements of the inmate, and any other relevant written information presented at the hearing.

Record of Findings

300.147    Following the hearing, the Hearing Officer shall state in writing, his findings, the evidence relied on and the sanctions imposed, if any. No sanction shall be executed during the period referred to in 300.150 unless the inmate indicates in writing that he does not intend to appeal. (See explanatory note following 300.245).

Cumulative consecutive sanctions shall not be imposed for a

single act. (See e.g. 300.240.)

300.148    Copy of this report shall be given to the inmate.

Appeal

300.149    The  inmate shall be advised of his right to appeal the decision
to the Commissioner, Bureau Chief or their designee and shall be
provided with an appeal form.

300.150    The appeal form must be completed and given to a shift commander
or his assistant within 72 hours of the inmate's receipt of  the
record  of the hearing.    FAILURE TO COMPLY WITH THIS TIME LIMIT
MAY  CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL.    The  time
limit  shall  run only while the inmate is incarcerated  at  the
institution.

300.151    Upon  the  filing of the appeal form the Hearing  Officer  shall
grant a stay of any sanction imposed at the disciplinary hearing
until  an  appeal decision is rendered. (See  explanatory  note
following 300.245.)

300.152    All appeals shall be heard by the Commissioner,  Bureau Chief or
their  designee.    The  appeal decision shall be in writing  and
should be rendered within 10 days of receipt of the  appeal.   A
copy of the decision shall go to the inmate.

300.153    The  official  hearing  of the appeal may affirm  the  decision,
reverse the decision, or remand the decision back to the Hearing
Officer for further proceedings.    Sanctions may be reduced, but
not increased.

300.160    Notwithstanding  any other provision of 300.130 and  300.140  to
the  contrary,  should  a shift supervisor,  upon reviewing  the
disciplinary report,  determine that an offense may be  properly
responded  to  by  an  immediate  revocation  of  one  or  more

privileges for a period of time not to exceed twenty-four hours, he may so respond.

300.161    As used in this subsection, the term "privilege" shall not include attendance at educational classes, vocational training sessions, counseling sessions, alcohol/drug rehabilitation programs, regular job assignments or religious services, nor shall it include any right which is secured to an inmate by the Constitution or any law of the United States or the State of Delaware.

### Procedures Following a Major Offense

300.210    A major offense as defined in 200.201 - 200.225 is a rule violation in which a more severe sanction may be imposed than permitted for a minor offense.    Sanctions which may be imposed for a major offense shall be restricted to:

(a)  Written reprimand.

(b)  Loss of one or more privileges for a period of time of more than 24 hours but less than 60 days.

(c)  Confinement to assigned quarters for a period of time not to exceed 30 days.

(d)  Isolated confinement for a period of time not to exceed 15 days.

(e)  Loss of good time for a period of time not to exceed 30 days.

300.211    Forfeiture of accumulated good time shall be subject to the approval of the Commissioner or his designee.

300.220    Upon the reasonable belief of an institutional staff member that such an offense has been committed, he shall file a written disciplinary report of the incident with the shift supervisor.

Such report shall include:

(a) The specific rule violated.

(b) The facts surrounding the incident.

(c) The names of the witnesses to the incident, if any.

(d) The disposition of any evidence involved.

(e) Any immediate action taken.

(f) The date and time of the offense.

(g) The signature of the reporting officer.

300.230    Upon the reporting of the alleged major offense, the following steps will be undertaken.

### Notice

300.231    A copy of the disciplinary report, as a notification of the charges, shall be given to the inmate at least 24 hours prior to a hearing.

300.232    The notice shall advise the inmate of his rights in the disciplinary process.

### Pre-hearing detention

300.233    Until the hearing, the inmate is entitled to remain in his existing status, unless he becomes a sufficient threat to other inmates, staff members, or himself to warrant pre-hearing detention.

300.234    If pre-hearing detention is ordered by the shift supervisor such order must be reviewed by the superintendent or his designee within 24 hours. Failure to do so will return the inmate to his previous status.

300.235    Any time spent in pre-hearing detention shall be credited against any subsequent sanction imposed.

<u>Hearing</u>

300.236    All hearings for major offenses shall be conducted by an impartial Hearing Officer, who shall not have had supervisory responsibility over the accused inmate during the six month period immediately preceding the hearing. A hearing officer shall be disqualified to preside over hearings in which he witnessed the incident in question, was involved in preparation of the charge, or is otherwise biased against the inmate who is the subject of the hearing. The hearing officer shall be of a rank no lower than Lieutenant.

300.237    At the hearing, the inmate shall be entitled to the following:

(a)    An opportunity to be present during all phases of the hearing, except that he may be excluded during the Hearing Officer's deliberations and at any time the inmate's behavior becomes disruptive to the proceedings. Reasons for such exclusion shall be stated in writing.

(b)    The accused inmate may consult with counsel or counsel substitute prior to the hearing. At the hearing, an inmate may be accompanied by a counsel substitute who may be either a staff member or an approved inmate. The extent to which counsel substitutes may present an inmate's case at a disciplinary hearing shall be within the discretion of the Hearing Officer, taking into consideration such factors as illiteracy and intelligence of the inmate, the complexity of the issues under consideration, and any other factors which may prevent the inmate from making a complete presentation on his own behalf.

(c)    Copies of any written information which the Hearing Officer

may consider except where disclosure of such information would be unduly hazardous to institutional safety or would endanger the physical safety of an individual; reasons for non-disclosure to be stated in writing. In all other cases where written information is not disclosed, its contents will be summarized for the inmate to the extent this may be done without creating a substantial risk to institutional or personal safety.

(d) An opportunity to make a statement and present documentary evidence.

(e) An opportunity to call witnesses on his behalf unless doing so would be irrelevant, redundant, unduly hazardous to institutional safety or would endanger the physical safety of any individual; such reasons for denial to be stated in writing.

(f) An opportunity to confront and cross-examine his accuser and all adverse witnesses, unless doing so would be unduly hazardous to institutional safety or would endanger the physical safety of the witness; such reasons for denial stated in writing.

300.238    At any time during the hearing, the Hearing Officer may exclude evidence, although relevant, if its evidential value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; such reasons to be stated in writing.

300.239    At any time during the hearing, the Hearing Officer on his own motion, may order an investigation into the incident and continue the hearing at a future time.

## Decision and Record of Finding

300.240      At the conclusion of the hearing the Hearing Officer shall
             announce the decision and sanction if any.  The decision shall
             be put in writing, and a copy shall be given to the inmate.  The
             imposition of any of the sanctions enumerated in 300.210 above
             may be suspended and, in lieu thereof, the inmate may be placed
             upon probation for a period of time not to exceed 90 days.  No
             sanction shall be executed during the period referred to in
             300.244 unless the inmate indicates in writing that he does not
             intend to appeal.  (See explanatory note following 300.245.)
             Cumulative consecutive sanctions shall not be imposed.

             (a) Permissible    e.g.:    Inmate swears at and strikes a
                 correctional officer.  He may be sanctioned for "Disrespect
                 to a correctional officer" and "Assault on a correctional
                 officer".

             (b) Impermissible e.g.:    Inmate uses profane language to a
                 correctional officer.  He may not be given cumulative
                 consecutive    sentences    for    "Abusive    language"    and
                 "Disrespect to a correctional officer".

300.241      In addition to the written decision and sanction notice, the
             Hearing Officer shall prepare a written record of the hearing.
             Such record should be completed within five working days of the
             hearing and shall contain:

             (a) The Hearing Officer's decision.

             (b) The sanction imposed.

             (c) A summary of the evidence upon which the decision and
                 sanction were based.

             (d) A list of all witnesses and a summary of their testimony.

(e)  A statement as to whether the sanction is stayed during an appeal and the reasons for that decision.

(f)  The date and time of the hearing.

(g)  The signature of the Hearing Officer.

300.242    A copy of the written record shall be given to the inmate.

Appeal

300.243    The inmate shall be advised of his right to appeal the decision to the Commissioner, Bureau Chief or their designee and shall be provided with an appeal form.

300.244    The appeal form must be completed and given to a Shift Commander or his assistant within 72 hours of the inmate's receipt of the record of the hearing. FAILURE TO COMPLY WITH THIS TIME LIMIT MAY CONSTITUTE GROUNDS FOR DISMISSAL OF THE APPEAL. The time limit shall run only while the inmate is incarcerated at the institution.

300.245    Upon the filing of the appeal form, the Hearing Officer shall grant a stay of any sanction imposed at the disciplinary hearing until an appeal decision is rendered. EXPLANATORY NOTE: For both major and minor offenses, the execution of the sanction is automatically stayed for 72 hours immediately following the inmate's receipt of the record unless the inmate indicates, in writing, that he does not intend to appeal. The purpose of the automatic stay is to afford an inmate time to decide if he wishes to appeal. If the inmate files a timely appeal form, 300.147 and 300.240 provide that the hearing officer must stay the execution of the sanction until an appeal decision is rendered. If no appeal form is filed within the stated time period or, if during the stated time period, the inmate

indicates in writing that he does not intend to appeal, the sanction shall be executed.

300.246    All appeals shall be heard by the Commissioner, Bureau Chief, or their designee.    The appeal decision shall be in writing and should be rendered within ten days of receipt of the appeal.    A copy of the decision shall go to the inmate.

300.247    The official hearing of the appeal may affirm the decision, reverse the decision, or remand the decision back to the Hearing Officer for further proceedings.    Sanctions may be reduced, but not increased.

300.250    Notwithstanding any other provision of 300.230 to the contrary, should a Shift Supervisor, upon reviewing the disciplinary report, determine that an offense may be properly responded to by an immediate revocation of one or more privileges for a period of time not to exceed 24 hours, he may so respond.

300.251    As used in 300.250, the term "privilege" shall not include attendance at educational classes, vocational training sessions, counseling sessions, alcohol/drug rehabilitation programs, regular job assignments or religious services.    Nor shall it include any right which is secured to an inmate by the Constitution or any law of the United States or the State of Delaware.

Expungement

300.300    If an inmate is found not guilty of an offense, major or minor, all reference to that offense shall be removed from his file, if reasonably possible.    Otherwise, the finding of not guilty shall be clearly indicated in his file.

## Procedures Following Criminal Misconduct

300.410     Upon the determination of the shift supervisor or the Hearing Officer that an inmate has committed a criminal offense, the Warden or his designee will be notified without delay. The proper law enforcement authority shall then be notified.

300.420     Any disciplinary hearing for this alleged offense shall be conducted in accordance with 300.236 - 300.237 and the inmate shall be advised that he has the right to remain silent in the hearing and that his silence will not be construed adversely against him at the hearing.

## Procedures Following an Emergency

300.510     In the event of a widespread institutional disruption which requires emergency action, any or all portions of these regulations may be temporarily suspended.

300.520     Any inmate involved in the emergency may be detained without a hearing throughout the course of the emergency.

300.530     Upon the restoration of order, all inmates who were detained shall be accorded all disciplinary procedures as provided by this regulation.